**Paul C. Galm, OSB No. 002600**
Email: paul@paulgalmlaw.com
PAUL GALM, ATTORNEY AT LAW, LLC
12220 SW First St.
Beaverton, OR 97005
Telephone: (503) 644-9000
Facsimile: (503) 644-9050

**Josh Lamborn, OSB No. 973090**
Email: jpl@pdxinjury.com
THE LAW OFFICE OF JOSH LAMBORN, P.C.
50 SW Pine St., Suite 301
Portland, OR  97204
Telephone: (503) 546-0461
Facsimile: (503) 914-1507

Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| **MARK ANTHONY JOHNSON II**, Personal Representative for the **Estate of Mark Anthony Johnson**, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES OF AMERICA, THE UNITED STATES PROBATION OFFICE FOR THE DISTRICT OF OREGON,**<br><br>Defendant. | **Civil Action No. 3:24-cv-01597**<br><br><br>**FIRST AMENDED COMPLAINT**<br>Wrongful Death – Negligence<br><br>Jury Trial Demanded |

## INTRODUCTION

**1.**

On March 1, 2022, around noon, Joseph Banks ("Banks") murdered Mark Johnson ("Johnson") by shooting Johnson while he stood next to his vehicle on North Stanton Street, next to Dawson Park. This random act of violence came at the end of an approximately six-month

**Page  1 of 16 – FIRST AMENDED COMPLAINT**

period of well-documented decompensation as Banks refused to take his psychotropic medications, despite a violent criminal history when unmedicated. It also followed a months-long crime spree by Banks in which he murdered two other people and attempted to murder an additional four. During those six months, Banks was on federal supervision through the United States Probation Office, District Office for Oregon (hereinafter "USPO"), at the order of Federal District Judge Anna Brown of the Oregon District Court ("The Order").

**2.**

The Order included twenty-one conditions of release, which the USPO was tasked with enforcing.  In the six months preceding Johnson's death, Banks violated the terms of his release on at least thirty different occasions – all reported to the USPO and Banks' probation officer, Senior Officer Kristie Sparks (hereinafter "Sparks"). Yet, the USPO and Sparks never took action to enforce the Order and never reported these violations to the Court. In so doing, the USPO ignored the rules, regulations, policies and procedures set forth in The Guide for Judiciary Policy, Vol. 8, Part E *(Monogram 109),* chapters 1 and 6; USPO's *Post-Conviction Supervision Procedures Manual*; USPO's *Substance Use and Mental Health Procedures Manual*; and 18 U.S.C. § 3603. If the required action were taken on any one of the violations, Banks would have been returned to court and likely would have been back in jail. Even though Sparks and USPO were aware of the dangerousness Banks posed to the general public, Sparks failed to investigate, supervise and control his actions, despite having the obligation and ability to do so.

**JURISDICTION AND VENUE**

**3.**

This action arises under the laws of the State of Oregon, and jurisdiction is based on the Federal Tort Claims Act, 28 U.S.C. § 1346 *et seq.* and 28 U.S.C. § 2671 *et seq*. Pursuant to 28

**Page  2 of 16 – FIRST AMENDED COMPLAINT**

U.S.C. §1402(b), venue is proper in this Court, because most, if not all, of the events, acts or omissions which give rise to Plaintiff's claim occurred in this District.

## PARTIES

**4.**

Plaintiff Mark Anthony Johnson II ("Plaintiff") is the duly appointed personal representative of the Estate of Mark "Marcus" A. Johnson ("Decedent" or "Johnson"). Johnson was born August 4, 1966. At the time of his death, Johnson was a citizen and resident of the State of Oregon. He is survived by his four children, including, at the time, two minor children.

**5.**

USPO is tasked with, *inter alia*, supervising defendants who are conditionally released pursuant to 18 U.S.C. § 4243(f)(2), which requires conditional release be "under a prescribed regimen of medical, psychiatric or psychological care or treatment."

**6.**

Sparks was at all times material a senior USPO officer in charge of Banks' supervision while on conditional release and was acting in the course and scope of her employment.

## FACTUAL ALLEGATIONS

**7.**

On October 3, 2007, Banks was deemed not guilty by reason of insanity for a charge of felon in possession of a firearm. He was subsequently hospitalized at the Federal Medical Center, Devens, Massachusetts, and conditionally released on December 4, 2009.

**8.**

On June 10, 2011, the Court issued an arrest warrant regarding allegations that Banks violated the terms of his conditional release by incurring new criminal charges of criminal mischief

**Page 3 of 16 – FIRST AMENDED COMPLAINT**

and harassment-domestic violence and failing to attend both mental health treatment and probation supervision appointments as required.

**9.**

On July 13, 2011, the court remanded him to the custody of the Attorney General for evaluation, pursuant to 18 U.S.C. § 4243. The evaluation was conducted at the United States Medical Center, Springfield, Missouri.

**10.**

On November 16, 2011, the Court deemed Banks no longer suitable for continued community supervision and ordered his conditional release revoked. Between his revocation on November 16, 2011, and a final assessment on June 30, 2020, Banks had three separate risk assessments and was found not suitable for release. Finally, on June 30, 2020, the Medical Center found he was suitable for conditional release that would include appropriate and stable residence, plans for continued participation in both substance abuse and mental health treatment, including potentially being involved with an intensive case management and oversight team, and other forms of supervision to monitor his compliance and participation.

**11.**

The 2020 report also stated "[t]hough ultimately a decision for the Court, it is my opinion an unconditional release from custody would create a substantial risk of bodily injury to another person or serious damage to property of another. However, Banks is suitable for a conditional release."

**12.**

At the time of the report, Banks was prescribed numerous psychotropic medications. Banks was also found to meet the criteria for alcohol use disorder, cocaine use disorder and cannabis use

disorder. Banks' history and/or risk assessments indicated that when he did not take his prescribed medication, he was at risk of acting out violently toward members of the community.

**13.**

On February 18, 2021, the Court ordered Banks released to Federal supervision, subject to the following conditions:

(a) The Defendant shall be supervised by the U.S. Probation Office for the District of Oregon. The Defendant will receive instructions from the Court or Probation Officer about how and when to report to the Probation Office, and the Defendant shall report to the Probation Office as instructed.

(b) The Defendant shall reside in and satisfactorily participate in a community corrections center, to include a pre-release component if determined appropriate by the Residential Reentry Center Manager and the U.S. Probation Office, for not more than 180 days, to be released at the direction of the Probation Officer. The Defendant must follow the rules and regulations of the center. Defendant shall participate in medication management, case management and treatment recommendations made by the Probation Officer or mental health staff.

(c) The Defendant shall allow the Probation Officer to visit him at any time at the RRC or elsewhere, and the Defendant shall permit the Probation Officer to take any items prohibited by the conditions of the Defendant's supervision that he or she observes in plain view.

(d) The Defendant shall participate in a mental health treatment program as directed and maintain any prescribed medications, including: following all rules, regulations and instructions of any treatment staff and complying with the treatment regimen recommended by his treatment providers; and continue taking any medication, including injectable units, prescribed by a qualified psychiatrist or physician until directed to cease such medication by

**Page 5 of 16 – FIRST AMENDED COMPLAINT**

a qualified psychiatrist or physician. This may include daily medication dispensing and monitoring. The Defendant shall comply with medication monitoring and dispensing as directed, until such time deemed no longer necessary by the U.S. Probation Officer in consultation with the Defendant's treating psychiatrist.

(e) The Defendant shall participate in a substance abuse treatment program, which may include drug testing and inpatient or outpatient treatment, as directed by his treatment provider or the U.S. Probation Officer. The Defendant shall follow all rules, regulations and instructions of any treatment staff and attend treatment as directed. The Defendant shall not discontinue treatment without permission of the Probation Officer.

(f) The Defendant shall voluntarily admit himself into a hospital for treatment upon the recommendation of the medical provider or his Probation Officer. If local or state facilities are unable to ensure the safety of others, his Probation Officer shall contact the Court for further instructions regarding the Defendant's possible return to federal custody (preferably FMC Butner, North Carolina).

(g) The Defendant shall sign all release of information documents required by any professional providing treatment and/or medical services. The Defendant will waive his right to confidentiality regarding his mental health treatment to allow sharing of clinical information with the U.S. Probation Officer, U.S. Attorney's Office and the Federal Bureau of Prisons officials, who will monitor the Defendant's continued appropriateness for community placement.

(h) The Defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(l)), other electronic communications or data storage devices or media or office to a search conducted by a U.S. Probation Officer at a reasonable time in a reasonable manner, based upon reasonable suspicion of contraband or

**Page 6 of 16 – FIRST AMENDED COMPLAINT**

evidence of a violation of a condition. The Defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Failure to submit to a search may be grounds for revocation of release.

(i)  The Defendant shall refrain from any use or possession of alcohol and/or other intoxicants,  including over-the-counter medications  used  contrary to  the recommended dosage, or the intentional inhalation of any substance, prescribed or otherwise,  without  the permission of the Probation Officer.  Additionally, the Defendant shall not enter establishments whose primary income is derived from the sale of alcohol.

(j)  The Defendant shall not own, possess or have access to a firearm, ammunition, destructive device or dangerous weapon (i.e., anything that was designed or modified for the specific purpose of causing bodily injury or death to another person, such as nunchakus or taser). This includes imitation firearms or other weapons.

(k) The Defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered.

(l)  The Defendant shall refrain from any unlawful use or possession of a controlled substance and shall submit to drug and alcohol testing as directed by the Probation Officer.

(m) The Defendant shall not write, say or communicate threats.

(n)  The Defendant shall not commit a federal, state or local crime. The Defendant shall notify his U.S. Probation Officer within twenty-four hours if he is arrested or questioned by any law enforcement officer.

(o) The Defendant shall not communicate or interact with someone the Defendant knows is engaged in criminal activity. If the Defendant knows someone has been convicted of a felony, the Defendant shall not knowingly communicate or interact with that person without first

**Page  7 of 16 – FIRST AMENDED COMPLAINT**

getting the permission of the Probation Officer.

(p) The Defendant shall establish a representative payee for his Social Security benefits. If any changes in representative payee status are required, his U.S. Probation Officer should be notified.

(q) Pursuant to 18 U.S.C. § 4247(e), the U.S. Probation Officer shall file annual reports with the Court and provide copies to the U.S. Attorney, Defendant's counsel and FMC Butner Warden.

## 14.

The Order required Banks to follow the above-listed conditions of his release or risk arrest and revocation of his release.

## 15.

On May 13, 2021, Banks was released to a facility in Portland, Oregon, for his residential re-entry. His supervision by USPO began upon release and placement. His case was assigned to Senior U.S. Probation Officer Sparks. Ultimately, Banks was housed at a care facility in Portland operated by Cameron Care, Inc. ("Cameron Care").

## 16.

On June 29, 2021, Cameron Care staff reported to Sparks that Banks missed his medication and was absent from the facility.

## 17.

On July 1, 2021, Cameron Care staff reported to Sparks that Banks missed his medication, as he was out of the facility.

## 18.

On August 5, 2021, Cameron Care staff reported to Sparks that Banks missed his medication and was absent from the facility.

**Page  8 of 16 – FIRST AMENDED COMPLAINT**

**19.**

On September 22, 2021, Cameron Care staff reported "Clinical Behavior Change" and "Inappropriate Behavior" regarding Banks to Sparks. The same report noted that Banks was "a little bit aggressive when talking" and stated Banks seemed to have some delusions, was out of the ordinary, made statements like he is a king and died and came back to life several times.

**20.**

On October 4, 2021, Cameron Care staff updated Sparks that Banks was missing medications, unemployed and out of the facility often. The staff stated in an email that "if we dont [sic] follow up with these he could easily slide out of baseline" and that his behavior was "highly concerning since he has struggled with this in the past and can become violent and unpredictable when not taking medications."

**21.**

On November 5, 2021, Cameron Care reported that when Banks was asked what he would like for his birthday meal, Banks gave delayed answers and required several prompts to answer questions. The report stated that all staff noticed Banks had red, droopy eyes and seemed more talkative, relaxed and outgoing than usual. The treatment team was updated, and staff were requested to monitor for changes.

**22.**

On November 25, 2021, Cameron Care reported to Sparks that Banks again missed his medication.

**23.**

On December 4, 2021, Cameron Care reported to Sparks that Banks again missed his medication.

**Page  9 of 16 – FIRST AMENDED COMPLAINT**

**24.**

On December 5, 2021, Cameron Care reported Banks threatened to rape another resident. That same resident reported that she suspected Banks had a gun.

**25.**

On December 9, 2021, Banks missed his 8 a.m. medication, as he would not get out of bed. The incident reports states that staff tried to get him up three to four times. Again, Cameron Care staff notified Sparks.

**26.**

On December 20, 2021, Cameron Care staff emailed Sparks that Banks had missed medications again and that staff "continue[s] to be concerned that all these small pieces to his current situation is going to create a much bigger problem."

**27.**

On December 24, 2021, Banks again missed his medication.

**28.**

On January 2, 2022, Banks murdered Isaiah Hust by shooting him with a firearm.

**29.**

On January 10, 2022, Cameron Care staff reported to Sparks that Banks missed his medication.

**30.**

On January 11, 2022, Cameron Care staff reported to Sparks that Banks again missed his medication.

///

**31.**

On January 12, 2022, Sparks emailed Cameron Care expressing concern with Banks missing medications due to his "history of becoming violent when he is not taking them."

**32.**

On January 19, 2022, Cameron Care reported to Sparks that Banks again missed his medication.

**33.**

During January 2022, Cameron Care reported to Sparks that Banks failed to return to the facility at night on ten different occasions.

**34.**

In Cameron Care's January monthly progress report, Cameron Care reported to Sparks, "[Banks] continues to stray from his baseline behavior, with more comments of paranoia and anger at staff or residents." The report reiterated that "CCI continues to be concerned that all these small pieces to his current situation is going to create a much bigger problem."

**35.**

On February 2, 2022, Banks murdered Jeff Ramirez by shooting him with a firearm. Banks also shot Stephen and Christopher Barrera, wounding them.

**36.**

On February 15, 2022, Banks' treatment team, including Cameron Care and Sparks, staffed Banks' case to discuss concerns including that Banks was missing medications multiple times a month; he was out of the facility most of the time; exhibiting "odd" behavior; suspected substance abuse; and was driving his own car without proof of license, insurance and registration. ///

**37.**

**Page  11 of 16 – FIRST AMENDED COMPLAINT**

During this meeting, Cameron Care staff again expressed concern about Banks missing medications "due to previous patterns" and his "potential to become violent as historically shown." Sparks promised she would inform the Court. Upon information and belief, Sparks never informed the court of Banks' repeated violations.

**38.**

On February 28, 2022, Banks shot Thad Thomas and Lillian Cloud, wounding them.

**39.**

On February 27, 2022, Banks asked a female staff member if she wanted to be his girlfriend and gave her a "weird" stare. He kept pacing back and forth by the medication room. Cameron Care staff reported this behavior to Sparks, but she took no action.

**40.**

In total, between June 2021 and February 2022, there were thirty-two (32) separate incident reports at Cameron Care concerning Banks' conduct. Upon information and belief, most, if not all, of these were reported to Sparks. Upon information and belief, at no point during this period did Sparks alert the court or set a hearing.

**41.**

On March 1, 2022, Joseph Banks shot Mark Johnson while Johnson stood next to his vehicle on North Stanton Street, next to Dawson Park. When police arrived, they found Johnson's lifeless body on the ground beside his vehicle.

**42.**

On March 28, 2022, a Multnomah County Grand Jury indicted Banks on three counts of Murder in the Second Degree with a Firearm, three counts of Assault in the First Degree with a Firearm, three counts of Assault in the Second Degree with a Firearm, three counts of Unlawful

**Page  12 of 16 – FIRST AMENDED COMPLAINT**

Use of a Weapon with a Firearm, two counts of Attempted Murder in the Second Degree with a Firearm and one count of Attempted Murder in the First Degree with a Firearm for the crimes enumerated above. His attorneys have notified the court of his defense of Guilty Except for Insanity, pursuant to ORS 161.295.

43.

Upon information and belief, all of the USPO's actions or inactions complained of herein were ministerial in nature, and none involved the use of discretion, in that, said actions clearly and unequivocally violated the ministerial rules, regulations, policies and procedures of the Federal Probation Office, The Guide to Judiciary Policy, the Order and such other well-established rules, regulations, policies and procedures of the Federal Probation Office.

ADMINISTRATIVE CLAIMS

44.

Pursuant to 28 U.S.C. § 2401(b), Plaintiff has duly and timely filed Administrative Tort Claims in the standard form as prescribed by the Department of Justice for the events and incidents described throughout this complaint. The aforesaid Administrative Claims notice was duly served upon the Office of the General Counsel of the Office of the U.S. Courts and U.S. Probation Office and were dated January 5, 2024. By letter dated Marh 27, 2024, the Government and defendant herein gave Plaintiff notice that the Plaintiff's Administrative Claims were denied. Plaintiff now brings this action within the six-month time limitation as provided under the FTCA.

CLAIM FOR RELIEF
<i>Wrongful Death-Negligence</i>

45.

Plaintiff realleges and incorporate herein paragraphs 1-44.

46.

**Page 13 of 16 – FIRST AMENDED COMPLAINT**

As described above, at all material times, USPO employee Sparks was acting in the course and scope of her employment.

**47.**

The USPO was negligent and unreasonably caused a foreseeable risk of harm in one or more of the following particulars, which, either individually or combined, led to Johnson's foreseeable injuries and death as alleged in this Complaint:

(a) In failing to adequately supervise Banks;

(b) In failing to follow the Order, including but not limited to:

    i. Failing to ensure Banks participated in and followed medication management;

    ii. Failing to ensure Banks participated in and followed case management orders; and

    iii. Failing to ensure Banks followed treatment recommendations made by the probation officer or mental health staff.

(c) In failing to advise the court of Banks' failure to meet and/or his violations of the various rules of probation imposed by the Court;

(d) In failing to conduct a timely search of Banks' room and vehicle(s) to determine if Banks was in possession of a firearm;

(e) In failing to report to the Court that Banks allegedly possessed a firearm;

(f) In failing to take action or report to the Court when Banks violated the law by driving without a license;

(g) In failing to take action or report to the Court when Banks threatened violence against other residents and staff of Cameron Care;

(h) In failing to follow through with ensuring Banks' medication protocol was changed from oral to injectable medication;

**Page 14 of 16 – FIRST AMENDED COMPLAINT**

(i) In negligently training and/or supervising its officers, including Sparks;

(j) In violating the mandatory and non-discretionary rules, regulations, procedures, policies and guidelines the USPO and Sparks are required to follow. Defendant's violations include, but are not limited to, the following:

i. Failure to continuously assess and manage the risk Banks presented to the community through an ongoing process of investigation, thereby violating The Guide to Judiciary Policy, Ch. 8, Part E, § 150(d) (*Monogram 109*) (hereinafter, the "Guide");

ii. Failure to monitor Banks' deteriorating condition and violations of the Order, thereby violating both 18 U.S.C. § 3603 and the Guide, Ch. 8, Part E, § 160.20(a);

iii. Failure to record and report to the Court Banks' many violations of the conditions outlined in the Order and his overall deteriorating condition, thereby violating 18 U.S.C. § 3603; the Guide, Ch. 8, Part E, § 160.20(a)(2), (5) and (8), Ch. 6, §610(c), § 620.30(b) and Ch. 6, §630.30.20; and the *Post-Conviction Supervision Procedures Manual,* PR 4.30.30.30;

iv. Failure to properly investigate, such as contacting collateral sources, and assess reports of Banks' deteriorating condition, including reports that Banks possessed a firearm in violation of the Order, thereby violating the Guide, Ch. 8, Part E, § 170(e);

v. Failure to adjust supervision, as required on an ongoing basis to intervene with controlling and correctional strategies to address indications of heightened risk or to respond to Banks' behaviors that did not comply with the conditions of the Order, thereby violating the Guide, Ch. 8, Part E, § 170(f) and Ch. 6, §610(a);

vi. Failure to report and otherwise request revocation based on Banks' "high severity violations" to the Court, as defined in and required by the Guide, Ch. 8, Part E, § 170(f) and Ch. 6, §620.40.30 and §620.60; and

vii. Failure to manage, inform the Court or otherwise seek revocation of Banks' conditional release after receiving reports of Banks' decompensation and threats of violence to others, thereby violating the USPO's *Substance Use and Mental Health Procedures Manual*, PR 6.30.10-30.

**48.**

As a direct and foreseeable result of the negligence of the United States through the USPO as alleged in this Complaint, Johnson was killed as described herein. The Estate is entitled to a reasonable amount of non-economic, economic and other damages as enumerated under ORS 30.020.

**WHEREFORE**, Plaintiff prays for judgment as follows:

**On the Claim for Relief – Wrongful Death/Negligence**, for judgment against defendant USPO for economic, non-economic and other compensatory damages as provided for in ORS 30.020 and all costs, in whatever amount the jury concludes is appropriate.

DATED this 23rd day of September, 2024.

PAUL GALM, ATTORNEY AT LAW, LLC

s/ Paul Galm
paul@paulgalmlaw.com

THE LAW OFFICE OF JOSH LAMBORN, P.C.

s/ Josh Lamborn
jpl@pdxinjurys.com
Trial Attorneys: Paul Galm/Josh Lamborn