**NATALIE K. WIGHT, OSB #035576**
United States Attorney
District of Oregon
**PATRICK J. CONTI, CSB #271046**
Assistant United States Attorney
Patrick.Conti@usdoj.gov
**THOMAS S. RATCLIFFE, ILSB #6243708**
Assistant United States Attorney
Thomas.Ratcliffe@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Telephone: 503.727.1000
        Attorneys for Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **MARK ANTHONY JOHNSON II,** Personal Representative for the **Estate of Mark Anthony Johnson,** | Case No.: 3:24-cv-01597-JLR |
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION TO DISMISS** |
| **THE UNITED STATES OF AMERICA, THE UNITED STATES PROBATION OFFICE FOR THE DISTRICT OF OREGON** | |
| Defendant. | |

# Table of Contents

Local Rule 7-1 Certification..................................................................................1

Motion.................................................................................................................1

Introduction........................................................................................................1

Background ........................................................................................................1

Legal Standard...................................................................................................4

Argument............................................................................................................5

  A.  The Discretionary Function Exception .......................................................5

  B. The Discretionary Function Exception Bars Claims
     Based on Supervision by the Probation Office...........................................8

  C. The Discretionary Function Exception Bars Claims
     Based on the Alleged Failure to Advise the Court of
     Banks's Violations............................................................................... 13

      1.  The Probation Office had no obligation to report to Judge Brown
         the type of conduct alleged in the Complaint.............................. 13

      2.  Judge Brown's subsequent, intervening discretion defeats
         Plaintiff's attempt to blame Probation for Banks remaining in the
         community on the day Johnson was murdered............................ 18

      3.  Even if the Probation Office's decisions about what to report are
         not protected by the discretionary function exception, Plaintiff
         has not plausibly alleged anything that had to be reported to
         Judge Brown ........................................................................... 22

  D.  The Discretionary Function Exception Bars Claims
     Based on Negligent Training and Supervision of Officers ................... 23

  E.  Plaintiff Fails to Allege Any Cognizable Claim
     Based on Violation of Federal Rules or Regulations ........................... 24

Conclusion .................................................................................................... 26

# Table of Authorities

## Federal Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 5

*Bailey v. United States*, 623 F.3d 855 (9th Cir. 2010) ..................................... 7

*Ctr. for Cmty. Action & Envtl. Justice v. BNSF R. Co.*,
  764 F.3d 1019 (9th Cir. 2014) ....................................................................... 5

*Downs v. United States*, 522 F.2d 990 (6th Cir. 1975) ................................... 26

*Dunn & Black P.S. v. United States*, 492 F.3d 1084 (9th Cir. 2007) ............. 6

*Esquivel v. United States*, 21 F.4th 565 (9th Cir. 2021) ........................ 6, 8, 18

*First National Bank in Brookings v. United States*,
  829 F.2d 697 (8th Cir. 1987) ....................................................................... 25

*Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279 (3d Cir. 1995) ....... 21-22

*Delta Savings Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001) .......... 25

*GATX/Airlog Co. v. United States*, 286 F.3d 1168 (9th Cir. 2002) ................. 7

*General Dynamics Corp. v. United States*,
  138 F3d 1280 (9th Cir. 1998) ................................................................. 20, 21

*Gonzalez v. United States*, 814 F.3d 1022 (9th Cir. 2016) ........................... 17

*Hardiman v. United States*, 945 F. Supp. 2d 246 (D. Mass. 2013) .............. 10

*Irving v. United States*, 162 F.3d 154 (1st Cir. 1998) ................................... 16

*Jet Indus., Inc. v. United States*, 777 F.2d 303 (5th Cir. 1985) ..................... 8

*Johnson v. United States*, 949 F.2d 332 (10th Cir. 1991) .............................. 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................... 4

*Kornberg v. United States*, 798 F. App'x 1019 (9th Cir. 2020) ...................... 24

*Kugel v. United States*, 947 F.2d 1504 (D.C. Cir. 1991) ................................ 25

*Lam v. United States*, 979 F.3d 665 (9th Cir. 2020) ..................................... 18

*Mahon v. United States*, 742 F.3d 11 (1st Cir. 2014) ................................... 22

*Miller v. United States*, 163 F.3d 591 (9th Cir. 1998) .................................. 16

*Miller v. United States*, 992 F.3d 878 (9th Cir. 2021) .............................. 23-24

*Molchatsky v. United States*, 713 F.3d 159 (2nd Cir. 2013) .......................... 20

*Molchatsky v. United States*, 778 F. Supp. 2d 421 (S.D.N.Y. 2011) ........ 14, 19

*Morris v. United States*, 706 F. Supp. 3d 636 (E.D. Tex. 2023) .................... 15

*Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000) .................................. 23

*Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015) ............................................ 5

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) .............................. 5

*Rosebush v. United States*, 119 F.3d 438 (6th Cir. 1997) ............................. 16

*Sabow v. United States*, 93 F.3d 1445 (9th Cir. 1996) ................................. 16

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ........................ 4

*Schurg v. United States*, 63 F.4th 826 (9th Cir. 2023) .................................. 7

*Sea Air Shuttle Corporation v. United States*,
112 F.3d 532 (1st Cir.1997) ........................................................................ 25

*Taylor v. Garwood,* No. 99-cv-2478,
2000 WL 873300 (E.D. Pa. Jun. 20, 2000) ................................................. 10

*Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007) .................................. 25

*Terbush v. United States*, 516 F.3d 1125 (9th Cir. 2008) ............................... 7

*Thompson v. United States*, 592 F.2d 1104 (9th Cir. 1979) ...................... 25-26

*United States v. Gaubert*, 499 U.S. 315 (1991) .......................................... 6, 16

*United States v. Varig Airlines*, 467 U.S. 797 (1984) ..................................... 6

*Weissich v. United States*, 4 F.3d 810 (9th Cir. 1993) ......................... 8, 11, 12

*Zabala Clemente v. United States*, 567 F.2d 1140 (1st Cir. 1977) ................ 25

## Federal Statutes

18 U.S.C. § 3603 ............................................................................. *passim*

18 U.S.C. § 4243 ............................................................................. 2, 13, 14

18 U.S.C. § 4243(e)...............................................................................2

18 U.S.C. § 4243(f) ......................................................................... 13

28 U.S.C. § 1346(b) ......................................................................... 5, 24

28 U.S.C. §§ 2674-80 ............................................................5

28 U.S.C. § 2680(a) ........................................................ 6

**Federal Rules**

Federal Rule of Civil Procedure 12 ........................................ 1, 4, 5

**Other Authorities**

The Guide to Judiciary Policy (Guide), Vol. 8, Pt. E.............................. 4, 8, 10

Guide Vol. 8, Pt. E, § 110...............................................................8

Guide Vol. 8, Pt. E, § 140...............................................................9

Guide Vol. 8, Pt. E, § 150...............................................................9

Guide Vol. 8, Pt. E, § 170(b) ..........................................................9

Guide Vol. 8, Pt. E, § 210.20(b)(8)..................................................... 14

Guide Vol. 8, Pt. E, § 310(b) ..........................................................9

Guide Vol. 8, Pt. E, § 330.10...........................................................9

Guide Vol. 8, Pt. E, § 330.30...........................................................9

Guide Vol. 8, Pt. E, § 350.10(b) .......................................................9

Guide Vol. 8, Pt. E, Ch. 3, Appx. 3A, II(B) ....................................... 12

Guide Vol. 8, Pt. E, Ch. 3 Appx. 3A, III(A)....................................... 12

Guide Vol. 8, Pt. E, § 410(d) ........................................................ 10

**CERTIFICATE OF COMPLIANCE WITH LR 7-1**

Counsel conferred but were unable to resolve this matter.  Plaintiff opposes this motion.

**MOTION**

Defendant the United States of America, the United States Probation Office for the District of Oregon moves to dismiss this action for lack of subject-matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  This motion is based on the accompanying memorandum and the supporting declaration and exhibits.

**INTRODUCTION**

Plaintiff brings this wrongful death action pursuant to the Federal Tort Claims Act (FTCA).  Plaintiff alleges the United States Probation Office negligently supervised Joseph Banks, and as a result Mr. Banks murdered Mark Johnson.  Dismissal is appropriate because the Probation Office's challenged decisions in supervising Joseph Banks are immune from challenge under the FTCA's discretionary function exception, and to the extent not, Plaintiff has failed to state a cognizable negligence claim.

**BACKGROUND**

The following facts are alleged in Plaintiff's First Amended Complaint (FAC, ECF 3).

After being found not guilty by reason of insanity on a charge of being a

**Page 1 – Defendant's Motion to Dismiss**

felon-in-possession of a firearm, Joseph Banks (Banks) was sent to the Bureau of Prisons (BoP) for treatment and care, pursuant to 18 U.S.C. § 4243(e). He was conditionally released in 2009 but returned to custody in 2011 on a violation of his conditional release. He remained in custody for nine more years.

By June 2020, BoP medical staff concluded that Banks's mental condition had improved sufficiently to allow his release under a regimen of psychiatric treatment. On February 18, 2021, the Honorable Anna J. Brown, United States District Court Judge for the District of Oregon, ordered Banks's release, pursuant to the conditional release provisions of 18 U.S.C. § 4243. Declaration of Jeremy Corey (Corey Decl.), Ex. 1. The release order directed the United States Probation Office for the District of Oregon (Probation Office) to supervise Banks and imposed a variety of conditions on him. Among those were requirements that he participate in a mental health treatment program, maintain any prescribed medications, and not commit a federal, state, or local crime.

On May 13, 2021, Banks was released to a residential reentry center and soon moved to a facility in Portland operated by Cameron Care.

Starting in late June 2021, Banks missed his medication 12 times over the course of six months. FAC ¶¶16-32. Plaintiff alleges that the Probation Officer was aware of some but not all of those instances of missed

**Page 2 – Defendant's Motion to Dismiss**

medications.

On February 2, 2022, Banks murdered Jeff Ramirez, and wounded Stephen and Christina Barrera by shooting them. *Id.* ¶ 35. Plaintiff does not allege that the Probation Office was aware of these crimes.

Plaintiff alleges, upon information and belief, that the Probation Office "never informed the court" of Banks's "repeated violations." *Id.* ¶ 37. In fact, the Probation Office did notify Judge Brown about their concerns with Banks. *See* Corey Decl. ¶ 7.

Banks shot Thad Thomas and Lillian Cloud, wounding them, on February 28, 2022. FAC ¶ 38. Plaintiff does not allege that the Probation Office was aware of these crimes.

On March 1, 2022, Banks shot and killed Mark Johnson as he stood next to his vehicle near Dawson Park in Portland. *Id.* ¶ 41. Banks is currently charged with that offense in Multnomah County Circuit Court. *See State of Oregon v. Joseph Kelly Banks,* Case No. 22CR10692.

Plaintiff brings a single claim for wrongful death-negligence pursuant to the FTCA. In support, Plaintiff alleges:

> (1) the Probation Office inadequately supervised Banks by failing to ensure he followed his medication management, case management orders, and treatment recommendations, failed to timely search his room, and failed to ensure his medication protocol was changed (FAC ¶ 47(a), (b), (d), (h));

**Page 3 – Defendant's Motion to Dismiss**

(2) the Probation Office negligently trained and supervised its officers (*Id.* ¶ 47(i));

(3) the Probation Office failed to advise Judge Brown that Banks violated the Court's order by possessing a firearm, drove without a license, and threatened violence against others (*id.*, ¶ 47 (c), (e)-(g)); and

(4) the Probation Office did not comply with various federal rules, regulations, procedures, policies and guidelines (*id.* ¶ 47 (j)).

Plaintiff alleges, upon information and belief, that "all of the [Probation Office's] actions or inactions" at issue in the Complaint were "ministerial in nature, and none involved the use of discretion," in that the "actions clearly and unequivocally violated ministerial rules, regulations, policies and procedures of" the Probation Office, the Guide to Judiciary Policy and "other well-established rules, regulations, policies and procedures" of the Probation Office. FAC ¶ 43.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and an action is presumed to lie "outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[N]o presumptive truthfulness attaches to plaintiff's allegations" and the court may "hear evidence regarding

**Page 4 – Defendant's Motion to Dismiss**

jurisdiction and resolv[e] factual disputes where necessary." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (citation omitted). When a court "lacks subject-matter jurisdiction, the court must dismiss the complaint." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (citation omitted).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint may be dismissed when there is "either a lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable legal claim." *Ctr. for Cmty. Action & Envtl. Justice v. BNSF R. Co.*, 764 F.3d 1019, 1023 (9th Cir. 2014) (quoting *Hinds Inves., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011)).

## ARGUMENT

### A.    The Discretionary Function Exception

The FTCA, 28 U.S.C. §§ 1346(b), 2674-80, is a limited waiver of the sovereign immunity of the United States for torts committed by federal

**Page 5 – Defendant's Motion to Dismiss**

employees acting within the scope of their employment. *Esquivel v. United States*, 21 F.4th 565, 572-73 (9th Cir. 2021). The party asserting a claim against the federal government bears "the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress." *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

The discretionary function exception, however, precludes FTCA claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The discretionary function exception is designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991). It "marks the boundary between Congress's willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

Courts apply a two-step test to determine whether the discretionary function exception applies.

**Page 6 – Defendant's Motion to Dismiss**

First, courts ask "whether a federal statute, regulation, or policy mandated a specific course of action, or whether the government actor retained an element of judgment or choice with respect to carrying out the challenged action." *Schurg v. United States*, 63 F.4th 826, 831 (9th Cir. 2023) (cleaned up). An agency "retains discretion whether to act where no statute or agency policy dictates the precise manner in which the agency is to complete the challenged task." *Bailey v. United States*, 623 F.3d 855, 860 (9th Cir. 2010).

Second, courts ask "whether the government actor's action or inaction was based on considerations of public policy, which are the kind that the discretionary function exception was designed to shield." *Schurg*, 63 F.4th at 831 (cleaned up). "Where the government agent is exercising discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Esquivel*, 21 F.4th at 574 (cleaned up). "[A]ctual evidence" is not required "that policy-weighing was undertaken." *Terbush v. United States*, 516 F.3d 1125, 1136 n. 5 (9th Cir. 2008). Instead, the question is "merely whether such a decision is *susceptible* to policy analysis." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1178 (9th Cir. 2002) (emphasis in original).

"If the challenged action satisfies both of these two prongs, that action is immune from suit – and federal courts lack subject matter jurisdiction –

**Page 7 – Defendant's Motion to Dismiss**

even if the court thinks the government abused its discretion or made the wrong choice." *Esquivel*, 21 F.4th at 574 (cleaned up).

## B. The Discretionary Function Exception Bars Claims Based on Supervision by the Probation Office

In support of the negligence claim, Plaintiff broadly alleges that the murder of Johnson was due to the Probation Office's inadequate supervision of Banks. This portion of the claim fails because it is well established that decisions made by federal probation or pretrial services officers regarding supervision of their clients involve judgment and choice. *See, e.g., Weissich v. United States*, 4 F.3d 810, 815 (9th Cir. 1993) (holding United States shielded from liability under discretionary function exception even if probation was negligent in its supervision); *Jet Indus., Inc. v. United States*, 777 F.2d 303 (5th Cir. 1985) (holding discretionary function exception barred suit based on failure to maintain supervision over probationer).

By policy, probation officers are called upon to exercise their professional judgment. The Guide to Judiciary Policy (Guide) "provides guidance to U.S. probation offices on the supervision of persons who are conditionally released to the community by the U.S. district courts" or are "on probation, parole, or supervised release." Guide, Vol. 8, Pt. E, § 110 ("Purpose").[1] Throughout the Guide, the discretionary nature of the officers'

---

[1] A copy of the Guide, Vol. 8, Pt. E is attached as Exhibit 2 to the Corey

**Page 8 – Defendant's Motion to Dismiss**

duties is emphasized.[2]  An officer's *professional judgment* – defined as "the assessment of the risk to reoffend based on the probation officer's professional training and experience" – "drives daily decisions that the probation office uses to achieve the purposes of supervision."  *Id.* at §§ 140 ("Definitions"); 310(b) ("Overview").  The Guide instructs that supervision should be individualized and "involve only such deprivation of liberty or property as is reasonably necessary to achieve the supervision objectives," and that officers should assess risk "using professional judgment."  *Id.* at § 150(e), (h) ("Philosophy and Purpose of Post-Conviction Supervision").

The need for probation officers to exercise discretion is apparent, given the nature of their work.  Supervision is a "dynamic process of applying evidence-based interventions, strategies and techniques to foster compliance with the conditions of supervision and equip" clients "with skills to manage themselves lawfully during and beyond the period of supervision."  *Id.* at § 350.10(b) ("Introduction").  "Because noncompliant behavior can take many

Declaration.

[2]    For example, the Guide instructs that evidence-informed methods should drive decision-making.  That approach involves integrating available evidence with "the probation officer's professional judgment."  *Id.* at §170(b) ("Evidence-Informed Methods of Decision-Making").  Assessing a client's risk to reoffend, which is a foundational aspect of a probation officer's work, should be based on data from a specific actuarial risk assessment tool *and the officer's professional judgment.  Id.* at § 330.10 ("Post Conviction Risk Assessment"); *see also id.* at § 330.30 ("Assessing Imminent Risk to Re-Offend").

**Page 9 – Defendant's Motion to Dismiss**

forms" and may entail safety concerns, probation officers "should be particularly attentive to," among other things, "the judicious exercise of" their authority. *Id.* at § 410(d) ("Overview").

In the end, "[n]o manual could possibly be written dictating a detailed course of action on such a multifaceted and complex subject where a knowledge of the history, dynamics and conditions of each person subject to supervision is required." *Taylor v. Garwood*, No. 99-cv-2478, 2000 WL 873300, at *4 (E.D. Pa. Jun. 20, 2000) (holding discretionary function exception barred suit because methods used in controlling risk and promoting law-abiding behavior of probationer necessarily involved elements of judgment and choice). Probation officers are unquestionably called upon to exercise their judgment and discretion in supervising clients. *See Weissich*, 4 F.3d at 814 (noting the Guide presumes "significant officer discretion"); *Hardiman v. United States*, 945 F. Supp. 2d 246, 255 (D. Mass. 2013) (noting the Guide grants officers the kind of latitude to make decisions that "the First Circuit recognizes as the essence of a discretionary function") (citing *Bolduc v. United States,* 402 F.3d 50, 61 (1st Cir. 2005)).

The Ninth Circuit has held that a claim based on inadequate supervision meets both prongs of the discretionary function exception. In *Weissich*, the probation office allegedly failed to supervise adequately a probationer who threatened to kill a district attorney who prosecuted him,

**Page 10 – Defendant's Motion to Dismiss**

and then later killed him while on supervision.  4 F.3d at 812.  Like here, the plaintiffs contended that the probation office "negligently supervised" the probationer "by failing to carry out [the probation office's] own plan of supervision and failing to enforce the terms of [the probationer's] probation." *Id*. at 814.

The Ninth Circuit concluded that the discretionary function exception barred the negligence claim.  The court found that the probation office's guidelines allow its officers discretion on how to supervise a probationer, and that exercising such discretion requires balancing "dual obligations to: (1) protect the public, and (2) promote the rehabilitation of the probationer." *Id*. "This balancing of interests necessarily involves policy decisions on matters such as public safety, allocation of scarce resources, and the likelihood of rehabilitation." *Id*.  The court declined to second-guess the probation office's supervision decisions, explaining that while "[p]erhaps the officers should have decided to supervise [the probationer] more closely," and "[p]erhaps . . . unannounced home visits might have been more appropriate," these were "judgment calls . . . made by a probation officer in the context of balancing the policy considerations previously mentioned." *Id*.  Thus, the United States had no liability "even if it was negligent in supervising" the probationer. *Id*. at 815.

**Page 11 – Defendant's Motion to Dismiss**

*Weissich* forecloses Plaintiff's similar challenge in this case, which asks the Court to sift through the Probation Office's supervision of Banks and second-guess its exercise of discretion.  Plaintiff's examples of allegedly inadequate supervision do not change that result.  Calibrating medication management to the individualized needs of a client, including with respect to any decision to switch a client's medication from oral to injectable, requires a probation officer to exercise professional judgment in coordination with the expertise of the prescriber and mental health care team.  As for deciding whether and when to search a client's property, the Guide squarely instructs officers to weigh the risks, including the danger to officers, against the potential advantages.  Guide, Vol. 8, Pt. E, Ch.3, Appx. 3A, II(B) ("Search and Seizure Guidelines").  "Therefore, [just because] an officer may have the authority to conduct a search does not necessarily mean that a decision to do so will be the most prudent decision, under all the circumstances."[3]  *Id.*

---

[3]  More generally, Plaintiff's allegation on this issue is simply that a Cameron Care resident "reported" – apparently to Cameron Care – that she "*suspected* Banks had a gun."  FAC ¶ 24 (emphasis added).  Without an allegation that this information was shared with the Probation Officer, and that the information was sufficiently reliable, Plaintiff has not even plausibly alleged that the Probation Office had the reasonable suspicion necessary to *consider* whether to search Banks's property for a gun.  *See* Guide, Vol. 8, Pt. E, Ch.3, Appx. 3A, III(A) ("An officer shall conduct a search pursuant to a court-ordered condition only when the officer has a reasonable suspicion that contraband or evidence of a violation of the conditions of supervision may be found at the place or in the item being searched.").

**Page 12 – Defendant's Motion to Dismiss**

Plaintiff's attack on the adequacy of the Probation Office's supervision of Banks thus fails because the discretionary function exception bars the type of second-guessing inherent in the Complaint.

## C. The Discretionary Function Exception Bars Claims Based on the Alleged Failure to Advise the Court of Banks's Violations

### 1. The Probation Office had no obligation to report to Judge Brown the type of conduct alleged in the Complaint

Presumably seeking to avoid the discretionary function exception, Plaintiff alleges, based on information and belief, that the Probation Office failed to notify the Court of Banks's conduct. But no statute, rule, or regulation mandated the Probation Office do so.

Banks was being supervised while on conditional release pursuant to 18 U.S.C. § 4243(f). That brought his supervision within the ambit of Section 3603(8).

Section 3603 provides, in part, that probation officers shall:

> (8)(A) *when directed by the court*, and *to the degree required* by the regimen of care or treatment ordered by the court as a condition of release, keep informed as to the conduct and provide supervision of a person conditionally released under the provisions of section 4243, 4246, or 4248 of this title, and report such person's conduct and condition to the court ordering release and to the Attorney General or his designee; and

> (B) immediately report any violation of the conditions of release to the court and the Attorney General or his designee;

**Page 13 – Defendant's Motion to Dismiss**

* * *

18 U.S.C. § 3603 (emphases added).

When the relevant statute, regulation or policy employs qualifying language – such as "when directed by the court" and "to the degree required" – then it is not considered a mandatory directive. *See Molchatsky v. United States*, 778 F. Supp. 2d 421, 432 (S.D.N.Y. 2011) (ruling policy that information "shall" be shared "as appropriate" was not mandatory directive). Section 3603(8) only requires officers to report immediately any violations by conditionally released clients "when directed by the court" and "to the degree required."

And, the Guide similarly interprets Section 3603(8) to require probation officers to report immediately any violations of the conditions of release only *when directed by the court*, or to *the degree required by the regimen of care or treatment ordered by the court* as a condition of release. Guide, Vol. 8, Pt. E, § 210.20(b)(8) ("Statutory Duties of Probation Officers").[4]

---

[4] Specifically, the Guide frames Section 3603(8)'s requirements this way:

(8) when directed by the court, and to the degree required by the regimen of care or treatment ordered by the court as a condition of release:

(A) keep informed as to the conduct of and supervise those who are conditionally released under the provisions of 18 U.S.C. §§ 4243 or 4246;

**Page 14 – Defendant's Motion to Dismiss**

The government is aware of only one court having addressed this issue, albeit in dicta. *See Morris v. United States*, 706 F. Supp. 3d 636, 648 (E.D. Tex. 2023) (holding that Section 3603(8)'s "immediately report" requirement does not apply to individuals on probation or supervised release, while noting "[i]t appears that Congress imposed an additional, more stringent reporting requirement upon those probation officers supervising individuals with certain mental illnesses").

Here, of course, Judge Brown's conditional release order did not require Probation to report – immediately or otherwise – violations of the order. Judge Brown's order allowed the Probation Office to exercise its normal professional judgment with respect to reporting violations of Judge Brown's conditional release conditions. And the Probation Office did just that, reporting potential violations to the Judge on February 3, 2022. *See* Corey Decl. ¶ 7.

Even if Section 3603(8) required the Probation Office to report immediately any violations by Banks while on conditional release, the statute does not defeat the first prong of the discretionary function exception test. As

---

(B) report such persons' conduct and condition to the court ordering release and to the Attorney General or his or her designee; and

(C) immediately report any violation of the conditions of release to the court and the Attorney General or his or her designee.

Guide, Vol. 8, Pt. E, § 210.20(b)(8).

**Page 15 – Defendant's Motion to Dismiss**

the Ninth Circuit has held, "existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion." *Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998); *see also Sabow v. United States*, 93 F.3d 1445, 1453 (9th Cir. 1996); *Johnson v. United States*, 949 F.2d 332, 339-40 (10th Cir. 1991) (applying discretionary function exception to bar claim challenging agency's "information gathering activity," which was mandatory, because it was "inextricably tied to" and part "of the overall policy decision," which was discretionary). The existence of mandatory language does not eliminate discretion, particularly here, where assessing whether a client is violating his supervision conditions or poses a danger is a decision that involves experience, expertise, and judgment.

Moreover, discretion is only removed when a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow[.]" *Gaubert*, 499 U.S. at 322. Thus, courts will not view a statute as prescribing a mandatory directive if it does not set forth a "particular modus operandi" or "specific regimen" to be followed, *Irving v. United States*, 162 F.3d 154, 163 (1st Cir. 1998) (en banc), or dictate the "precise manner" in which the function is to be performed. *Rosebush v. United States*, 119 F.3d 438, 442 (6th Cir. 1997). Section 3603(8) does not specify those things. Without that, Section 3603(8) does not remove officer discretion from the

**Page 16 – Defendant's Motion to Dismiss**

broader context of supervision.

Plus, a probation officer's judgment about what constitutes a "violation" itself requires the officer to exercise discretion before concluding that any violation exists and how it should be shared with the court. *See Gonzalez v. United States*, 814 F.3d 1022, 1029-32 (9th Cir. 2016) (holding discretionary function exception barred claim against FBI for failing to alert local law enforcement of planned home invasion, where despite FBI policy using "shall," agents had to exercise judgment before disclosing possible criminal activity). Whether the Probation Office's alleged knowledge of Banks missing his medications multiple times over six months meant Banks had committed a "violation" for purposes of Section 3603(8) required the Probation Office to exercise their professional judgment. That is particularly true where officers must rely on their professional judgment, and input from mental health professionals, to assess whether therapeutic levels of medication in a client's system are meaningfully reduced by *intermittent* failures to take *single doses* of medication. Similarly, even if the Probation Office had proof that Banks drove without a license – rather than merely being told that he drove "without proof of license," as alleged (FAC ¶ 36) – whether that traffic infraction rose to the level of a "violation" for purposes of Section 3603(8) also required Probation to apply its professional judgment.

Section 3603(8) does not contradict the fundamental truth that

**Page 17 – Defendant's Motion to Dismiss**

probation officers exercise broad discretion in supervising their clients. Of course, the Probation Office's decisions while supervising Banks were susceptible to policy considerations or analysis. Where government agents are exercising discretion, "it must be presumed" that the agents' acts "are grounded in policy when exercising that discretion." *Esquivel*, 21 F.4th at 574 (9th Cir. 2021) (cleaned up); *Lam v. United States*, 979 F.3d 665, 681 (9th Cir. 2020). This again means that the Probation Office's decisions about what to report to Judge Brown are protected by the discretionary function exception and cannot be second-guessed by Plaintiff.

### 2. Judge Brown's subsequent, intervening discretion defeats Plaintiff's attempt to blame Probation for Banks remaining in the community on the day Johnson was murdered

Plaintiff's theory of liability is that if the Probation Office had reported Banks's conduct to Judge Brown, "Banks would have been returned to court and likely would have been back in jail." FAC ¶ 2. But even if Section 3603(8) required the Probation Office to report violations to Judge Brown, liability still hinges on *subsequent and intervening exercises of discretion* by Judge Brown. After all, Banks would have been in the community on March 1, 2022, unless Judge Brown had decided before then to hold a hearing, find Banks in violation, conclude that revocation of his release was necessary, and then keep him in custody past March 1, 2022. When the opportunity for such

**Page 18 – Defendant's Motion to Dismiss**

subsequent exercises of discretion exists, the discretionary function exception applies and cannot be circumvented, as Plaintiff attempts here, by targeting preceding acts or omissions of the Probation Office.

*Molchatsky* illustrates this point. There, investors brought an FTCA action alleging negligence by the Securities and Exchange Commission (SEC) in its oversight of Bernie Madoff. 778 F. Supp. 2d at 421. The plaintiffs alleged that the SEC failed to discover and disclose a Ponzi scheme by Madoff, despite numerous tips, warnings, and investigations. *Id.* at 425. In dismissing the case based on the discretionary function exception, the district court held, and the Second Circuit affirmed, that even if the SEC investigators violated mandatory directives in their investigations of Madoff, those failures did not defeat the exception. That is because preventing the harm ultimately turned on the Commission exercising its discretion to take an enforcement action against Madoff.

As the district court explained, "[t]he Government has thus proffered regulations and statutory authority demonstrating that the proximate cause of Plaintiffs' injury – the SEC's ultimate non-intervention – was within the scope of activity clearly committed to SEC discretion. The [discretionary function exception] applies when 'discretion intervenes between an alleged government wrongdoer and the harm suffered by a plaintiff,' even if the wrongdoer violated a mandatory duty." 778 F. Supp. 2d at 437 (citing

**Page 19 – Defendant's Motion to Dismiss**

*General Dynamics Corp. v. United States*, 139 F.3d 1280, 1285 (9th Cir.1998)).

Affirming this decision, the Second Circuit held that the decisions of the SEC staff members were "too intertwined with purely discretionary decisions" of the Commission as to whether to take action against Madoff in court, and thus could not be parsed out as separate acts or omissions that could defeat the exception. *Molchatsky v. United States*, 713 F.3d 159, 162 (2nd Cir. 2013) (per curiam).

The Ninth Circuit has similarly held that a plaintiff cannot circumvent the discretionary function exception by relying on failures to follow mandatory directives when the harm was caused by, or could have been prevented by, a subsequent, intervening act of discretion. In *General Dynamics*, an audit conducted by the government indicated that General Dynamics had fraudulently mischarged the government. 139 F.3d at 1282. Federal prosecutors indicted General Dynamics, but eventually dismissed the charges.

General Dynamics filed suit under the FTCA, alleging that government auditors failed to perform the audit in accordance with mandatory agency protocols and procedures, which led prosecutors to indict the company unjustifiably. *Id.* The Ninth Circuit recognized General Dynamics's complaint for what it was: an attempt to circumvent the discretionary

**Page 20 – Defendant's Motion to Dismiss**

function exception by posturing its claim as an attack on the preceding conduct of the auditors rather than as an attack on the subsequent, discretionary decisions of the prosecutors. The court concluded that where "the harm actually flows from [a subsequent] exercise of discretion, an attempt to recharacterize the action" as one for negligent investigation "must fail." *Id.* at 1286.

Critically, *General Dynamics* concluded that, "we cannot wholly ignore causation concepts when a robust exercise of discretion intervenes between an alleged government wrongdoer and the harm suffered by a plaintiff. An attempt to go around the exception then amounts to an exercise in mislabeling and misdescription of the truly discretionary source of the injury." *Id.* at 1285.

Notably, neither *Molchatsky* nor *General Dynamics* dwelled on what the ultimate decision-makers would have done if they had received better information. For purposes of the discretionary function exception, all that matters is that the decision-maker had a subsequent, intervening opportunity to exercise discretion, not how the decision-maker would have exercised that discretion had investigators performed more diligently. *Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3d Cir. 1995) (en banc) (inquiries into whether the ultimate decision-maker would have decided differently if he or she had better or more reliable information is what the

**Page 21 – Defendant's Motion to Dismiss**

discretionary function exception was intended to foreclose); *Mahon v. United States*, 742 F.3d 11, 13 (1st Cir. 2014) (same).

Consistent with these cases, because the Probation Office's alleged wrongdoing and Plaintiff's alleged resulting injury are separated by Judge Brown's intertwined and robust exercise of discretion, the discretionary function exception applies, even if the Probation Office's supervision of Banks is not itself shielded by the discretionary function exception. Otherwise, the Court here would engage in the judicial second-guessing that the discretionary function exception is meant to avoid.

**3.  Even if the Probation Office's decisions about what to report are not protected by the discretionary function exception, Plaintiff has not plausibly alleged anything that had to be reported to Judge Brown**

Plaintiff alleges the Probation office failed to advise the Court that Banks had a gun, drove without a license, and threatened violence. FAC ¶ 47(e)-(g). Assuming the Probation Office had a mandatory duty to report such things, Plaintiff does not plausibly allege the Probation Office knew of these facts triggering any such alleged obligation to report to Judge Brown.

For the gun, Plaintiff alleges a third party "reported that she *suspected* Banks had a gun." FAC ¶ 24 (emphasis added). Missing is any allegation that he in fact had a gun or that this fact was known by the Probation Office. As for the license, Plaintiff alleges that Cameron Care staff expressed

**Page 22 – Defendant's Motion to Dismiss**

"concern" that Banks was driving "without proof of license, insurance and registration." *Id.* ¶ 36. Missing is any allegation that the Probation Office in fact knew he was driving without a license, insurance, and registration, or that the Probation Office was required to report mere traffic infractions to the Court. As for the threat, Plaintiff alleges "Cameron Care reported Banks threatened to rape another resident." *Id.* ¶ 24. Again, missing is any indication that this was ever communicated to the Probation Office, or that the report was substantiated to trigger any alleged requirement to report it to Judge Brown.

Without more, Plaintiff has not plausibly alleged that the Probation Office knew of any violation by Banks that arguably needed to be reported to Judge Brown.

## D. The Discretionary Function Exception Bars Claims Based on Negligent Training and Supervision of Officers

Plaintiff also claims that Johnson's murder was partly caused by the Probation Office's negligent training and supervision of its officers. FAC ¶ 47(i). But the training and supervision of Probation Officers "fall squarely" within the discretionary function exception. *Nurse v. United States*, 226 F.3d 996, 1001-02 (9th Cir. 2000) (applying exception to allegations of negligent employment, supervision, and training); *see also Miller v. United States*, 992 F.3d 878, 888 (9th Cir. 2021) ("[W]e have regularly concluded that 'decisions

**Page 23 – Defendant's Motion to Dismiss**

relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield.'"); *Kornberg v. United States*, 798 F. App'x 1019, 1020 (9th Cir. 2020) ("Claims based on 'negligent and reckless employment, supervision[,] and training' of government employees 'fall squarely within the discretionary function exception.'").

## E. Plaintiff Fails to Allege Any Cognizable Claim Based on Violation of Federal Rules or Regulations

Plaintiff's last hope to avoid the discretionary function exception is to base his negligence claim on violations of various federal rules and regulations. FAC ¶ 47(j). This reliance on federal rules and regulations does not save the claim for two reasons.

First, Plaintiff has not identified any mandatory, non-discretionary provision that the Probation Office was required to follow but failed to do so.

Second, even if Plaintiff could identify a mandatory provision that cabins the wide discretion of the Probation Office in supervision matters, such a provision would not support a cognizable claim under Oregon law.

Under the FTCA, the United States can only be liable under circumstances where a "private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). It has been "consistently held that the FTCA's reference to

the 'law of the place' means law of the State – the source of substantive liability under the FTCA . . . . The breach of a duty created by federal law is not, by itself, actionable under the FTCA." *Delta Savings Bank v. United States,* 265 F.3d 1017, 1024 (9th Cir. 2001); *First National Bank in Brookings v. United States,* 829 F.2d 697, 700 (8th Cir. 1987) ("[I]n the absence of a statute, there is no legally enforceable duty on the part of the government to warn or to compensate victims of criminal activity.").

Plaintiff's negligence claim is in substance based on federal statutes, regulations and guidelines governing the conduct of Probation. However, it is "axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs." *Sea Air Shuttle Corporation v. United States,* 112 F.3d 532, 536 (1st Cir.1997) (internal quotes and citation omitted); *see also Tekle v. United States,* 511 F.3d 839, 851 (9th Cir. 2007); *Zabala Clemente v. United States,* 567 F.2d 1140, 1149 (1st Cir. 1977) (explaining why internal agency policies, practices, manuals or orders do not create duties under state law "even where specific behavior of federal employees is required by federal statute"); *Kugel v. United States,* 947 F.2d 1504, 1507-08 (D.C. Cir. 1991) (ruling that FBI internal guidelines do not create actionable duty to general public); *Thompson v. United States,* 592 F.2d 1104, 1110 (9th Cir. 1979) (holding that government safety manual or

**Page 25 – Defendant's Motion to Dismiss**

program does not impose duty on United States toward plaintiff); *Downs v. United States,* 522 F.2d 990, 1002 (6th Cir. 1975) (holding that FBI internal guidelines cannot be basis for negligence per se).

Because sovereign immunity has not been waived for claims based on violation of federal statutes, regulation and guidelines, Plaintiff's negligence claim must be dismissed to the extent it is predicated on such bases.

## CONCLUSION

The Court should grant this motion and dismiss this action.

Dated this 6th day of January, 2025.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney
District of Oregon

/s/ *Thomas S. Ratcliffe*
THOMAS S. RATCLIFFE
PATRICK J. CONTI
Assistant United States Attorneys
Attorneys for Defendant