# Guide to Judiciary Policy

Vol. 8: Probation and Pretrial Services
Pt. E: Post-Conviction Supervision

## Ch. 1: Overview

§ 110 Purpose

§ 120 Applicability

§ 130 Scope

§ 140 Definitions

§ 150 Philosophy and Purpose of Post-Conviction Supervision

§ 160 Evidence-Based Practices

§ 170 Evidence-Informed Methods of Decision-Making

---

## § 110 Purpose

This part provides guidance to U.S. probation offices on the supervision of persons who are conditionally released to the community by the U.S. district courts or paroling authorities on probation, parole, or supervised release. It also provides guidance to probation offices on assistance offered to a prisoner during prerelease custody.

## § 120 Applicability

The guidance in this part applies to employees of the U.S. probation and pretrial services system in U.S. district courts in the performance of their duties.

## § 130 Scope

This part addresses the following areas:

- general legal framework (Ch. 2);
- framework for effective supervision (Ch. 3);
- violations of supervision (Ch. 4);
- records and confidentiality (Ch. 5); and
- transfer of supervision and jurisdiction (Ch. 6).

*Last revised (Transmittal 08-040) July 2, 2018*

EXHIBIT 2
Page 1

| § 140 Definitions | |
|---|---|
| Actuarial risk | Actuarial risk assessment instruments consider individual items (e.g., criminal thinking, criminal associates, or history of substance abuse) that have been demonstrated to increase the risk of reoffending and assign these items quantitative scores.  For example, the presence of a risk factor may receive a score of one and its absence a score of zero.  The scores on the items can then be summed.  The higher the score, the higher the risk that the person under supervision will reoffend (Bonta and Andrews (2007)).  The Post Conviction Risk Assessment (PCRA) is the U.S. probation system's primary tool to assess and predict the risk to reoffend. |
| Acute risk | A person's imminent likelihood of committing a crime. |
| Aggregate risk | A person's risk of reoffending based on consideration of actuarial risk and other available information about the factors that may influence unlawful behavior. |
| Behavioral interventions | The delivery of services by the probation office or service provider, which are not inconsistent with the conditions specified by the sentencing court or paroling authority, to aid the person on supervision and to foster:<br><br>• compliance with conditions of supervision;<br>• lawful self-management; and<br>• improvements in his or her conduct and condition. |
| Behavioral monitoring | The probation office's collection of information about the behaviors of a person under supervision, to the degree required by the conditions specified by the court or paroling authority, to stay informed and report to the sentencing court about the person's conduct and condition. |
| Behavioral restrictions | The restriction of liberty placed on a person under supervision to the degree required by the conditions specified by the court or paroling authority. |
| Criminogenic needs | Research indicates that the success of the person under supervision — and, consequently, the reduction of risk to the community — is contingent upon improvement in key areas of that person's life.  These key areas — also known as criminogenic needs — are dynamic risk factors that, when addressed, affect the person's likelihood to engage in future criminal activity.  Criminogenic needs include:<br><br>• antisocial cognitions;<br>• social networks;<br>• substance abuse;<br>• education; and<br>• employment. |

EXHIBIT 2
Page 2

| § 140 Definitions | |
|---|---|
| Evidence-based practices (EBP) | The conscientious use of the best evidence currently available to inform decisions about the supervision of individuals, as well as the design and delivery of policies and practices, to achieve maximum, measurable reductions in recidivism. **See:** § 160 (Evidence-Based Practices). |
| Lawful self-management | The person's demonstrated ability not to commit a crime during the period of supervision and beyond. **See:** § 150 (Philosophy and Purpose of Post-Conviction Supervision), below. |
| Professional judgment | The assessment of the risk to reoffend based on the probation officer's professional training and experience (Bonta and Andrews (2007)). |
| Valid | A term used for a statistical tool that effectively predicts what it is intended to predict. |

## § 150 Philosophy and Purpose of Post-Conviction Supervision

(a)    As a component of its responsibility for community corrections, the U.S. probation system is fundamentally committed to assisting in the fair administration of justice and to managing and reducing the risk to reoffend posed by persons under its supervision.

(b)    The desired outcomes of supervision, which are derived from the purposes to be served by the sentence imposed, are

    (1)    execution of the sentence;

    (2)    reduction of reoffending; and

    (3)    protection of the community from offenses committed by the person under supervision during the period of supervision and beyond.

(c)    The goal in all cases is the successful completion of the term of supervision, during which the person under supervision:

    (1)    commits no new crimes;

    (2)    is held accountable for victim, family, community, and other court-imposed responsibilities; and

    (3)    prepares for continued success through improvements in his or her conduct and condition.

EXHIBIT 2
Page 3

**See:** John M. Hughes, "We're Back on Track: Preparing for the Next 50 Years," Federal Probation, Sept. 2011.

(d)    While the court and the probation office hold persons under supervision accountable for discovered or reported unlawful behavior, the justice system cannot force a person to remain crime free. Persons under supervision are responsible for their own lawfulness. The period of supervision is an opportunity for the person under supervision to develop the skills and motivation to become and remain lawful, eventually without the oversight and support of the justice system. Therefore, the goal for each person under supervision is lawful self-management (i.e., making personal choices not to engage in criminal behavior). Probation offices manage and reduce the risks posed by those under supervision through:

- monitoring;
- restrictions; and
- interventions.

(e)    Supervision should be individualized and involve only such deprivation of liberty or property as is reasonably necessary to achieve the supervision objectives.

(f)    Supervision should be individualized to each person under supervision, consistent with EBPs (**see:** § 160), and should apply evidence-informed methods of decision-making (**see:** § 170).

(g)    While research has demonstrated the importance of using a valid actuarial risk assessment for predicting whether a person will commit any type of offense, probation offices should also consider the use of instruments that are designed to predict specific types of offenses (e.g., sex and financial crimes) when such tools are available.

(h)    While most risk assessments are designed to predict *who* is at risk to reoffend, acute risk assessments are designed to predict *when* a person is at risk to reoffend. Risk factors that may affect the timing or imminence of reoffending may include changes in circumstances (e.g., opportunity/ access to a victim, substance abuse, anger/hostility, negative mood, employment, interpersonal relationships, living situations). Probation offices should reassess risk using professional judgment whenever these types of changes in circumstances occur. As acute risk assessment tools are developed and validated, probation offices should consider their use.

(i)    Managing and reducing the risks posed by those under supervision involves the application of proven behavior management strategies to

EXHIBIT 2

Page 4

achieve both short-term and long-term reductions in reoffending. This includes the effective use of rewards/incentives and restrictions/ consequences for behaviors that are related to lawfulness and compliance with the conditions of supervision.

## § 160 Evidence-Based Practices

(a)    All probation offices should provide supervision services in accordance with EBPs.

(b)    EBPs in community based supervision refers to the conscientious use of the best evidence currently available to inform decisions about the supervision of individuals, as well as the design and delivery of policies and practices, to achieve maximum, measurable reduction in recidivism.

(c)    Social science research has consistently demonstrated that effective interventions in community corrections adhere to certain principles. Probation offices should consider the following principles when providing supervision services:

   (1)    Risk

          Prioritize supervision and treatment resources for the higher risk persons under supervision, using a valid actuarial risk assessment tool. Higher risk individuals receive the most intensive and extensive interventions.

   (2)    Need

          Target supervision and treatment resources to address the criminogenic needs identified in the risk assessment tool.

   (3)    General Responsivity

          Deliver or provide cognitive behavioral interventions to teach persons under supervision how to be aware of and manage their thoughts, using techniques such as:

          • modeling;
          • role-playing; and
          • reinforcement.

EXHIBIT 2
Page 5

(4)    Specific Responsivity

Deliver interventions in a manner that is responsive to personal characteristics of the person under supervision (e.g., motivation, temperament, learning style, culture, gender, receptivity to change, and cognitive capacity).

(5)    Fidelity

Maximize the extent to which the delivery of an intervention adheres to evidence-based principles.

(6)    Measurement

Measure the results of the interventions and adjust the process or the policies as required.

## § 170 Evidence-Informed Methods of Decision-Making

(a)    All probation offices should provide supervision services in accordance with evidence-informed methods.

(b)    Evidence-informed decision-making involves the integration of:

(1)    EBPs;

(2)    other available evidence (e.g., from new and promising research or from other academic disciplines such as education, medicine, and implementation science);

(3)    the probation officer's professional judgment; and

(4)    the probation office's own evidence, which includes data on outcomes at the district and individual levels.

EXHIBIT 2

Page 6

# Guide to Judiciary Policy

Vol. 8: Probation and Pretrial Services
Pt. E: Post-Conviction Supervision

## Ch. 2: General Legal Framework

(**Note:** No unauthorized disclosure of this policy guidance outside the judiciary is permitted.)

§ 210 Authority
  § 210.10 Statutory Purposes for Terms of Supervision
  § 210.20 Statutory Duties of Probation Officers

§ 220 Conditions of Supervision
  § 220.10 Mandatory Conditions of Probation, Supervised Release, and Parole
  § 220.20 Standard Conditions of Probation, Supervised Release, and Parole
  § 220.30 Special Conditions of Probation, Supervised Release, and Parole

§ 230 Conditions of Conditional Release

§ 240 Modification or Revocation of Supervision

§ 250 Privilege Against Self-Incrimination

§ 260 Confidential Informants

§ 270 Protected Witnesses

---

# § 210 Authority

## § 210.10 Statutory Purposes for Terms of Supervision

### § 210.10.10 Probation (18 U.S.C. § 3561; U.S.S.G. Chapter 5, Part B)

(a) The Sentencing Reform Act, which applies to individuals who committed their offenses on or after November 1, 1987, made probation a sentence in its own right rather than the means by which the imposition or execution of a sentence to imprisonment is suspended. (**Note:** For a summary of legislative landmarks that affect supervision responsibilities, **see:** Key Legislation and Court Decisions Affecting Supervision.)

(b) Under 18 U.S.C. § 3561(a), a defendant may be sentenced to probation unless:

*Last substantive revision (Transmittal 08-042) July 18, 2019*
*Last revised (minor technical changes) January 22, 2020*

EXHIBIT 2
Page 7

    (1)    the offense is a Class A or Class B felony;

    (2)    the offense is an offense for which probation has been expressly precluded by statute; or

    (3)    the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense.

(c)    Under 18 U.S.C. § 3561(b), a defendant who has been convicted for the first time of a domestic violence crime is sentenced to a term of probation if the defendant is not sentenced to a term of imprisonment.

(d)    Under 18 U.S.C. § 3562, probation is one of several options that a court may impose after considering the following factors set forth in 18 U.S.C. § 3553(a):

    (1)    the nature and circumstances of the offense and the defendant's history and characteristics;

    (2)    the need for the sentence imposed to:

        (A)    reflect the seriousness of the offense;

        (B)    promote respect for the law;

        (C)    provide just punishment for the offense;

        (D)    afford adequate deterrence to criminal conduct;

        (E)    protect the public from further crimes of the defendant; and

        (F)    provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the kinds of sentence and the sentencing range established for:

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines:

EXHIBIT 2
Page 8

        (i)      issued by the U.S. Sentencing Commission under 28 U.S.C. § 994(a)(1), subject to any amendments made to such guidelines by act of Congress (regardless of whether the Commission has yet to incorporate such amendments into amendments issued under 28 U.S.C. § 994(p); and

        (ii)     that, except as provided in 18 U.S.C. § 3742(g), are in effect on the date the defendant is sentenced; or

    (B)    the applicable guidelines or policy statements issued by the Sentencing Commission under 28 U.S.C. § 994(a)(3) (in the case of a violation of probation or supervised release), taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether the Sentencing Commission has yet to incorporate such amendments into amendments issued under 28 U.S.C. § 994(p);

(5)    any pertinent policy statement:

    (A)    issued by the Sentencing Commission under 28 U.S.C. § 994(a)(2), subject to any amendments made to such policy statement by act of Congress (regardless of whether the Sentencing Commission has yet to incorporate such amendments into amendments issued under 28 U.S.C. § 994(p); and

    (B)    that, except as provided in 18 U.S.C. § 3742(g), is in effect on the date the defendant is sentenced;

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

### § 210.10.20 Supervised Release (18 U.S.C. § 3583; U.S.S.G. Chapter 5, Part D)

(a)    Supervised release is a sentence to a term of community supervision to follow a period of imprisonment for crimes committed on or after November 1, 1987, the effective date of the Sentencing Reform Act. Unlike regular parole, supervised release is not a form of early release

EXHIBIT 2
Page 9

from prison, but rather a separate sentence imposed in addition to the sentence of imprisonment.

(b)    The court must impose a term of supervised release for:

    (1)    first-time domestic violence offenders (18 U.S.C. § 3583(a));

    (2)    sex offenders, as described in 18 U.S.C. § 3583(k); and

    (3)    certain drug offenders (**see:** Supervised Release Revocation Provisions).

(c)    The court may impose supervised release in other cases, giving consideration to the need for the sentence to meet the following purposes as set forth at 18 U.S.C. § 3583(c):

    (1)    the nature and circumstances of the offense and the defendant's history and characteristics; and

    (2)    the need for the sentence imposed to:

        (A)    afford adequate deterrence to criminal conduct;

        (B)    protect the public from further crimes of the defendant; and

        (C)    provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentence and the sentencing range established for:

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines:

            (i)    issued by the Sentencing Commission under 28 U.S.C. § 994(a)(1), subject to any amendments made to such guidelines by act of Congress (regardless of whether the Commission has yet to incorporate such amendments into amendments issued under 28 U.S.C. § 994(p)); and

            (ii)    that, except as provided in 18 U.S.C. § 3742(g), are in effect on the date the defendant is sentenced; or

EXHIBIT 2

Page 10

       (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission under 28 U.S.C. § 994(a)(3), taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether the Sentencing Commission has yet to incorporate such amendments into amendments issued under 28 U.S.C. § 994(p);

    (4)    any pertinent policy statement:

       (A)    issued by the Sentencing Commission under 28 U.S.C. § 994(a)(2), subject to any amendments made to such policy statement by act of Congress (regardless of whether the Sentencing Commission has yet to incorporate such amendments into amendments issued under 28 U.S.C. § 994(p); and

       (B)    that, except as provided in 18 U.S.C. § 3742(g), is in effect on the date the defendant is sentenced;

    (5)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (6)    the need to provide restitution to any victims of the offense.

  (d)    Consistent with the determinate sentencing system ushered in by the Sentencing Reform Act, punishment (i.e., reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense) is not a purpose to be considered in the imposition of a discretionary term or of the conditions of any term of supervised release. This objective is addressed by a sentence to probation or imprisonment.

### § 210.10.30 Parole and Mandatory Release (18 U.S.C. § 4201 et seq. (repealed))

For U.S. Parole Commission rules and procedures that apply to U.S. probation offices' supervision of federal parolees, **see:** Parole Commission's *Rules and Procedures Manual*.

**Note:** The terms "parole" and "parolee" are used throughout Guide, Vol. 8E, to refer to all persons under supervision under the jurisdiction of the Parole Commission, regardless of the specific form of release.

EXHIBIT 2
Page 11

(a)    Federally Adjudicated Persons

    (1)    Regular parole and mandatory release are forms of early release from prison through the Parole Commission's exercise of discretion and the operation of the good-time laws that were in effect before the Sentencing Reform Act.

        (**Note:** In addition, certain pre-Sentencing Reform Act drug offenders were subject to mandatory add-on "special parole terms" to follow the term of imprisonment. These were replaced by mandatory terms of supervised release. **See:** Supervised Release Revocation Procedures.)

    (2)    These terms are distinguished from either probation or supervised release in that parolees and mandatory releasees remain in the legal custody of the Attorney General, serving a portion of their sentence of imprisonment in the community. The purposes to be served are thus identical to those for the original sentence.

(b)    Militarily Adjudicated Persons

    (1)    Since 1946, the U.S. probation system has supervised all military prisoners released on parole from United States disciplinary barracks and military prisoners who are confined to Federal Bureau of Prisons (BOP) facilities. Parolees who are released from military prisons are under the general jurisdiction of the Department of Defense and the specific jurisdiction of each Clemency and Parole Board of the Departments of the Army, Air Force, and Navy. Military prisoners released from BOP facilities are under the jurisdiction of the Parole Commission.

    (2)    On July 17, 2001, the Department of Defense amended its regulations to authorize mandatory supervised release for all prisoners who otherwise would be released from custody at their minimum release date without the benefit of supervision, except where the Service Clemency and Parole Boards determine it to be inappropriate. The Department of Defense concluded that supervised release supervision of prisoners who are not granted parole before their minimum release date is a highly effective technique to provide an orderly transition to civilian life for released prisoners and to better protect the communities into which such prisoners are released.

EXHIBIT 2
Page 12

(3)    The Department of Defense policy also authorizes the Parole Commission to place BOP military prisoners who are given early release through good-time credits under mandatory supervision "as if on parole." The Parole Commission revised its regulation to authorize supervision for military mandatory releasees under its jurisdiction. The policies of the Department of Defense and Parole Commission are not retroactive and therefore affect only military prisoners who have approved findings of guilt for offenses that occurred on or after August 16, 2001. **See:** Memorandum of Understanding Between the Department of Defense and the Administrative Office of the U.S. Courts, Department of Defense Instruction Number 1325.7, "Administration of Military Correctional Facilities and Clemency and Parole Authority," July 17, 2001.

(c)    D.C. Adjudicated Persons

(1)    On August 5, 2000, the Parole Commission assumed responsibility for persons convicted under the D.C. Code who are:

(A)    on parole; or

(B)    serving a term of supervised release imposed by the Superior Court of the District of Columbia.

(**Note:** These responsibilities were transferred under the National Capital Revitalization and Self-Government Improvement Act of 1997 and the Sentencing Reform Emergency Amendment Act of 2000 (D.C. Code 24-133(c)(2).)

(2)    U.S. probation offices have the responsibility of supervising persons who:

(A)    have been convicted under the D.C. Code;

(B)    are under the jurisdiction of the Parole Commission; and

(C)    are released to districts outside the D.C. metropolitan area; or

(D)    are serving mixed U.S. and D.C. Code sentences (18 U.S.C. §§ 3655 (repealed) and 4203(b)(4) (repealed)).

EXHIBIT 2

Page 13

**§ 210.10.40 Conditional Release (18 U.S.C. §§ 4243, 4246, and 4248)**

(a)     The Federal Courts Administration Act of 1992 authorized probation offices to supervise persons who are conditionally released under the provisions of 18 U.S.C. §§ 4243 (Hospitalization of a person not found guilty by reason of insanity) and 4246 (Hospitalization of a person found guilty and due for release but suffering from a mental disease or defect). Unlike probation, supervised release, or parole, conditional release is a civil rather than a criminal form of supervision.

(b)     The BOP may petition the court for the release of a person who is under a prescribed regimen of medical, psychiatric, or psychological care. Under 18 U.S.C. §§ 4243(f)(2) and 4246(e)(2), the court may order a conditional release upon finding that, under the prescribed regimen of care, the person no longer creates a substantial risk of bodily injury to another person or serious damage to the property of another. (For more information on conditional release, **see:** Conditional Release.) (**Note:** For persons who are conditionally discharged under 18 U.S.C. § 4248 for which the regimen of care includes supervision by the probation office, the court in the district of supervision must first designate (under 18 U.S.C. § 3603(10)) that the probation office provide the required supervision.)

**§ 210.10.50 Juvenile Supervision (18 U.S.C. § 5037)**

For the authority for supervising juveniles, **see:** Guide, Vol. 8J, § 230.10 (Juvenile Disposition Options).

## § 210.20 Statutory Duties of Probation Officers

(a)     The statutory duties of probation officers are set forth at 18 U.S.C. § 3603. They require officers to:

    (1)     instruct, monitor, assist, and report on probationers and supervised releasees;

    (2)     supervise any probationer or supervised releasee who is known to be in the district and of persons on conditional release; and

    (3)     assist in the supervision of persons in the community under the custody of the BOP.

(b)     Specifically, this statute requires a probation officer to:

    (1)     instruct a probationer or supervised releasee under his or her supervision on the conditions specified by the sentencing court and

EXHIBIT 2
Page 14

provide him or her with a written statement that clearly sets forth all such conditions;

(2)    stay informed, to the degree required by the conditions specified by the sentencing court, as to the conduct and condition of a probationer or supervised releasee under the officer's supervision and report such conduct and condition to the sentencing court;

(**Note:** In practice, the report is made to the court that has jurisdiction over the person under supervision, which may be different from the sentencing court if jurisdiction has been transferred.)

(3)    use all suitable methods that are not inconsistent with the conditions specified by the court to aid a probationer or supervised releasee under the officer's supervision and to bring about improvements in such person's conduct and condition;

(4)    be responsible for the supervision of any probationer or supervised releasee who is known to be within the judicial district;

(5)    keep a record of the officer's work and make such reports to the Director of the Administrative Office of the U.S. Courts (AO) as the Director may require;

(6)    upon request of the Attorney General or his or her designee, assist in the supervision of, and furnish information about, a person who is within the custody of the Attorney General while on work release, furlough, or other authorized release from his or her regular place of confinement or while in prerelease custody under the provisions of § 3624(c);

(7)    keep informed about the conduct, condition, and compliance with any condition of probation, including the payment of a fine or restitution of each probationer under the officer's supervision; report to the court that is placing such person on probation; and report to the court any failure of a probationer under the officer's supervision to pay a fine in default within 30 days after notification that it is in default so that the court may determine whether probation should be revoked;

(8)    when directed by the court, and to the degree required by the regimen of care or treatment ordered by the court as a condition of release:

EXHIBIT 2
Page 15

(A)    keep informed as to the conduct of and supervise those who are conditionally released under the provisions of 18 U.S.C. §§ 4243 or 4246;

(B)    report such persons' conduct and condition to the court ordering release and to the Attorney General or his or her designee; and

(C)    immediately report any violation of the conditions of release to the court and the Attorney General or his or her designee.

(c)    This statute also requires officers to perform any other duty that the court may designate and, if approved by the district court, authorizes officers to carry firearms under such rules and regulations as are promulgated by the AO Director.

(d)    A probation officer's duties are expanded to the parole population by:

(1)    18 U.S.C. § 4203 (repealed), which provides the Parole Commission with the power to request probation officers to provide services deemed necessary for maintaining proper supervision of and assistance to parolees; and

(2)    18 U.S.C. § 3655 (repealed), which requires that probation officers perform their instructing, monitoring, assisting, and reporting duties with respect to persons on parole, as requested by the Parole Commission.

## § 220 Conditions of Supervision

(a)    Under 18 U.S.C. § 3601, a defendant who has been sentenced to probation or supervised release is required to be supervised by a U.S. probation officer "to the degree warranted by the conditions specified by the sentencing court." The conditions of supervision:

(1)    set the parameters of supervision;

(2)    define the sentence to be executed;

(3)    establish behavioral expectations for persons under supervision; and

(4)    provide the probation office with tools to keep informed and bring about improvements in a person's conduct and condition.

EXHIBIT 2
Page 16

(b)    Statutorily, conditions are divided into mandatory conditions — those that are required for certain types of persons under supervision or for all persons under a particular type of supervision — and discretionary conditions, which may be imposed when (but only when) necessary to meet relevant statutory purposes.

(c)    Statutorily discretionary conditions are further differentiated into "standard" and "special" conditions of release.  Standard conditions are:

   (1)    basic behavioral expectations for the person under supervision; and

   (2)    minimum tools required by probation offices to adequately monitor the conduct and condition of all persons under supervision.

(d)    Special conditions are discretionary by both statute and policy and provide for additional sanctions (in the case of probation or parole), behavioral restrictions, behavioral interventions, or monitoring tools as necessary to achieve the purposes of sentencing in the individual case.

(e)    Probation offices recommend special conditions for sentences of probation and supervised release before the imposition of sentence and special conditions of parole during prerelease planning.  Throughout the period of supervision, offices also recommend the addition, modification, deletion, amelioration, or suspension of conditions.  Probation offices are also to:

   (1)    instruct the person under supervision as to the conditions (18 U.S.C. § 3603(1));

   (2)    provide the person under supervision with a written statement of the conditions that is sufficiently clear and specific to serve as a guide for the person's conduct and for such supervision as is required (18 U.S.C. §§ 3563(d), 3583(f), and 3603(1));

   (3)    monitor and facilitate the person's compliance with the conditions, using a blend of strategies that are sufficient, but not greater than necessary, to meet sentencing purposes and the objectives in each individual case; and

   (4)    address each instance of noncompliance with an appropriate combination of behavioral monitoring, behavioral restrictions, and behavioral interventions.

EXHIBIT 2
Page 17

(f)     The next sections of this chapter set forth the mandatory (**see:** § 220.10, below) and standard (**see:** § 220.20) conditions of supervision and describe the general principles for recommending special conditions (**see:** § 220.30).  The last section discusses the conditions of conditional release (**see:** § 230).  A more detailed discussion of the purposes of the conditions of probation and supervised release, as well as the selection and implementation of supervision activities to execute all conditions, is included in *Overview of Probation and Supervised Release Conditions*. Guide, Vol 8E, Ch 4 addresses response to noncompliance.

## § 220.10 Mandatory Conditions of Probation, Supervised Release, and Parole

(a)     The mandatory conditions for probation, supervised release, and parole are set forth at 18 U.S.C. §§ 3563(a), 3583(d), and 4209 (repealed), respectively.  The mandatory conditions of probation and supervised release are listed and described in *Overview of Probation and Supervised Release Conditions*.

(b)     There are more mandatory conditions of probation than of supervised release or parole, reflecting its status as the only one of the three for which the term of supervision is by itself to serve punishment purposes (i.e., reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense).  For example, the mandatory conditions for supervised release, unlike those for probation cases, do not require the imposition of a fine or community service to serve as a "publicly discernible penalty."

(c)     The mandatory parole conditions differ from those for probation or supervised release in that they do not address domestic violence, presumably because the federal domestic violence statutes that would trigger the condition were not in effect at the time that persons who are eligible for parole committed their offenses.  (**Note:**  The only federal prisoners who are eligible for parole are those who committed their crimes before November 1, 1987.  The domestic violence statutes were not enacted until 1994.)

(d)     Further, the parole drug testing condition requires that the parolee pass the first drug test before, rather than after, release, and the DNA condition for parolees includes additional references to District of Columbia and military offenses that are not relevant for persons who are sentenced to probation or supervised release by the courts.

EXHIBIT 2
Page 18

### § 220.20 Standard Conditions of Probation, Supervised Release, and Parole

(a)   Statutorily discretionary conditions are further differentiated into "standard" and "special" conditions of release. Standard conditions are basic behavioral expectations for the defendant and minimum tools required by persons under supervision to adequately monitor the conduct and condition of all defendants under supervision. The standard conditions of probation and supervised release are listed and described in *Overview of Probation and Supervised Release Conditions*.

(b)   The basic behavioral expectations set by the standard conditions coincide with avoidance of risk-related factors, such as substance abuse and criminal associations and the strengthening of prosocial factors such as employment. The tools they provide include such basic things as:

   (1)   reporting to the probation office;

   (2)   providing notification of changes in residence or employment; and

   (3)   seeking permission to travel.

(c)   The standard conditions of probation and supervised release, as adopted by the Judicial Conference (JCUS-SEP 16, p. 14), are those set forth in the Judgment in a Criminal Case (Form AO 245B). They are identical for probationers and supervised releasees, except that probationers are to report within 72 hours of sentencing, while supervised releasees are to report within 72 hours of their release from BOP custody.

(d)   Since courts may, by local rule, modify, delete, or add to the standard conditions, do not assume that the standard conditions in one district are the same as those in another district. Avoiding such assumptions is particularly important since it is the conditions imposed on the judgment in the individual case — not the standard conditions set forth in Sentencing Commission policy statements or adopted by the Judicial Conference or any particular district — that set both requirements for and limitations on the activities that probation offices may undertake in the individual case.

(e)   On the other hand, some level of consistency in standard conditions is necessary because not all persons under supervision are supervised in a district in which they were sentenced. As part of a national system, districts have a shared responsibility to maximize the effectiveness of supervision, regardless of where the defendant was sentenced.

EXHIBIT 2
Page 19

(f)    The standard conditions of parole are included in each release order. These differ in detail, but not in general substance, from the standard conditions of probation and mandatory release, except that they include requirements that parolees submit to drug tests and provide financial disclosure as directed by the probation office.

## § 220.30 Special Conditions of Probation, Supervised Release, and Parole

(a)    Under 18 U.S.C. §§ 3563(b) and 3583(d), the court is authorized to impose discretionary conditions of probation or supervised release to the extent that such conditions:

   (1)    are reasonably related to the nature and circumstances of the offense and the defendant's history and characteristics;

   (2)    are reasonably related to the purposes the sentence is to serve;

   (3)    involve only such deprivations of liberty or property as are reasonably necessary for the relevant sentencing purposes; and

   (4)    are consistent with any pertinent policy statements issued by the Sentencing Commission. **See:** U.S.S.G. §§ 5B1.3 and 5D1.3.

(b)    Under 18 U.S.C. § 4209 (repealed), the Parole Commission has similar authority.

(c)    Probation offices recommend special conditions of probation and supervised release with the presentence report, which is prepared before sentencing, (**see:** Guide, Vol. 8D, § 445) and of parole during prerelease planning.  They are to reevaluate the adequacy and applicability of these conditions throughout the term of supervision as part of the ongoing assessment and planning process.  It is particularly important to reassess conditions of supervised release upon release, as, by definition, these defendants have served a term in prison during which personal, family, and community circumstances may have changed considerably since the defendants were sentenced.  In some cases, it may be appropriate to avoid recommending special conditions until the defendant is preparing to reenter the community from prison. **See also:** Guide, Vol. 8D, § 530.20.30).

(d)    When considering special condition recommendations, probation offices should:

EXHIBIT 2
Page 20

        (1)      avoid presumptions or the use of set packages of conditions for groups of persons under supervision; and

        (2)      keep in mind that the purposes of sentencing vary depending on the individual case.

        Probation offices should first ask whether the circumstances in the specific case currently require such a deprivation of liberty or property to accomplish the relevant sentencing purposes.

(e)      The most common special conditions:

        (1)      impose additional sanctions for probation or parole cases (e.g., community service);

        (2)      impose restrictions on location, movement, and/or associations (e.g., community confinement, home confinement);

        (3)      impose behavioral interventions (e.g., substance abuse or mental health treatment, financial counseling); or

        (4)      provide additional monitoring tools (e.g., substance abuse testing, financial disclosure).

(f)      Other specifically crafted conditions may be imposed to address particular types of risks or needs presented in the individual case. In recommending a unique special condition to the court or Parole Commission, officers should consult with a supervisor or specialist to ensure that the recommended wording is clear and legally sound and meets the intended purpose.

## § 230 Conditions of Conditional Release

(a)      With input from the probation office, the BOP recommends conditions of conditionally released persons to the court. As a civil, rather than criminal, form of supervision, conditions that are routine for probation, parole, and supervised release cases do not apply and should not be enforced in conditional release cases unless they are specifically imposed by the court as part of the regimen of treatment and care authorized by 18 U.S.C. §§ 4243, 4246, or 4248.

(b)      Enforcement of a regimen of care or treatment that is not medically or psychologically justified has been held to be a denial of due process. *United States v. Woods*, 995 F.2d 894, (9th Cir 1993). For more detailed

EXHIBIT 2
Page 21

information about the conditional release process, including examples of typical conditions of release ordered by the court, **see:** Conditional Release.

## § 240 Modification or Revocation of Supervision

    (a)    Under 18 U.S.C. §§ 3563(c) and 3565, if the court finds that a defendant violated a condition of probation, the court may:

        (1)    continue probation with or without extending the term or modifying the conditions; or

        (2)    revoke probation and impose any other sentence that initially could have been imposed.

    (b)    Under 18 U.S.C. § 3583(e), if the court finds that the defendant violated a condition of supervised release, it may:

        (1)    continue the defendant on supervised release, with or without extending the term or modifying the conditions; or

        (2)    revoke supervised release and impose a term of imprisonment.

    (c)    A court may determine that modification of conditions is necessary to reflect new risks and needs of the person under supervision, new ideas and methods of rehabilitation, or other changed circumstances. New information, changes in post-sentence conduct, or violation behavior are not required to modify conditions. There is no specified quantum of evidentiary proof required to justify a modification. The court is only required to consider the relevant sentencing factors in 18 U.S.C. § 3553 and to comply with the provisions of the Federal Rules of Criminal Procedure. **See:** 18 U.S.C. §§ 3563(c) and 3583(e)(1).)

    (d)    For certain violations of probation and supervised release, revocation is required by statute. **See:** 18 U.S.C. §§ 3583(g) and 3583(k).

    (e)    The policy statements in Chapter 7 of the U.S. sentencing guidelines prescribe penalties for violations of probation and supervised release. Rule 32.1 of the Federal Rules of Criminal Procedure sets forth the procedure for revoking or modifying probation or supervised release.

    (f)    Under 18 U.S.C. §§ 3564(b) and 3624(e), terms of supervision are tolled (i.e., do not run) while the person under supervision is imprisoned for 30 or more consecutive days in connection with a conviction. Absent circuit law

EXHIBIT 2
Page 22

to the contrary, the revocation of another concurrent term of supervision that results in imprisonment for 30 or more consecutive days will also toll the term. Pretrial detention of 30 days or more tolls the period of supervision when such detention is later credited as time served in connection with a subsequent conviction. **See:** *Mont v. United States,* 139 S. Ct. 1826 (June 3, 2019).

## § 250 Privilege Against Self-Incrimination

(a)     To implement effective supervision practices, probation officers conduct interviews with persons under supervision to:

   (1)     orient them to the supervision process;

   (2)     establish a working relationship;

   (3)     explore their goals; and

   (4)     develop supervision objectives.

(b)     One of the standard conditions of supervision is that the person on supervision answer truthfully the officers' questions. If the person on supervision refuses to answer a specific question on the grounds that it is self-incriminating, the officer should not compel (e.g., through threat of revocation) the person to answer the question. If there is uncertainty about whether the invocation of the privilege against self-incrimination is valid (i.e., whether the specific question may lead to a realistic chance of self-incrimination), the probation officer should refer the matter to the court to make this determination.

   (**Note:** This guidance applies to interviews or interactions between officers and persons under supervision in a "non-custodial" setting (i.e., a setting in which someone in the position of the person under supervision would not feel that he or she is restrained, prohibited from leaving the interview, or otherwise in an "arrest-like" situation). In "custodial" settings, additional safeguards, such as Miranda warnings, may be required. **See:** *Miranda v. Arizona,* 384 U.S. 436 (1966)). In these situations, it is recommended that officers consult with their court to determine the appropriate procedures. **See also:** David N. Adair, Jr., "The Privilege Against Self Incrimination and Supervision," *Federal Probation* (June 1999); Stephen E. Vance, "Looking at the Law: An Updated Look at the Privilege Against Self-Incrimination in Post-Conviction Supervision," *Federal Probation* (June 2011).)

EXHIBIT 2
Page 23

## § 260 Confidential Informants

(a)    Approval

The standard conditions of release prohibit offenders from entering into any agreement to act as an informer or a special agent of a law enforcement agency without permission.  A confidential informant is an offender who engages in the prohibited activity of associating with persons who are engaged in criminal activity to furnish information to or act as an agent for a law enforcement or intelligence agency.

(b)    Acting as a confidential informant is generally inconsistent with the rehabilitative and re-integrative goals of supervision.  However, there are rare occasions when the law enforcement benefits to the community justify permitting the offender to engage in this high-risk activity.

(c)    All requests by law enforcement agencies to use a parolee as a confidential informant must meet Parole Commission guidelines (**see:** *Rules and Procedures Manual*, June 30, 2010, Appendix 3).  The chief probation officer or designee should review all requests to use an offender on probation or supervised release as a confidential informant and should submit them for court approval only if the offender's proposed cooperation meets the following criteria:

(1)    the offender's service as an informant is voluntary;

(2)    there is a benefit to the community;

(3)    the request for assistance is credible;

(4)    there is a likelihood of success against a significant target;

(5)    the offender's background and motivation are not counterproductive;

(6)    the offender is not likely to recidivate;

(7)    the officer is able to maintain supervision of the offender; and

(8)    the period of assistance is reasonable and has a clear termination date.

EXHIBIT 2
Page 24

(d)    Monitoring

If the request to serve as a confidential informant is approved, officers are to establish a systematic, coordinated approach to supervise a confidential informant to improve officer safety and reduce the risk for the offender or others in the community. There should be a written agreement that clearly defines the roles, duties, and reporting responsibilities of the probation office, the offender, the U.S. attorney's office, and the law enforcement agent during the period approved. Whenever possible, this agreement is to be reviewed with the offender in the presence of the agent, with such review highlighting which conditions of supervision are suspended as a result of the cooperation (i.e., some criminal association) and which are not.

(e)    Reporting responsibilities of both the offender and the law enforcement agency representative should also be determined at the onset of the cooperation agreement.

(f)    Further Guidance

(1)    *Suggested Procedures for the Management by Federal Probation and Pretrial Services Officers of Defendants and Offenders Who are Confidential Informants.* Prepared by the Administrative Office of the U.S. Courts and Approved by the Judicial Conference Committee on Criminal Law. Distributed February 14, 1995.

(2)    U.S. Parole Commission's Rules and Procedures Manual, June 30, 2010, section 2.204-04 (by reference from 2.40-01) and Appendix 3, "Use of Parolees and Mandatory Releasees as Informants."

## § 270 Protected Witnesses

(a)    18 U.S.C. § 3521 sets forth the general statutory provisions for the Witness Security Program.

(b)    Occasionally, probation officers may encounter offenders under supervision who are enrolled in the program, including offenders on probation or parole under state law where supervision has been transferred to federal jurisdiction as provided by 18 U.S.C. § 3522.

(c)    Supervision of these offenders should be provided only by an officer who is designated in each district as the person responsible for witness security matters.

EXHIBIT 2
Page 25

(d)    If an officer becomes aware that a person under supervision is entering the Witness Security Program, is enrolled in the program, or was formerly a protected witness, the officer should consult with the designated officer.

(e)    Supervision of protected witnesses is a sensitive matter that carries criminal penalties for disclosure of the identity or location of a protected witness or former protected witness without the authorization of the Attorney General. 18 U.S.C. § 3521(b)(3).

EXHIBIT 2

Page 26

# Guide to Judiciary Policy

Vol. 8: Probation and Pretrial Services
Pt. E: Post-Conviction Supervision

## Ch. 3: Framework for Effective Supervision

(**Note:** No <u>unauthorized</u> disclosure of this policy guidance outside the judiciary is permitted.)

§ 310 Overview

§ 320 Transition to Supervision
    § 320.10 Transition to Supervision for Persons Sentenced to Probation
    § 320.20 Reentry Planning Activities for Incarcerated Persons
    § 320.30 Assistance With Reentry Services for Prisoners in Prerelease Custody
    § 320.40 Supervision Assistance
    § 320.50 Assistance With Responses to Violations of Prerelease Custody

§ 330 Assessment of Criminal Risks and Identification of Criminogenic Needs
    § 330.10 Post Conviction Risk Assessment
    § 330.20 Assessing the Likelihood of Committing a Specific Type of Offense
    § 330.30 Assessing Imminent Risk to Re-Offend
    § 330.40 Low-Risk Supervision Standards

§ 340 Examination of Past Criminal Behavior

§ 350 Supervision
    § 350.10 Introduction
    § 350.20 Determining the Supervision Level
    § 350.30 Monitoring the Behaviors of Persons Under Supervision
    § 350.40 Administering Behavioral Restrictions
    § 350.50 Administering Behavioral Interventions

§ 360 Transitions Off of Supervision
    § 360.10 Overview
    § 360.20 Early Termination
    § 360.30 Full-Term Expiration
    § 360.40 Revocation
    § 360.50 Death

*Last revised (<u>Transmittal 08-040</u>) July 2, 2018*

EXHIBIT 2
Page 27

## § 310 Overview

(a)  This chapter establishes a framework for effective supervision. The framework sets forth the essential elements to achieve the purposes of supervision (i.e., the successful completion of the term of supervision and lawful self-management).

(b)  Use of a valid risk assessment tool lies at the foundation of this framework, and professional judgment drives daily decisions that the probation office uses to achieve the purposes of supervision.

(c)  Community safety is enhanced when both the number of offenses generally and the number of serious offenses committed by those under supervision are reduced. Probation offices should assess the risk:

   (1)  to re-offend generally;

   (2)  to commit a specific type of offense (e.g., violent, sex, or financial offenses); and

   (3)  of imminent re-offending.

(d)  Probation officers are the primary change agents and decision-makers in daily risk management. Officers perform not only case management, but they actively engage in processes that foster change in the person under supervision (Bourgon, Gutierrez, Ashton (2011)). Officers focus on each person's risk to re-offend and compliance with conditions of supervision. The establishment of an effective working relationship with the person under supervision is essential to guiding the person toward lawful self-management. An effective working relationship consists of the collaboration between the probation officer and the person under supervision that is aimed at the person's lawful self-management and compliance with the conditions of supervision. Probation officers should:

   (1)  demonstrate the values that are formative of an effective working relationship; and

   (2)  apply the skills and techniques that have been shown to reduce re-offending, such as core correctional practices. Core correctional practices involve:

      (A)  the effective use of authority;

      (B)  appropriate modeling and reinforcement;

EXHIBIT 2
Page 28

(C)    instruction on concrete problem-solving;

(D)    the effective use of community resources; and

(E)    effective interpersonal communication.

**Note:** Research has demonstrated that programs that use core correctional practices had significant levels of reduced recidivism versus programs that did not (Dowden and Andrews (2004)).

(e)    In applying the framework for effective supervision, consistent with the conditions specified by the court, probation offices should apply behavior management strategies/techniques that have been scientifically proven to:

(1)    achieve compliance with the conditions;

(2)    reduce re-offending; and

(3)    foster lawful self-management

**Note:** Probation offices should enhance the person's skills to lawfully self-manage and establish social supports to reinforce the person's progress.

(f)    The five elements of the framework for effective supervision are:

(1)    transition to supervision;

(2)    assessment of risk and identification of criminogenic needs;

(3)    examination of past criminal behavior;

(4)    the supervision process; and

(5)    transition off of supervision.

(g)    Supervision practices should be tailored to each person under supervision according to his or her risk to re-offend, criminogenic needs, and responsivity factors and should be matched with the available resources. The allocation and use of resources should align with the goals of supervision (i.e., the successful completion of the term of supervision and lawful self-management). The use of resources to target the criminogenic needs of each person under supervision should be executed with fidelity to evidence-based practices (EBP).

EXHIBIT 2
Page 29

(h)    The supervision framework applies to both the person under supervision and the probation office that is charged with such supervision.

   (1)    For the person under supervision, the process involves:

      (A)    thinking about why past criminal behavior has occurred and how to avoid future criminal behavior;

      (B)    learning about ways to behave lawfully;

      (C)    building skills to behave lawfully;

      (D)    modifying behaviors that lead to crime;

      (E)    seeking and receiving positive reinforcement for lawful behavior; and

      (F)    complying with the conditions of supervision.

   (2)    For the probation office, the process involves:

      (A)    investigating each person's past and present behaviors that influence criminal actions;

      (B)    establishing a working relationship;

      (C)    conducting actuarial and aggregate risk assessment;

      (D)    adhering to EBPs and research-informed principles to apply behavioral monitoring, restrictions, and interventions; and

      (E)    administering the conditions of supervision.

## § 320 Transition to Supervision

### § 320.10 Transition to Supervision for Persons Sentenced to Probation

When a person is sentenced to probation, the term of supervision commences and the conditions of supervision are effective immediately. Immediately following the imposition of the sentence, the probation office should thoroughly review the conditions of supervision with the person under supervision.

EXHIBIT 2
Page 30

### § 320.20 Reentry Planning Activities for Incarcerated Persons

    (a)    Research indicates that many persons who violate their conditions do so during the first six months of supervision.  Research further shows that persons received for supervision after serving a period of incarceration are most likely to violate their supervision.  Therefore, it is important that the probation office become involved as early as possible in planning the transition from prison to supervision.

    (b)    At the prerelease stage, the probation office is responsible for:

        (1)    supporting a person's successful reintegration into the community;

        (2)    promoting continuity of services; and

        (3)    initiating a collaborative plan with the person under supervision to safely manage and reduce his or her risk to re-offend or violate a condition of supervision.

    (c)    The Federal Bureau of Prisons (BOP), the prisoner, and the probation office are responsible for the  prisoner's release planning after a period of imprisonment. (**Note:** For the specific release planning responsibilities of the BOP and the probation  office, **see:**  Memorandum of Understanding between the AO and the BOP.)

    (d)    In some cases, reentry planning will not be conducted because the prisoner is scheduled for transfer directly to the jurisdiction and custody of another agency (e.g., the person is subject to an immigration hold or detainer for service of another criminal justice sentence).  Probation offices should monitor these "inactive" cases through criminal record  checks.

### § 320.30 Assistance With Reentry Services for Prisoners in Prerelease Custody

When the person is being released through a residential reentry center (RRC) or through the BOP's Location Monitoring Program, probation offices have the opportunity to work in partnership with the person and BOP/RRC staff to minimize risk and maximize continuity of services.  Of particular importance is the continuity of interventions to address issues, such as thinking that supports criminal behavior, antisocial associations, and alcohol/drug use.

### § 320.40 Supervision Assistance

Upon request, the probation office is to:

EXHIBIT 2
Page 31

(a)    assist in the supervision of and furnish information about prisoners in prerelease custody — which may include the supervision of those in the BOP's home confinement program; and

(b)    offer assistance to such prisoners to the extent practicable. **See:** 18 U.S.C. §§ 3603(6), 3624(c)).

**Note:** This supervision and assistance should supplement but not duplicate the services provided by RRC staff.

### § 320.50 Assistance With Responses to Violations of Prerelease Custody

RRC and BOP staff have the responsibility for determining appropriate action before the commencement of supervision. Whenever possible, probation offices should work with RRC staff to develop appropriate graduated community based responses to less serious violations and to offer assistance.

## § 330 Assessment of Criminal Risks and Identification of Criminogenic Needs

Assessing risk to re-offend and identifying criminogenic needs through valid actuarial risk assessment is foundational to implementing EBPs. Assessing the likelihood that a person may commit a specific type of crime (e.g., violent, sex, or financial offense) is also essential to community safety.

### § 330.10 Post Conviction Risk Assessment

(a)    The Post Conviction Risk Assessment (PCRA) is the U.S. probation system's primary tool used to assess and predict the risk to re-offend. It guides the probation office in matching the level of service to the level of risk and identifies criminogenic needs that should be addressed. Empirical research has shown that the use of valid actuarial risk assessment tools, combined with professional judgment, is more effective at predicting risk than reliance on professional judgment alone (Meehl (1996)).

(b)    The application of the PCRA:

(1)    guides the probation office in matching the level of supervision and services to the level of calculated risk;

(2)    identifies major criminogenic needs that are associated with reductions in re-offending and should be targeted for behavioral change;

EXHIBIT 2
Page 32

(3)    identifies antisocial cognition through the Psychological Inventory of Criminal Thinking Styles (PICTS), an 80-item self-report measure of criminal thinking to assess antisocial cognition. The PICTS tool first identifies elevations in "general criminal thinking." Next, within "general criminal thinking," it identifies two dimensions, referred to as "reactive criminal thinking" (impulsive, reckless, stimulation seeking, and irresponsible thinking) and "proactive criminal thinking" (callous, calculated, planned, and rationalizing thinking). Finally, within "reactive criminal thinking" and "proactive criminal thinking," the PICTS identifies specific thinking styles.

   (A)    Reactive criminal thinking comprises:

      (i)     poor frustration tolerance;

      (ii)    impulsive decision-making and a desire for immediate gratification;

      (iii)   trouble following through on initial intentions; and

      (iv)    difficulty factoring long-term consequences.

   (B)    Proactive criminal thinking comprises:

      (i)     making excuses and externalizing blame for one's own misbehavior;

      (ii)    having a sense of privilege;

      (iii)   exerting power and control over others; and

      (iv)    believing that one can indefinitely avoid negative consequences of misbehavior.

(4)    identifies groups of people who are at an elevated risk of committing a violent offense.

## § 330.20 Assessing the Likelihood of Committing a Specific Type of Offense

While research has demonstrated the importance of using actuarial risk assessment to predict offending generally, probation offices should also consider the use of actuarial risk instruments that predict specific types of offenses (e.g., sex and financial crimes) when such tools are available. The probation office may determine that more resources

EXHIBIT 2

Page 33

and higher supervision levels are necessary for these types of offenses based on this assessment.

## § 330.30 Assessing Imminent Risk to Re-Offend

(a)    Risk assessment instruments are generally designed to predict who is at risk to re-offend.  Acute risk assessment instruments are designed to predict when a person is at risk to re-offend.

(b)    Risk factors that may affect the timing or imminence of re-offending may include changes in circumstances (e.g., opportunity/access to a victim, substance abuse, anger/hostility, negative mood, employment, interpersonal relationships, living situations).  The dynamic nature of risk requires a routine review of aggregate risk.

(c)    Probation offices should reassess risk, using professional judgment whenever these types of changes in circumstances occur.  As acute risk assessment tools are developed, probation offices should consider their use.

## § 330.40 Low-Risk Supervision Standards

When the PCRA categorizes offenders as low risk, officers should supervise these offenders under low-risk standards, unless a supervisor authorizes officers to move the case to a higher supervision level.  For offenders who are not categorized as low risk by the PCRA, supervisory approval for the assignment to a lower supervision level is required for supervision under low-risk standards.

# § 340 Examination of Past Criminal Behavior

(a)    Except in lower risk cases, an important step in managing and reducing the risks posed by those under supervision and fostering lawful self-management is to engage them in a comprehensive examination of their past criminal behavior.  This examination enhances the case planning process and may assist with developing a working relationship with persons under supervision.

(b)    Throughout the term of supervision, the officer can use this examination process to analyze any behavior that is negatively impacting the person's progress and ability to choose to behave lawfully.  Because the presentence report lists and describes most, if not all, of the recorded criminal history, it should serve as the starting point for this process.

EXHIBIT 2
Page 34

(c)    The examination of past criminal behavior helps persons under supervision:

    (1)    achieve an accurate introspection regarding their criminal behavior;

    (2)    understand how their thinking and external circumstances may influence the decisions to engage in criminal behavior;

    (3)    identify strengths upon which they can rely to make lawful choices;

    (4)    identify how the supervision process can help them to make changes to act lawfully;

    (5)    enhance motivation and capacity to act lawfully; and

    (6)    develop initial strategies with the probation office to:

        (A)    change their criminal thinking and build skills to remain lawful;

        (B)    recognize, avoid, and manage situations and associations that may contribute to their unlawful behavior;

        (C)    increase their associations with prosocial persons and involvement in prosocial activities; and

        (D)    find incentives and rewards for their lawful behavior.

(d)    This process helps the probation office to:

    (1)    establish an effective working relationship with the person under supervision;

    (2)    identify barriers to lawful behavior, such as:

- basic needs;
- literacy;
- cognitive capacity; and
- mental health;

    (3)    guide the person in identifying how thinking contributed to the criminal behavior;

EXHIBIT 2
Page 35

(4)     guide the person in identifying thoughts and external circumstances that may influence the person's decisions to engage in criminal behavior;

(5)     guide the person in identifying strengths upon which he or she can rely to make lawful choices;

(6)     foster the person's internal motivation to engage in the supervision process;

(7)     foster the person's internal motivation to engage in prosocial behavior and desist from unlawful behavior; and

(8)     identify information that will assist in the completion of the PCRA when an examination of criminal behavior is performed early in the supervision process.

(e)     The process to examine past criminal behavior involves a detailed exploration of the facts and circumstances surrounding the person's past illegal behavior and thoughts before the choice to act unlawfully (who, what, where, when, how, and why?).

**Note:** The results of the risk assessments and criminal behavior examination are foundational to a collaborative and effective supervision process that focuses on mitigating the drivers of criminal risk and enhancing prosocial choices.

# § 350 Supervision

## § 350.10 Introduction

(a)     Supervision is a collaborative process among:

- the person under supervision;
- the probation office;
- service providers;
- prosocial collateral supports; and
- as appropriate, other criminal justice partners.

(b)     Supervision also is a dynamic process of applying evidence-based interventions, strategies, and techniques to foster compliance with the conditions of supervision and equip persons under supervision with skills to manage themselves lawfully during and beyond the period of supervision.  Overarching the process is the affirmation of the person's

EXHIBIT 2
Page 36

potential to address his or her own illegal behavior and to make lawful decisions.

## § 350.20 Determining the Supervision Level

(a)    Probation offices should determine the appropriate supervision level (i.e., frequency, intensity, duration of behavioral monitoring, behavioral restrictions, and behavioral interventions) to achieve the purposes of supervision (i.e., the successful completion of the term of supervision and lawful self-management). The PCRA and other assessments aid in this process. It is important to note that the probation office makes the final supervision level decision based on output from the assessments and other available information. Assessment tools inform and support the decision process but are not intended to be the sole source of information for decision-making.

(b)    Supervision should be individualized and involve only such deprivation of liberty or property as is reasonably necessary to achieve the supervision objectives.

## § 350.30 Monitoring the Behaviors of Persons Under Supervision

Probation offices should, to the degree required by the conditions specified by the court or the paroling authority, monitor the behavior of those under supervision. The amount of probation office resources committed to behavior monitoring should be proportional to risk to re-offend generally or to commit a specific type of crime and the imminent likelihood of re-offending. Examples of behavior monitoring strategies include:

(a)    meetings in probation offices;

(b)    visits to the client's home, place of employment, or elsewhere in the community;

(c)    criminal record checks;

(d)    urinalysis;

(e)    financial investigations;

(f)    placement in an RRC for monitoring; and

(g)    search and seizure.

(**Note:** The Judicial Conference Committee on Criminal Law set forth guidance for search and seizure in Search and Seizure Guidelines for

EXHIBIT 2
Page 37

United States Probation Officers in the Supervision of Offenders on Supervised Release or Probation, which was approved by the Judicial Conference at its September 2010 session (JCUS-SEP 2010).  **See:** Appx. 3A.)

## § 350.40 Administering Behavioral Restrictions

Probation offices should, to the degree required by the conditions specified by the sentencing court or paroling authority, implement restrictions of liberty placed on persons under supervision.  Examples of these behavioral restrictions include:

    (a)    location monitoring;

    (b)    travel restrictions;

    (c)    restrictions on associations with specified persons;

    (d)    restrictions on alcohol use;

    (e)    restrictions on computer/Internet use; and

    (f)    intermittent confinement.

## § 350.50 Administering Behavioral Interventions

    (a)    Probation offices should deliver or arrange for the delivery of services, not inconsistent with the conditions specified by the sentencing court or paroling authority, to aid the person on supervision and to bring about improvements in his or her conduct and condition.  Interventions should be aimed at the person's compliance with the conditions of supervision and lawful self-management.

    (b)    The targets for intervention should be criminogenic needs present in the individual case, including:

- antisocial cognitions;
- criminal social networks;
- substance abuse; and
- lower education/poor employment.

    (c)    Examples of behavioral interventions include:

- cognitive behavioral intervention;
- substance abuse treatment; and

EXHIBIT 2
Page 38

- vocational training.

(d)    Facilitating change in the behavior of those under supervision requires probation offices to structure interactions and contacts with those persons to:

(1)    establish a working relationship with them;

(2)    clarify roles and expectations;

(3)    provide reinforcement for positive behavioral change and learning;

(4)    provide consequences for unacceptable behavior and learning;

(5)    foster learning and skill development to support lawful self-management;

(6)    teach and reinforce the relationship between thinking and behavior; and

(7)    foster connections with prosocial people and activities.

## § 360 Transitions Off of Supervision

### § 360.10 Overview

A person under supervision can transition off of supervision in one of four ways:

- early termination;
- full-term expiration;
- revocation; and
- death.

### § 360.20 Early Termination

(a)    Under 18 U.S.C. §§ 3564(c) and 3583(e)(1), the court may terminate:

(1)    terms of probation in misdemeanor cases at any time; and

(2)    terms of supervised release or probation in felony cases after the expiration of one year of supervision, if the court is satisfied that such action is warranted by the conduct of the person under supervision and is in the interest of justice.

EXHIBIT 2
Page 39

(**Note:**  Early termination of parole cases is governed by the U.S. Parole Commission's *Rules and Procedures Manual*, Section 2.43.)

(b)     During the first 18 months of supervision, the appropriateness of early termination must be based on the person's overall progress in meeting supervision objectives, to include having:

   (1)     substantially satisfied the requirements of the court order; and

   (2)     demonstrated a willingness and capability to remain lawful beyond the period of supervision.

   **Note:**  Officers should not recommend persons for early termination who have an identified higher risk to community safety.

(c)     At 18 months, there is a presumption in favor of recommending early termination for persons who meet the following criteria:

   (1)     The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or has not committed a sex offense or engaged in terrorism;

   (2)     The person presents no identified risk of harm to the public or victims;

   (3)     The person is free from any court-reported violations over a 12-month period;

   (4)     The person demonstrates the ability to lawfully self-manage beyond the period of supervision;

   (5)     The person is in substantial compliance with all conditions of supervision; and

   (6)     The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

(d)     After 18 months, higher risk persons under supervision who have demonstrated a reduction in risk (as demonstrated by a reduction in PCRA level/category) and who are in substantial compliance with the factors set forth above shall be considered for early termination.

EXHIBIT 2
Page 40

(e)     The existence of an outstanding financial penalty does not adversely affect early termination eligibility, as long as the person under supervision is in compliance with the payment plan for the prior 12 months.

(f)     Officers should consider early termination for all persons who have been supervised for 12 months under low-risk supervision standards and who otherwise meet the eligibility criteria. At that time, the supervisor should approve, in a chronological record entry, any decision not to petition the court for early termination. The supervisor should then set the timeframe for the next early termination review.

## § 360.30 Full-Term Expiration

If a person under supervision reaches the expiration date of his or her term of probation or supervised release, the term has expired.

## § 360.40 Revocation

If the term of probation or supervised release is revoked, the term of supervision is terminated.

## § 360.50 Death

If a person under supervision dies, the term of probation or supervised release is terminated.

EXHIBIT 2

Page 41

# Guide to Judiciary Policy

Vol. 8: Probation and Pretrial Services
Pt. E: Post-Conviction Supervision
Ch. 3: Framework for Effective Supervision

## Appx. 3A: Search and Seizure Guidelines

(**Note:** The Judicial Conference approved these "Search and Seizure Guidelines for United States Probation Officers in the Supervision of Offenders on Supervised Release or Probation" for distribution in September 2010 (JCUS-SEP 10, p. 17).)

I.    Scope of Guidelines

   A.    These guidelines apply to searches conducted by probation officers in the course of supervising an offender who is on probation or supervised release.

   B.    Unless otherwise noted, the procedures in these guidelines do not apply to the following types of monitoring conducted by officers:

      1.    Drug and alcohol testing, as authorized by statute or a condition of supervision;

      2.    DNA collection, as authorized by statute; or

      3.    Where authorized by special condition, computer monitoring or filtering that involves the use of hardware or software that continuously monitors and records the data accessed by a user and notifies the officer whenever prohibited content has been accessed.

   C.    District Search Policy

      1.    Officers within a district may conduct searches and seizures only when the court for that district has adopted a policy permitting such searches and seizures. A district's local search and seizure policy should refer to these guidelines.

      2.    A district's local policy should not:

         a.    Lower any minimum standards established in these guidelines or

         b.    Conflict with any regulations of the Director of the Administrative Office (AO).

*Last substantive revision (Transmittal 08-040) July 2, 2018*
*Last revised (minor technical changes) July 17, 2018*

EXHIBIT 2
Page 42

3.      A district's policy may set out requirements in addition to those provided for in these guidelines, for example, to require that officers participating in searches or seizures:

      a.     Complete additional training hours or programs;

      b.     Take specified security precautions when executing a search; or

      c.     Provide a report to the court when a search pursuant to a search condition has occurred, when property has otherwise been seized, or when a safety-related incident has arisen.

D.      All Searches and Seizures are Governed by Applicable Law

    1.      Case law concerning searches and seizures may differ from circuit to circuit.

    2.      In the event of any inconsistency between these guidelines and controlling case authority, the latter will control.

II.      Overview of Searches and Seizures During Supervision of Offenders on Probation or Supervised Release

A.      Authority to Conduct Search and Seizure

    1.      An officer may conduct a search only:

      a.     to a special court-imposed search condition or

      b.     Upon the consent of the offender.

    2.      An officer may seize contraband or items constituting evidence of a violation of probation or supervised release only:

      a.     When discovered through a search, pursuant to II (A), above;

      b.     When the contraband or evidence is discovered in "plain view" by the officer and when a seizure based upon "plain view" discovery is permitted by the local district policy; or

      c.     When the contraband or evidence is discovered in "plain view" by the officer, and exigent circumstances, such as the need to insure the safety of the officer or others, require the immediate seizure of the property.

EXHIBIT 2
Page 43

B.    Factors to Consider Prior to Recommending, Initiating, and Conducting a Search or Seizure

1.    Effective supervision is individualized, proportional, purposeful, proactive, and responsive to changed circumstances.

2.    The goals of supervision are to promote public safety through effective oversight of an offender and to assist and support the offender in efforts to turn away from criminal conduct. Success in achieving the latter will necessarily help to accomplish the former.

3.    In considering whether to conduct a search, an officer should be mindful of both of the above goals of supervision.

4.    A search condition, by itself, may provide an element of deterrence for an offender and will permit an officer to intervene quickly when there is reasonable suspicion that an offender has engaged in criminal conduct or otherwise violated a condition of release.

5.    While an effective tool, however, a search should not be undertaken without careful consideration of the potential negative consequences and a thoughtful balancing of the latter against the advantages likely to be gained by conducting the search. Therefore, that an officer may have the authority to conduct a search does not necessarily mean that a decision to do so will be the most prudent decision, under all the circumstances.

6.    For example, intrusive searches will require significant planning and utilization of resources, and could expose officers and others to risk of harm. Such searches may undermine the rapport that an officer has developed with an offender and may hinder the progress that an offender has made. An officer should always consider whether less intrusive and less confrontational methods can be effective in assessing and insuring an offender's compliance with the conditions of supervision.

7.    In making this decision, the officer should consider all of the circumstances, including:

a.    the level and type of risk posed by an offender;

b.    the seriousness of the suspected violation of conditions;

c.    whether a search could undermine the progress that an offender has been making during supervision;

EXHIBIT 2
Page 44

    d.    the intrusiveness of the search, and whether a search is a proportional response, when considering factors (a)-(c) above;

    e.    the risk of harm that the search could pose to the officer or others; and

    f.    the use of resources and how those resources may otherwise be used.

8.    An officer should recommend or conduct a search only after determining that the search is necessary to enforce other conditions of supervised release or to achieve the desired outcomes of supervision.

9.    An officer may search only those areas for which reasonable cause exists to believe that the offender has access or control.

C.    Safety Considerations

1.    The safety of officers and others present should be the primary concern during the execution of any search. A search should be terminated if it is unsafe for the officer to continue.

2.    In planning and executing a search, an officer should consider the risks presented. Higher risk cases may require additional resources or support from other law enforcement agencies. In planning any search, an officer should consider whether it would be prudent to request assistance from other law enforcement officers for protection and to take possession of contraband.

D.    Use of Information and Evidence from Searches During Supervision

1.    The fruits of any search conducted pursuant to these guidelines may be used in the regular course of managing noncompliance.

2.    Appropriate responses may include:

    a.    Increasing treatment or the intensity of supervision;

    b.    Notifying the court of the results of the search;

    c.    Seeking revocation or modification of supervision conditions; and

    d.    Reporting serious criminal conduct to other law enforcement agencies.

EXHIBIT 2
Page 45

III.    Searches Pursuant to a Court-Ordered Search Condition

    A.    Requirement of Reasonable Suspicion

        1.    An officer shall conduct a search pursuant to a court-ordered condition only when the officer has a reasonable suspicion that contraband or evidence of a violation of the conditions of supervision may be found at the place or in the item being searched.

        2.    A reasonable suspicion exists when the officer, based on particularized and articulable facts, reasonably believes that contraband or evidence of a violation of the conditions of supervision may be found at the place or in the item being searched.

    B.    Execution of a Search Pursuant to a Court-Ordered Search Condition

        1.    A search shall be conducted in a reasonable manner and at a reasonable time. (*See* Section VII (C), "Selection of Date, Time, and Location(s) of Search.")

        2.    An offender's consent is not required in order to conduct a search pursuant to a court-ordered condition.  Further, an offender's attempted obstruction of such a search will constitute a ground for revocation of his supervision.

        3.    Typically, any search of an offender subject to a court-ordered search condition will be based on reasonable suspicion and will not necessitate the consent of the offender.  When an officer wishes to conduct a search, and reasonable suspicion does not exist, however, the officer must obtain the consent of the offender.  In such a situation, the officer must inform the offender (1) that the search is not being conducted pursuant to a special condition that requires the offender to submit and (2) that the offender is free not to consent to the search.

    C.    Terms To Be Recommended to the Court for Inclusion In a Court-Ordered Search Condition

        1.    The places to be searched and the items to be seized.

            a.    The special condition shall permit searches only of the offender's person, property, house, residence, vehicle, papers, and office.

EXHIBIT 2
Page 46

b.  When circumstances warrant, the search condition should also permit the search of any computer or other electronic communication or data storage devices or media under the control of the offender.

2.  The manner in which the search is to be conducted: that is, in a reasonable manner and at a reasonable time.

3.  The requirement that the offender notify any other residents that the premises may be subject to search.

4.  The admonition that an offender's refusal to submit to a search, or efforts to obstruct a search, may be grounds for revocation of release.

D.  Model Search Condition

1.  An officer should use the language set out in section III(D)(2) when recommending the wording of a search condition to the court. Bracketed language may be used when appropriate.

2.  "The defendant shall submit his or her person, property, house, residence, vehicle, papers, [computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner."

IV.  Searches Pursuant to Consent

A.  An officer may conduct a search in the absence of a special condition (or when a special condition is in place, but reasonable suspicion does not exist), if the offender consents to the search. A search based upon consent may not exceed the scope of the consent.

B.  An officer should not conduct a search pursuant to the consent of the offender if a co-occupant is present and objects to the search of any part of the premises over which that co-occupant could reasonably be believed to have control or dominion, such as common or shared areas.

EXHIBIT 2
Page 47

V.    Plain View Seizures

    A.    Contraband that falls within the plain view of an officer who is justified being in the place where the contraband is seen may properly be seized by the officer.

    B.    It must be apparent that the item is contraband with respect to the offender or that the item poses a risk of harm to the officer or another person.

VI.    Home Visits

    A.    A Home Visit is Not a Search

        1.    As a standard condition of supervision, an offender must submit to a visit at home or elsewhere, at the request of the supervising probation officer.

        2.    A home visit is, therefore, not a search, and an officer needs no suspicion to conduct a home visit, with whatever frequency the officer deems warranted, based on the all of the circumstances of the offender, the prior offense, and the goals of supervision.

        3.    Home visits can vary in the extent of their duration or scope, depending on all the circumstances of the offender, the prior offense, and the goals of supervision.

    B.    Home Inspection

        1.    A home inspection is an intensive type of home visit that is required during the assessment period and upon each change of residence.

        2.    Any home inspection that occurs during the assessment period or upon a change of residence shall include the following:

            a.    A review of documentation, such as rental agreements, mortgage papers, and utility bills to verify ownership and monthly living expenses;

            b.    A physical walk-through of all the rooms of the residence and of any other areas or structures on the premises that are subject to the offender's access or control;

            c.    Verification of who else is residing at the residence; and

            d.    Plain-view observation for evidence of firearms or other contraband.

EXHIBIT 2

Page 48

3.    Depending on the circumstances of the offender, his prior offense, and the goals of supervision, an officer may deem it prudent, at times other than at the assessment period or at a change of residence, to walk through the residence, any other structures on the property, or the grounds of the premises, themselves.

    a.    For example, an officer may wish to conduct more extensive home visits, including a walk-through of all structures on the property, for certain types of offenders, such as those whose prior offense involves rape, other sexual offenses, or kidnapping.

    b.    In gauging the appropriate extent of any visit, the officer should avoid intrusions that are not warranted by the particular circumstances of the supervision.

4.    On the occasions described in (2), above, an officer should visit only those areas of the premises over which the officer reasonably believes the offender has access or control.

C.    A search is not permitted during a home inspection or any other type of home visit, absent the consent of the offender or, for offenders with a search condition, the existence of reasonable suspicion.  Therefore:

1.    Any intrusion into a closed area, such as a closet, refrigerator, or desk drawers, is prohibited during a home visit, absent consent or, for offenders with a search condition, the existence of reasonable suspicion.

2.    During such visits, an officer may seek to observe only those items that are in plain view.

VII.    Search Planning and Approval Procedures

A.    Determining Staff Resources

1.    The scope of the search, the nature of evidence sought, and the characteristics of the offender will determine the number and roles of the officers needed to safely execute the search.  Attachment 1 includes a non-exhaustive list of the roles and responsibilities that may need to be satisfied.

2.    No fewer than two trained officers should be available to assist in executing planned searches.

EXHIBIT 2

Page 49

3.    In assembling a search team, the coordinator should consider potential issues in communicating and interacting with the particular offender or third parties: for example, Spanish-speaking officers or gender-appropriate officers to conduct searches, when necessary, of an offender's person.

4.    Non-law enforcement officer staff from probation offices, such as information technology staff, should not participate in searches at the site being searched. If a computer or any electronic or data storage media or devices are seized and returned to the probation office, information technology staff may assist in the search and preservation of any electronic evidence.

B.    Identifying and Securing Necessary Equipment

1.    Given the specialized nature of searches and seizures, specific equipment may be necessary to effectuate these activities. Officers should consult AO training materials regarding the equipment necessary to conduct searches in a safe and efficient manner.

2.    Appropriations Law Limitations

    a.    The use of appropriated funds to purchase protective clothing that may be needed to execute a search is subject to the criteria articulated by the Comptroller General. Under 5 U.S.C. § 7903, special equipment for the protection of personnel in the performance of assigned tasks may be purchased with appropriated funds if three criteria are met:

        1.    the item must be "special" and not part of the ordinary and usual furnishings an employee may reasonably be expected to provide for himself;

        2.    the item must be for the benefit of the government and not solely for the protection of the employee; and

        3.    the employee must be engaged in hazardous duty. *See* 32 Comp. Gen. 229 (1952).

    b.    Items that are essential to the safe and successful completion of the work are considered a benefit to the government.

    c.    Any protective clothing that is purchased must be maintained by the office for available use by all officers. A limited

EXHIBIT 2
Page 50

number of various sized items may be purchased to accommodate the team of officers conducting a search.

C.    Selection of Date, Time, and Location(s) of Search

    1.    Searches should be conducted at a reasonable time and in a reasonable manner.  Factors that should be considered include the following:

        a.    The time of day during which the search is conducted.

            **Note:**  For purposes of these guidelines, a reasonable time is between 6:00 a.m. and 10:00 p.m., although a search outside of this time frame may be reasonable if the search plan identifies good cause for a nighttime search, such as an offender's work schedule or the risk of unusual danger to officers if the search is conducted at a different time.

        b.    The likelihood that third parties will be present.

        c.    The availability of assistance from law enforcement agencies.

    2.    Whenever possible, officers should visit the location to be searched and conduct any other observations necessary for the officer and the search team to know the layout of the location being searched, the existence of potential hazards (e.g., animals, blocked exits, unsanitary conditions), and the presence of any third parties who might be at the location during the search.  Diagrams and photographs may be produced to assist in this task.

D.    Coordination with Local Police and Other Law Enforcement

    1.    Probation officers should maintain control of the search in order to ensure that it is conducted in a manner consistent with these guidelines and the unique mission of the probation system.

    2.    The search team coordinator should provide local police and other law enforcement agencies assisting in the search with information about the offender and other known occupants, the layout of the location being searched, the scope of the search, and the property being sought. Photographs of the offender and others known to be at the location may be shared with law enforcement.

EXHIBIT 2
Page 51

3.    The roles of any other law enforcement agencies assisting in the search should be clearly defined before conducting the search. Among the ways other law enforcement may assist are:

 a.    Providing protection for the probation officers along the perimeter or inside the location being searched;

 b.    Providing special assistance (e.g., canine units, hazardous material disposal, preserving electronic evidence that may be stored in computers or other electronic communications or data storage devices or media);

 c.    Taking custody of contraband seized during the search; and

 d.    Participating in the search at the direction of the search team coordinator.

E.    Approval of Searches

1.    A search shall be conducted only upon the approval of a search plan submitted to the chief or the chief's designee through the AO's Safety and Information Reporting System (SIRS).  The proposed plan shall be reviewed by the office's designated personnel, and approval shall be entered by the chief or the chief's designee in SIRS.

2.    If exigent circumstances make it impracticable to submit the search plan or to enter approval in SIRS in advance, the plan or approval may be presented orally and entered into SIRS at the earliest opportunity.  Exigent circumstances exist if it is reasonably foreseeable that delay will result in danger to any individual or the public, or to the loss or destruction of evidence.

VIII.    Procedures for the Execution of Searches and Seizures

A.    Staging and Pre-Entry Surveillance

1.    The search team shall assemble at a pre-determined location to review the search plan, check equipment, and conduct any final coordination with law enforcement.

2.    Prior to executing the search, the officer and the search team shoulCd observe the exterior of the location to identify any potential hazards or changes to the environment that would alter the search plan.

EXHIBIT 2

Page 52

3.   Officers should notify local law enforcement agencies that a search is being commenced, and provide the location being searched and the contact information of the search team coordinator.

B.   Entry

1.   In conducting a search, officers should at all times endeavor to minimize any damage to property and should not cause any more than minimal damage.  For example, cutting a padlock on an interior door or a storage trunk would be considered to constitute only minimal damage, but breaking the locks, hinges, frame, or glass of a home's exterior door in order to gain entry would constitute more than minimal damage and should not occur.

2.   Officers shall notify all occupants of the officers' authority to conduct the search.  A copy of the order that includes a condition permitting a search should be readily available.

C.   Securing the Premises

1.   Officers should conduct a security sweep of the premises to ascertain the presence of other third parties or safety issues.

2.   Managing the Offender During the Search

a.   An officer may conduct a pat down search of the offender, based on an individualized and reasonable suspicion that the offender is armed and dangerous.

b.   Absent such a suspicion, an officer may conduct a search of the offender only pursuant to the applicable search condition; that is, the officer must have reasonable suspicion that evidence of noncompliance with a condition of supervision may be found on the person of the offender.

c.   An officer may restrain an offender who attempts to obstruct the officer during the course of the search or who otherwise presents a risk to the officer's safety.

d.   The offender shall not be permitted to leave the premises during the search without the permission of the search team coordinator.

e.   The case officer or another selected officer, if the case officer is not present, should remain with the offender at all times.

EXHIBIT 2
Page 53

3.    Arresting the Offender

a.    Probation officers are authorized under 18 U.S.C. § 3606 to arrest an offender, with or without a warrant, if there is probable cause to believe that the offender has violated a condition of supervision.

b.    Notwithstanding this authority, it is the policy of the Judicial Conference that a probation officer may not initiate a revocation proceeding by a warrantless arrest and must instead first obtain court approval, after which the United States Marshals Service shall execute the warrant. JCUS-SEP 10, p. 17. *See Supervision of Offenders Procedures Manual (Law Enforcement Sensitive),* available to officers through the PACTS external portal.

c.    If an officer possesses probable cause to arrest an offender prior to executing a search, and therefore anticipates the need to arrest the offender during the search, the officer should obtain a warrant from the court and should attempt to have a marshal present to effect the arrest, if the latter is practicable.

d.    If probable cause to arrest arises during the execution of the search, an officer may arrest the offender at that time, only if the officer reasonably deems the violation conduct to be serious enough or the offender to be dangerous enough to require taking the offender into immediate custody, and the officer can safely do so. Absent such circumstances, the officer should follow the normal procedures for arresting an offender; that is, obtain a warrant from the court to be executed by the Marshals Service.

4.    Use of Force During the Execution of a Search Security Sweep

a.    Weapons should be possessed in accordance with the Director's Firearms Regulations and should only be used as set out in the Director's Use of Force Policy, which applies to all searches.

b.    Officers conducting a search may use reasonable force in response to a threat of harm to the officer or a fellow officer.

c.    A search should be terminated at any time if it is unsafe for the officers to continue.

EXHIBIT 2
Page 54

D.    Seizure of Evidence

1.    Officers should ensure the proper handling of any contraband or other seized property. Special care should be given to items that may cause injury, such as weapons or chemicals.

2.    Officers should follow proper chain of custody procedures:

a.    Photograph evidence at the location where it was found;

b.    Bag, label, and inventory any seized property;

c.    Provide a receipt to the defendant or offender and return non-contraband items to the offender when they are no longer needed by the court or, if the items cannot be returned earlier because a condition of supervision prohibits their possession by the offender, then at the conclusion of supervision; and

d.    Officers should consider allowing local police or other law enforcement agencies to take control of evidence, especially if it is hazardous in nature. Contraband items should be delivered to an appropriate law enforcement agency as soon as practicable after they are no longer needed by the court.

3.    Special care should also be given to the preservation of electronic evidence stored in computers or other electronic communications or data storage devices or media. Specially trained officers or other law enforcement personnel should be on scene to either conduct an on-site forensic analysis or take the steps necessary to secure the electronic evidence so that it can be moved off-site for forensic analysis.

E.    Leaving the Area

1.    Upon the completion of the search and taking custody of all seized property, and if safe to do so, the officers should attempt to return the areas searched to the condition in which they existed prior to the officer's arrival.

2.    Photographs or video of the premises may be recorded to reflect the condition of the premises at the time the officers leave the scene.

EXHIBIT 2
Page 55

    F.     Debriefing

          The search coordinator should speak with all officers and law enforcement agencies who participated in the search and identify:

       1.     Whether there were any safety-related incidents

       2.     Training issues

       3.     Equipment issues

IX.    Post-Search Reporting and Seized Property Management

    A.     After the search has been executed, the officer shall enter a post-search report in SIRS and log any seized property into the SIRS case property inventory.

    B.     Seized property that was not turned over to law enforcement should be stored in a safe or other appropriate, secure setting until it is no longer needed by the court.

    C.     Seized property that is not contraband or otherwise prohibited property should be returned to its owner once it is no longer needed by the court.

    D.     If seized property cannot be returned to the owner or a designee, or has been abandoned, the officer should notify the court and dispose of the property according to the procedures outlined in 41 CFR part 102-41 and the *Guide to Judiciary Policy*.

    E.     Special Forfeiture Procedures Related to the Disposition of Firearms

       1.     18 U.S.C. § 924(d)(1) provides for the forfeiture of any firearm involved in the violation of any criminal law, including a violation of 18 U.S.C. § 922(g). Section 924(d)(1) also provides that the seizure, forfeiture, and disposal of such firearms are to be carried out in accordance with the provisions of the Internal Revenue Code.

       2.     The applicable provisions of the Internal Revenue Code appear in 26 U.S.C. § 5872(b). Section 5872(b) provides that seized firearms are to be delivered to the General Services Administration (GSA) for disposal.

       3.     Actions of proceedings for the forfeiture of firearms or ammunition must be commenced within 120 days of the seizure of such items.

EXHIBIT 2
Page 56

4.    In the event that forfeiture proceedings have not been commenced in a timely fashion, the probation officer should consult with the United States Attorney's Office to ensure the legal disposition of any seized firearm.  Among the options that may be available is a government-brokered sale of the firearm, with the proceeds of the sale being returned to the offender.

F.    Each probation office should conduct an annual internal audit of seized property and chain of custody procedures.

G.    Any safety-related incidents should also be entered in SIRS.

H.    If, during the course of conducting a search, any property is damaged or any injury is sustained, the injured party may submit a claim pursuant to the Federal Torts Claim Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680. The injured party may submit a claim for any loss to the Office of the General Counsel of the Administrative Office of the U.S. Courts (**see:** Guide, Vol. 20 (Administrative Claims and Litigation)).

X.    Required Training and Certification

A.    Curriculum

1.    All probation officers shall receive training developed by the AO on these guidelines.  In addition, every officer shall be trained concerning the plain view seizure of contraband.  This training shall include, but is not limited to:

a.    Overview of National Policy

b.    Legal Principles

c.    Plain View Seizure Safety Guidelines

d.    Evidence Handling, Storing, and Disposing of Seized Items

e.    Reporting Requirements (SIRS)

2.    For any district that has a search and seizure program approved by the court, training shall be required for officers who will participate in searches.  This training shall include but is not limited to:

a.    Overview of National Policy

b.    Legal Principles

c.    Execution of Searches

EXHIBIT 2
Page 57

      d.      Evidence Handling, Storing, and Disposing of Seized Items

      e.      Use of Physical Force, Restraint Devices, and Arrest

      f.      Reporting Requirements (SIRS)

B.      Modes of Training

The AO shall develop training, certification, and re-certification programs for officers, which may include a combination of remote (e.g., web-based, CD-ROM), classroom (both at the National Training Academy and in-district), and hands-on/scenario-based exercises.

EXHIBIT 2
Page 58

## ATTACHMENT 1: ROLES AND RESPONSIBILITIES

(List not intended to be exhaustive)

The following list identifies many of the roles that may need to be filled if a district decides to implement a search program. Each role includes a non-exhaustive list of the responsibilities that staff will need to perform.

I.    Chief Probation Officer

    A.    The chief is the authority who approves or denies a proposed search.

    B.    The chief may delegate the authority to approve or deny a search (pursuant to district policy).

II.   Search Program Administrator

    A.    This officer is designated by the chief probation officer to coordinate the development of a district search and seizure program in accordance with provisions of the Judicial Conference of the United States and the Director of the Administrative Office of the United States Courts.

    B.    The Search Program Administrator performs the following tasks:

        1.    Monitors the scheduling of search and seizure training and develops local training to complement the national training program;

        2.    Oversees the acquisition, inventory, maintenance, and distribution of equipment to be used by search team members; and

        3.    Serves as an in-house expert on searches and seizures.

III.  Search Team Coordinator

This officer is designated by the chief probation officer or a designee to lead the execution of a search and performs the following tasks:

    A.    Reviews search requests submitted by the case officers;

    B.    Evaluates the specific circumstances and needs presented by the case and plans logistics for the search;

    C.    Assigns roles for search team members participating in a search;

    D.    Determines what assistance is needed from other law enforcement agencies;

EXHIBIT 2
Page 59

E.    Briefs the search team prior to search;

F.    Leads the execution of the search;

G.    Monitors seizures;

H.    Conducts debriefing subsequent to the search; and

I.    Completes the final search report in SIRS.

IV.    Case Officer

The case officer is the officer who is assigned the investigation or supervision of the offender. The case officer:

A.    Staffs the case with the supervisor to determine if a search should be pursued;

B.    Collaborates with the search team coordinator during the preparation of the request for a search;

C.    Provides background information concerning the offender to assess potential dangers or risks related to the search;

D.    Initiates contact with the offender at the start of the search;

E.    Remains with the offender, responds to inquiries from the offender, and maintains control during the execution of a search; and

F.    Prepares any necessary court reports (violation or compliance notification) after the conclusion of a search.

V.    Evidence Technician

The evidence technician is a staff member who performs the following tasks:

A.    Records the condition of the premises to be searched using photographs and/or video;

B.    Possesses appropriate equipment to mark, label, bag, and inventory seized property during the execution of a search;

C.    Records the place and condition of property to be seized using photographs and/or video;

EXHIBIT 2
Page 60

D.    Makes determination if property to be seized is dangerous or hazardous and if other law enforcement or hazardous materials agencies should respond to take control of the dangerous or hazardous property;

E.    Prepares a receipt for property seized during the execution of a search, providing a copy of the receipt to the offender or occupant of the premises;

F.    Initiates the "chain of custody" for seized property; and

G.    Arranges transportation for seized property from the location of the search to an appropriate storage facility and transfers custody of seized property to the evidence custodian.

VI.    Evidence Custodian

The evidence custodian is a staff member who performs the following tasks:

A.    Receives seized property and assumes control over the chain of custody documents;

B.    Ensures that seized property is stored in a secure environment;

C.    Releases seized property for expert analysis or for use in court proceedings;

D.    Releases non-contraband property to the offender–when possession of such property is not prohibited by the conditions–or designee after property has fulfilled its evidentiary value; and

E.    Maintains an inventory of all property contained within a secured environment and records when seized property has been transferred or returned.

VII.    Evidence Disposal Technician

The evidence disposal technician is a staff member who performs the following tasks:

A.    Receives seized property from the evidence custodian and assumes control over the chain of custody documents;

B.    Arranges for the disposal or destruction of all seized property that is no longer needed for evidentiary purposes and has either been abandoned or could not be returned to the offender or a designee; and

C.    Maintains records when seized property has been disposed of or destroyed.

EXHIBIT 2

Page 61

VIII.    Other Search Team Members

The following roles may be performed by one or more members of the search team. There may be some overlap during the performance of these roles, and the roles may change several times during the execution of a search:

A.    Pre-search surveillance

B.    Perimeter monitoring/surveillance

C.    Control officer

D.    Evidence technician assistant

E.    Photographer/videographer

F.    Childcare giver

G.    First aid provider

H.    Communication officer

I.    Transportation officer

EXHIBIT 2

Page 62

## Guide to Judiciary Policy

Vol. 8: Probation and Pretrial Services
Pt. E: Post-Conviction Supervision

## Ch. 4: Managing Noncompliant Behavior

§ 410 Overview

§ 420 Determining the Appropriate Response
       § 420.10 Philosophy
       § 420.20 Principles
       § 420.30 Assessing Risk When Noncompliant Behavior Occurs
       § 420.40 Community-Based Responses to Noncompliant Behavior Preferred
       § 420.50 Filing a Revocation Petition for Noncompliant Behavior
       § 420.60 Mandatory Responses to Revocation
       § 420.70 Response Framework to Noncompliant Behavior
       § 420.80 Applying the Framework to the Individual Case

## § 410 Overview

(a)     The conditions of supervision fix the behavioral limitations with which the person under supervision must comply.  Actions by the person under supervision that do not conform to the conditions of supervision  constitute noncompliant behavior.

(b)     An integral part of an officer's job is to assess the likelihood of noncompliance by the person under supervision and to implement strategies to prevent noncompliant behavior before it occurs.  It is the probation office's responsibility to assess the ability and motivation of the person under supervision to comply with the conditions of supervision.

(c)     When persons under supervision do not comply with their conditions, officers and probation offices should immediately begin an investigation, assessment, and planning cycle that is aimed at documenting the circumstances and managing the enhanced risk.  Management of noncompliant behavior and fostering compliant behavior are keys to effective supervision.

(d)     Noncompliant behavior may consist of new criminal activity or failure to meet the requirements of other conditions, commonly known as  technical violations.  Because noncompliant behavior can take many  forms and

*Last substantive revision (Transmittal 08-040) July 2, 2018*
*Last revised (minor technical changes) April 6, 2020*

EXHIBIT 2
Page 63

may or may not entail substantial safety concerns, the probation office should be particularly attentive to:

(1)    the thoroughness and objectivity of its allegations of noncompliance;

(2)    the judicious exercise of its authority; and

(3)    the professional demeanor of its staff when addressing noncompliance with persons under supervision.

**Note:** All responses are to be sufficient but not greater than necessary to bring the person under supervision into compliance and to promote the person's lawful self-management.

(e)    The probation office is expected to fashion its response to noncompliance in the following way:

(1)    Select the appropriate types and degrees of:

(A)    behavioral monitoring to remain informed about the person's conduct and condition;

(B)    behavioral restrictions to reduce the risk of re-offending; and

(C)    behavioral interventions to offer the person every opportunity to succeed.

(2)    Timely report to or request actions by the court or U.S. Parole Commission.

(3)    Document the noncompliance and each of the above elements of the overall response in the chronological record.

(f)    The *Post-Conviction Supervision Procedures Manual* details guidance on implementing these steps, revocation procedures, and tips for managing noncompliant behavior.

## § 420 Determining the Appropriate Response

### § 420.10 Philosophy

(a)    Responding early and effectively in response to noncompliant behavior will foster success during the period of supervision and beyond. To do

EXHIBIT 2
Page 64

nothing in response to any violation, no matter how minor, only invites further noncompliance.  Not responding, or responding with only covert detection activities, is not a viable option for effective supervision.

(b)     Probation offices are to respond to all instances of noncompliance with a combination of strategies that are designed to:

    (1)     monitor behavior;

    (2)     change the circumstances that contributed to that behavior; and

    (3)     monitor compliance.

        (A)     Monitoring activities should be increased in response to noncompliant behavior to reinforce the restrictive and behavioral interventions.

        (B)     Restrictive strategies are directed at deterring future noncompliance by limiting the opportunity of persons under supervision to engage in high-risk behavior.

        (C)     Behavioral interventions are directed at promoting future compliance by assisting the person under supervision through information, education, training, counseling, or treatment to bring about positive changes in the circumstances that led to the noncompliance or that will increase the likelihood of future compliant behavior.

## § 420.20 Principles

The standard for selecting appropriate strategies in response to noncompliance is that they be sufficient but not greater than necessary to achieve the objectives of supervision.  Further, responses are to be:

- purposeful;
- proportionate;
- multidimensional;
- certain;
- timely;
- realistic; and
- graduated.

(a)     Purposeful and Proportionate

EXHIBIT 2
Page 65

(1)    Responses are to be directed toward the defined objectives of supervision, as determined by the initial and ongoing assessments, and guided by the need to:

- protect the community from re-offending;
- promote compliance with court orders; and
- facilitate positive change for lawful behavior.

(2)    Responses should further relate to the nature and degree of the noncompliant behavior and to the context in which the behavior occurs. Contextual elements to be evaluated include:

(A)    the history of the person under supervision;

(B)    the actuarial, aggregate, and acute risks of the person under supervision;

(C)    the person's overall adjustment during this period of supervision; and

(D)    the circumstances surrounding the current instance of noncompliance.

(3)    A response for one person under supervision may not be appropriate for another person under supervision, even though both engaged in the same conduct.

(b)    Multidimensional

Responses to noncompliance should incorporate behavioral monitoring, behavioral restrictions, and behavioral interventions that are suited to the case's circumstances and needs.

(c)    Certain and Timely

Every instance of noncompliance should require some type of timely response. A threatened consequence that is not enforced will have little deterrent value and can undermine respect for the court order. A delayed response may result in persons under supervision not fully recognizing the association between their behavior and its consequences.

(d)    Realistic

Within the parameters set by the conditions of supervision, the probation office should establish reasonable and achievable expectations for the

EXHIBIT 2
Page 66

person under supervision to comply with the conditions.  Unrealistic expectations facilitate failure rather than success.  Response requirements should not be:

    (1)    impractical in and of themselves (e.g., 80 hours of community service a week); or

    (2)    so burdensome that they will likely interfere with a person under supervision's employment or family responsibilities (e.g., reporting to a distant probation office multiple times a week at 9:00 a.m.) or be beyond the person's ability to achieve (e.g., getting a job within 24 hours).

    (e)    Graduated

Repeated instances of noncompliance are to be addressed by increasingly more intensive monitoring, restrictions, and/or interventions.  Each subsequent response should be the next least intrusive response that is deemed sufficient to accomplish supervision objectives.

## § 420.30 Assessing Risk When Noncompliant Behavior Occurs

    (a)    When assessing the risks that the noncompliant behavior presents, it is important to keep in mind both short-term and long-term public safety goals.  There are circumstances when a petition to revoke supervision is clearly the appropriate response to address imminent safety concerns or when other responses have failed to address the ongoing violations of the conditions of supervision.

    (b)    Revocation for technical violations may be a short-term response to noncompliant behavior.  The majority of persons whose supervision is revoked come back to their communities — with or without an additional period of supervision — within a relatively short period of time.

    (c)    The probation office's long-term priority is the reintegration of the person under supervision into the community during the current term of supervision (i.e., working proactively to avoid noncompliance in the first place or implementing community based responses to bring the person under supervision back into compliance whenever possible).  When a probation office determines that it can no longer safely manage risk in the community, the office should still consider recommendations that will support the person's eventual reintegration into the community and decisions to be lawful, such as appropriate Federal Bureau of Prisons

EXHIBIT 2
Page 67

(BOP) placement or conditions of release, if the recommendation includes an additional term of supervision to follow revocation.

## § 420.40 Community-Based Responses to Noncompliant Behavior Preferred

Community based responses are preferred for technical violations of supervision conditions, except when:

(a)     not permitted by statute;

(b)     discouraged by U.S. Sentencing Commission policy;

(c)     the violation behavior is part of a pattern that, in the person under supervision's past, has been associated with a significant and imminent threat to public safety; or

(d)     the violation behavior represents repeated noncompliance after less intrusive community based responses have failed.

## § 420.50 Filing a Revocation Petition for Noncompliant Behavior

Formal notice to the court in the form of a petition for revocation is warranted when:

(a)     the person has reportedly engaged in conduct that constitutes new felonious criminal behavior (i.e., is a Grade A or B violation as defined in the U.S. Sentencing Commission's *Guidelines Manual.* § 7B1.1 (policy statement));

(b)     the person under supervision poses a significant and imminent risk to public safety and the probation office does not have a community based alternative to mitigate the risk; or

(c)     the person has engaged in a pattern of chronic or serious noncompliance and the probation office has exhausted available alternatives to address the noncompliant behavior.

## § 420.60 Mandatory Responses to Revocation

(a)     18 U.S.C. § 3583(k) mandates revocation of supervised release and the imposition of a new term of imprisonment of at least five years if a person under supervision, who is required to register under the Sex Offender Registration and Notification Act (SORNA), commits any felony under chapter 109A, 110, or section 1201 or 1591. **See:** *United States v. Haymond*, 139 S. Ct. 2369 (2019) (holding that 18 U.S.C. § 3583(k) is unconstitutional).

EXHIBIT 2
Page 68

(b)    Under 18 U.S.C. § 3583(g), revocation of supervised release is required if the person under supervision:

   (1)    possesses a firearm or a controlled substance;

   (2)    refuses to comply with required drug testing; or

   (3)    tests positive for illegal controlled substances more than three times over the course of one year.

(c)    However, under 18 U.S.C. § 3583(d), the court is directed to consider whether the availability of appropriate substance abuse treatment programs, or a person's current or past participation in such programs, warrants an exception to the drug testing provisions when considering any action against a defendant who fails a drug test. Similar provisions for probation are provided at 18 U.S.C. §§ 3565(b) and 3563(e).

   (**Note:** The mandatory probation revocation provision for failure to comply with a drug test (18 U.S.C. § 3565(b)) erroneously refers back to a violation of the condition imposed by § 3563(a)(4) — which requires a mandatory treatment condition in domestic violence cases — rather than subsection (a)(5), which is the subsection that requires mandatory drug testing. This is the result of a congressional drafting error that occurred in 1996 when the current (a)(4) was added to the list of mandatory probation conditions without a conforming amendment to the cross- reference in § 3565(b). However, it is clear from the plain wording of § 3565(b) that it is the drug testing condition that triggers the provision. Probation offices are always to assess the potential applicability of the treatment exception for persons under supervision who test positive for drug use.)

## § 420.70 Response Framework to Noncompliant Behavior

(a)    The advisory framework for responding to noncompliance places violation behavior into three general categories of severity — low, moderate, and high — based on the seriousness and chronicity of the violation behavior. The framework also considers:

   (1)    the actuarial risk to re-offend (high, moderate, low/moderate, and low);

   (2)    the risk of committing a violent act (Level 1, 2, 3); and, as appropriate,

   (3)    other risk factors specific to the person under supervision.

EXHIBIT 2
Page 69

(b)    For each level of violation severity, a non-exhaustive list illustrates:

(1)    potentially appropriate responses;

(2)    suggested time frames; and

(3)    associated staffing, approval, and reporting processes.

**Note:** The framework is designed as a starting point for responding to noncompliance and is meant to stimulate, rather than constrain, creative and individualized responses that are tailored to the circumstances and behavior of the person under supervision.

(c)    Depending on the type of responses deemed appropriate and the person under supervision's current conditions, some responses may require a request for modification of the conditions of release; others will not. Probation offices may never undertake a response that is not consistent with the existing conditions of release and circuit law.

### § 420.70.10 Low-Severity Violations

Low-severity violations are minor and nonrecurring and should ordinarily result in a community based response, unless the risk of the person under supervision to re-offend or to commit a violent act warrants a different result. There should be a logical link between the responses selected and the nature of the violation (e.g., reprimanding and reviewing conditions in response to a first-time failure to report). Staffing with the supervisor and a report to the court or Parole Commission are optional.

### § 420.70.20 Moderate-Severity Violations

(a)    Moderate-severity violations are more chronic or severe in nature. They should ordinarily result in community based responses, unless:

(1)    the violation is part of a pattern that, in the person under supervision's past, has been associated with a significant and imminent threat to public safety;

(2)    the person's risk to re-offend or commit a violent act warrants a different result; or

(3)    revocation is required by circuit law.

(b)    Responses should generally be staffed with the supervisor and implemented within two weeks. A report to the court or Parole Commission is required unless the probation office determines that:

EXHIBIT 2
Page 70

(1)   such violation is minor and is not part of a continuing pattern of violations; and

(2)   foregoing a report will not present an undue risk to a person or to the public or will be inconsistent with any directive of the court relative to the reporting of violations. **See:** U.S.S.G. § 7B1.2(b).

### § 420.70.30  High-Severity Violations

(a)   High-severity violations require revocation by statute, involve substantial risk to the public, or represent repeated noncompliance after less intrusive community based responses have failed. They will ordinarily result in a request for revocation.

(b)   Responses should generally be staffed with the supervisor and implemented within one week from the time that the probation office receives notice of the violation behavior. If the officer and supervisor determine that additional evidence is necessary to support a request for revocation, action may be delayed pending further investigation. The supervisor and the chief or the chief's designee should review and approve recommendations for a response other than revocation. A report to the court or Parole Commission is required.

## § 420.80  Applying the Framework to the Individual Case

(a)   The ultimate objective is to apply the principles of managing noncompliance to the individual case. There is always the need to individualize the response, and there are always exceptions to the general rule.

(b)   Exceptions to the generally appropriate response based on the seriousness or chronicity of the violation behavior alone — as well as the selection of particular responses — should be based on an assessment of the implications for public safety, given:

(1)   the overall circumstances of the person under supervision;

(2)   the person's risks to re-offend or to commit a violent act; and

(3)   the context in which the violation occurred.

(c)   The response times may also be altered as appropriate. For example, some suspected violations are complex and will require lengthy investigation to determine and document their occurrence. In such cases,

EXHIBIT 2
Page 71

the officer is to confer with the supervisor to discuss appropriate investigative activities and target time frames and may submit an interim report to the court.

(d)    The determination of the appropriate response to noncompliance is to be a collaborative, professional, decision-making process that is implemented through case staffings. The involvement of supervisors; office specialists; and, occasionally, office management will also promote consistency of decision-making throughout the district.

## § 420.80.10 Exceptions to the General Framework Requirements

Examples of context-based exceptions to the general framework requirements are:

(a)    Driving Under the Influence

Driving under the influence (DUI) is classified as a moderate-severity violation for which revocation is an option but is not favored. However, requesting revocation may be appropriate if:

(1)    the person is under supervision for, or has a history of, DUI; or

(2)    there were aggravating circumstances.

(b)    Unauthorized Association With a Felon

Unauthorized association with a felon is classified as a low-severity violation, but there may be instances when the nature of the unauthorized association is so closely related to the person under supervision's past pattern of criminal behavior that a request for revocation is warranted.

(c)    Testing Positive for Drugs

Testing positive for drugs does not become a high-severity violation until the fourth instance, but a person under supervision may be ripe for a revocation request well before the fourth positive if the person:

(1)    has a chronic criminal history marked by violence;

(2)    has a negative supervision history;

(3)    tests positive for phencyclidine; or

(4)    is not attending treatment.

EXHIBIT 2

Page 72

(d)    Episodic Drug User

    (1)    If consistent with circuit law, an exception to requesting revocation in the high-severity category may be appropriate, and should be given more consideration, for an episodic drug user if the person is:

        (A)    actively participating in treatment;

        (B)    making progress toward objectives; and

        (C)    not considered a danger to self or others.

### § 420.80.20 Selecting Elements of Community Based Responses to Noncompliant Behavior

(a)    The response framework comprises various elements and is to be sufficient but not greater than necessary to bring this person under supervision into compliance and to promote his or her successful reintegration into the community.  The intrusiveness of the response is determined by:

    (1)    the nature of each individual element (e.g., warning is less intrusive than restricting, and re-instructing is less intrusive than treatment); and

    (2)    how the strategies are implemented and combined (e.g., involving office management or notifying or involving the court or Parole Commission can be used to add weight to an otherwise lower-end intervention, and a verbal warning and re-instruction by an officer falls lower on the continuum than would a written warning and re-instruction by the chief or supervisor with a copy to the court).

(b)    Within the proportionality constraints of the response principles, offices should be innovative in their approach and creative in crafting responses that are suited to the situation.  Offices should give thought to:

    (1)    what the person under supervision is likely to experience as a negative consequence; and

    (2)    the most likely causes of the person's noncompliance that need to be addressed to avoid further problems.

**Note:**  The goal is to appropriately blend and tailor strategies to provide what the person under supervision needs for a successful reintegration into the community.

EXHIBIT 2

Page 73

(c)     In making these determinations, offices should consider the purposes of each available strategy.  The purposes of some common community based strategies are as follows:

(1)     Reprimands and warnings serve primarily to put the person on supervision on notice that the misconduct has been detected and that additional steps will be taken if there is a recurrence. Reprimands and warnings may be oral and/or written.  The content of the warning may be guided by the:

(A)     response framework; and

(B)     office's assessment of the type of next least intrusive response that the person under supervision will likely perceive to be a disincentive.

(2)     Increased reporting serves to clarify for the person under supervision that not complying with conditions will result in more burdensome requirements to document his or her activities.

(3)     Administrative compliance reviews conducted by probation office management and judicial compliance hearings before the court emphasize the involvement and support of the office and court in responding to noncompliance.

(4)     Increased restrictions make it clear to the person under supervision that not complying with conditions will result in more limitations on freedom of movement and choice.

(5)     Increased overt monitoring activities (e.g., increased testing for substance use or more frequent home and community contacts) make it clear to the person under supervision that he or she is being watched more closely.

(**Note:** Increased monitoring of which the person under supervision is not aware may be added to the overall response to enhance awareness but is not considered a direct response to the person under supervision.  As a result, it does not satisfy the requirement to implement a strategy.)

(6)     Re-instruction provides clear guidance to the person under supervision about exactly what he or she must do (or not do) to avoid a recurrence of the noncompliance.  The re-instruction may:

EXHIBIT 2

Page 74

(A)    be oral or written;

(B)    be formalized through behavioral contracts; and

(C)    include such things as requiring the person under supervision to review a supervision orientation tape or attend another orientation meeting.

(7)    Education or training provides the person under supervision with additional information and skills.  It may be provided by:

- the officer;
- specialists on staff; or
- a referral to contract or noncontract providers in the  community.

(8)    The primary purpose of therapeutic assessment is to provide both the person under supervision and the office with information  about:

(A)    the nature and extent of a suspected substance abuse or mental health problem; and

(B)    the need for and most appropriate form of remedial counseling or treatment.

**Note:** Assessments are always to be followed by action that is appropriate to the results.

(9)    Counseling or treatment provides the person under supervision with professional assistance in overcoming an identified  substance abuse or mental health problem.  The intensity will vary  by:

- approach (outpatient, inpatient, or therapeutic community);
- session frequency; and/or
- length of stay.

(10)    Extension of a term of probation or supervised release should be requested of the court only when an extension for a specified period of time will allow an uncooperative person under  supervision to fulfill specific special conditions of supervision (e.g.,  completion of drug treatment).  Such requests are not appropriate  if the person under supervision has outstanding monetary penalties but has been in compliance with the conditions of  supervision (including the schedule of payments) and has merely  been unable to meet financial obligations due to an inability to pay.

EXHIBIT 2
Page 75

(**Note**: Extension of a parolee's supervision beyond the full-term expiration date can be accomplished only by revoking the term and denying the parolee street time credit for one of the permissible reasons outlined at 18 U.S.C. § 4210(b) and (c).)

(11) Six months before the expiration of supervision in any case with outstanding monetary penalties, officers are to notify the financial litigation unit of the U.S. attorney's office that a person under supervision with an unpaid balance on his or her monetary penalty will soon complete the term of supervision.

(**Note**: The U.S. attorney's office is responsible for collecting an unpaid fine or restitution (18 U.S.C. § 3612(c)). The U.S. attorney's office also has considerable means at its disposal for effecting collection for a period of up to 20 years from the later of the date that either the judgment was entered or that the person under supervision was released from prison.)

For specific procedures, **see**: Guide, Vol. 8G (Criminal Monetary Penalties (Monograph 114)), § 690 (Expiration of Supervision).

EXHIBIT 2

Page 76

# Guide to Judiciary Policy

Vol. 8: Probation and Pretrial Services
Pt. E: Post-Conviction Supervision

## Ch. 5: Records and Confidentiality

§ 510 File Information Disclosure
        § 510.10 File Information for Persons on Probation or Supervised Release
        § 510.20 File Information for Parolees

§ 520 Standards Governing Certain Disclosure Requests
        § 520.10 Requests by Individuals Under FOIA or the Privacy Act
        § 520.20 Requests by Law Enforcement Agencies
        § 520.30 Requests by Correctional Agencies

§ 530 Subpoena for Testimony or Production of Records

§ 540 Risk and HIV/AIDS Disclosures
        § 540.10 Third-Party Risk Disclosure (Probation and Supervised Release Cases)
        § 540.20 Third-Party Risk Disclosure (Parole Cases)
        § 540.30 HIV/AIDS Disclosure

§ 550 Treatment Records Confidentiality and Disclosure
        § 550.10 Confidentiality and Disclosure of Substance Use Disorder and Mental
            Health Information (Including Persons Convicted of a Sex Offense)
        § 550.20 Obtaining Physical, Health Care, and/or Mental Health Information
        § 550.30 Responding to Requests for Physical and Mental Health Information
        § 550.40 Treatment Provided by Federal Judiciary Employees
        § 550.50 Additional Disclosures on Substance Use Disorder Services

---

# § 510 File Information Disclosure

## § 510.10 File Information for Persons on Probation or Supervised Release

(a)    While a person may retain a copy of his or her presentence report under Rule 32(e) of the Federal Rules of Criminal Procedure, probation and supervised release files are under the court's jurisdiction.  Disclosure of file content is determined by the chief probation officer under Guide, Vol. 20, Ch. 8 (Testimony and Production of Records).

(b)    Probation offices maintain files primarily to:

*Last substantive revision (Transmittal 08-040) July 2, 2018*
*Last revised (minor technical changes) April 9, 2021*

EXHIBIT 2
Page 77

(1)    comply with 18 U.S.C. § 3603(5) (requiring the probation officer to keep a record of the probation officer's work and make such reports to the Director of the Administrative Office of the U.S. Courts (AO) as the Director may require);

(2)    record and preserve an official record of supervision;

(3)    report to the court on the conduct and condition of persons under supervision; and

(4)    bring about improvements in their conduct and condition.

(c)    Persons, including the person under supervision, who provide information to the probation office should feel secure in giving information and knowing that it will be used primarily by the court. Indiscriminate dissemination of information should be avoided.

## § 510.20 File Information for Parolees

File information on parolees is subject to the Parole Commission's control. **See:** Parole Commission's *Rules and Procedures Manual*.

(a)    Disclosure to Law Enforcement Agencies

(1)    Information concerning parolees may be released to a law enforcement agency as required for the protection of the public or the enforcement of the conditions of parole. **See:** 28 CFR 2.37(b).

(2)    Authority for such disclosure, absent specific instruction from the Parole Commission, has been delegated to the chief probation officer, who:

(A)    may authorize, on a case-by-case basis, the disclosure of information that is necessary to assist in the investigation of a specific crime (e.g., notification to a law enforcement agency that a parolee's past modus operandi is similar to one used in a recent crime);

(B)    may authorize the disclosure of information that is necessary to assist in parole supervision (e.g., asking a law enforcement agency if a parolee is under investigation or requesting assistance in locating an absconder); and

(C)    will periodically provide, upon the request of a law enforcement authority, the following information about

EXHIBIT 2
Page 78

parolees who are under supervision or about to be released to the district:

- names;
- date of birth;
- crimes of conviction;
- projected sentence expiration dates; and
- FBI fingerprint numbers.

**Note:** The chief probation officer, at his or her discretion, may provide additional identifying information (e.g., address, photograph, or fingerprints), if appropriate and feasible.

(3)    Any law enforcement agency that receives information under these provisions must be notified that the information is only for law enforcement purposes and should not be released outside the agency.

(b)    These provisions for routine disclosure do not apply to witness protection cases.

(c)    Questions concerning routine disclosure of other information should be referred to the Parole Commission.

## § 520 Standards Governing Certain Disclosure Requests

### § 520.10 Requests by Individuals Under FOIA or the Privacy Act

(a)    Records Disclosure Limits

The Freedom of Information Act (FOIA) — which establishes a method for gaining access to government records — and the Privacy Act — which provides a structure for safeguarding the privacy of individuals by restricting the dissemination of records or information contained in the records — limit the availability, use, and disclosure of federal records and documents. **See:** 5 U.S.C. § 552.

(b)    Court Exclusion From FOIA and Privacy Act Requirements

The courts are excluded from both FOIA and the Privacy Act. In *United States Department of Justice v. Julian*, 486 U.S. 1 (1988), the U.S. Supreme Court held that subjects of presentence reports may obtain such reports from the Federal Bureau of Prisons (BOP) or the U.S. Parole Commission under FOIA provisions since these agencies are in the executive branch and are subject to the Act. The ruling did not affect the

EXHIBIT 2

Page 79

exclusion of courts from coverage under FOIA since courts are specifically excluded from the definition of "agency" in 5 U.S.C. §§ 551(1)(B) and 552(f)(1). **See:** *Standley v. Department of Justice*, 835 F.2d 216, 218 (9th Cir. 1987).

(1)    The U.S. Supreme Court held that presentence reports in the possession of the BOP and the Parole Commission were covered under FOIA. The Court appeared to recognize that the Federal Rules of Criminal Procedure (e.g., Rule 32(d)(3)) specifically exempt from disclosure any information related to:

   (A)    confidential sources;

   (B)    diagnostic opinions; and

   (C)    other information that may cause harm to the person under supervision or third parties.

Such information is, therefore, exempt from disclosure under FOIA. It also is likely that the recommendation is exempt from such disclosure.

(2)    *U.S. Department of Justice v. Julian*, 486 U.S. 1 (1988), does not require the probation office or the court to furnish a copy of the presentence report to persons under supervision.

(c)    Parole Cases

If the request under FOIA or the Privacy Act pertains to a parole case, the probation office should contact the Parole Commission's regional office.

## § 520.20 Requests by Law Enforcement Agencies

(a)    A probation office's disclosure of information in response to law enforcement agency requests is determined under Guide, Vol. 20, Ch.8. Under those procedures, the determining officer (i.e., the chief probation officer) can waive certain requirements (e.g., requirement to include an affidavit explaining why the information is sought) in emergencies if the conditions:

   • could not reasonably have anticipated by the requester, and
   • demonstrate a good-faith attempt to comply with these regulations.

(b)    The information the probation office discloses to law enforcement agencies should include only identifying information (e.g., location,

EXHIBIT 2
Page 80

handwriting exemplar) and/or information related to possible risk to law enforcement officers investigating the person under supervision. This information is for investigatory, not evidentiary, purposes.

### § 520.20.10 Disclosing Information to Law Enforcement

(a)    In dealing with other agencies, probation offices must always be aware of their limited authority to communicate information about the person on supervision. Offices should assess how much disclosure is necessary and proper to obtain the necessary cooperation from the other agency and should be sensitive to the court's confidentiality policies and the probation office's authorized course of practice. Any doubts should be resolved by securing permission from the determining officer for the disclosure. The following types of information may be appropriate to disclose:

(1)    the assigned probation officer's contact information;

(2)    the supervision begin and end dates of the person on supervision;

(3)    the address of the person on supervision and Geographic Information System (GIS) mapping information;

(4)    demographic information (e.g., date of birth, sex, race, eye color, hair color, height, and weight);

(5)    identifying marks or tattoos;

(6)    aliases;

(7)    social security number;

(8)    agency numbers (e.g., U.S. Marshals Service and FBI numbers); and

(9)    photograph of the person under supervision.

(b)    The probation office must provide notice to state, tribal, and local law enforcement in cases involving crimes of violence, drug trafficking, and sex offenses that require persons on supervision to register under the Sex Offender Registration and Notification Act (SORNA) if such persons change residence. The probation office also must notify the person convicted of a sex offense who is required to register under SORNA and is sentenced to probation. **See:** Violent Crime Control and Law Enforcement Act (VCCA) (Pub.Law 103-322, Sept. 13, 1994, as amended in 1997), codified at 18 U.S.C. § 4042. **See also:** Key Legislation and Court Decisions Affecting Supervision.

EXHIBIT 2
Page 81

### § 520.30 Requests by Correctional Agencies

(a)    The probation office may disclose information to a correctional agency if the office limits such disclosure to accommodate the confidentiality principle of Rule 32 of the Federal Rules of Criminal Procedure.

(b)    Before implementing its policy regarding disclosure of information to state and local correctional agencies, the probation office should obtain the court's approval.

### § 530 Subpoena for Testimony or Production of Records

Guidance for officers who are subpoenaed to testify or produce information is found in the Judicial Conference subpoena regulations. **See:** Guide, Vol. 20, Ch. 8. **Note:** If the subpoena pertains to a parole case, the probation office should seek direction from the general counsel's office in the Parole Commission's headquarters.

(a)    Presentence Report

The "presentence report is prepared [by the probation office] exclusively at the direction of and for the benefit of the [federal sentencing] court." **See:** *United States v. Dingle*, 546 F.2d 1378, 1830-81 (10th Cir. 1976). Thus, in most instances, disclosure is contrary to sound policy. **See also:** Judicial Conference subpoena regulations (Guide, Vol. 20, Ch. 8).

(b)    Probation Records

The same need for confidentiality applies to probation records prepared by probation staff for a federal court to keep the court informed of the conduct and condition of each probationer under its supervision. **See:** *United States v. Walker*, 491 F.2d 236 (9th Cir.), *cert. denied*, 416 U.S. 990 (1974).

(c)    Court Determination

Under 18 U.S.C. § 3602, U.S. probation officers serve as subordinate agents of the district courts that employ them. Since presentence reports and probation information are prepared for and on behalf of the court, it is up to the court to determine whether such materials should be disclosed or held confidential. *United States v. Charmer Industries Inc.*, 711 F.2d 1164 (2nd Cir. 1983), upheld the presentence report's confidentiality. The case contains a complete discussion of the issue with citations to other relevant authorities. **See:** *United States v. Schlette*, 842 F.2d 1574, 1581, 1584-851 (9th Cir. 1988), *amended by* 854 F.2d 359 (9th Cir.1988), *on remand*, 699 F. Supp. 222 (N.D.Cal., 1988). (**Note:** Disclosure of a

EXHIBIT 2
Page 82

presentence report, in whole or in part, to a third party or to the news media may be granted after a court balances the need for disclosure against the reasons for confidentiality.)

## § 540 Risk and HIV/AIDS Disclosures

### § 540.10 Third-Party Risk Disclosure (Probation and Supervised Release Cases)

U.S. probation offices have a duty to warn specific third parties of a particular prospect of physical or financial harm they "reasonably foresee" that the person under supervision may pose to them. This obligation exists whether or not the third party has solicited the information.

#### § 540.10.10 Risk Disclosure Standards

The AO's Office of the General Counsel has provided standards for the disclosure of information concerning risk in probation and supervised release cases as follows:

(a)     Probation offices should periodically review the circumstances of all persons under supervision to determine whether such persons might pose a reasonably foreseeable danger to a third party. "Reasonably foreseeable" risk means that the circumstances of the relationship between the person under supervision and the third party (e.g., employer and employee) suggest that the person under supervision may engage in a criminal or antisocial manner that is similar or related to past conduct.

(b)     Guidelines for the disclosure of third-party risk information are selective. A warning is not required in every case, only when the probation office believes that a reasonably foreseeable risk of harm to a specific third party exists.

(c)     The requirement that a person under supervision refrain from engaging in a particular type of employment or inform his or her employer about the person's criminal conviction generally should be imposed by the court as a formal special condition. See, e.g., *United States v. Peterson*, 248 F.3d 79, 87 (2d Cir. 2001) ("[T]o the extent that the conditions contemplate employer notification of the offense of conviction, we believe . . . that the court must determine, rather than leaving to the discretion of the probation officer, whether such notification is required. If the court believes such notification should be mandatory for certain types of employment but not others, the court may specify guidelines to direct the probation officer, but may not simply leave the issues of employer notification to the probation officer's unfettered discretion."); *United States v. Doe*, 79 F.3d 1309 (2d Cir. 1996) (requiring probation officers to secure court approval prior to

EXHIBIT 2
Page 83

making a warning that could result in loss of employment).  Absent circuit case law to the contrary, such a condition is unnecessary if the person under supervision is willing to comply with the disclosure requirement and it is not an adversary issue.

(d)    A disclosure requirement must be reasonably related to the correctional interventions provided for the person under supervision and the protection of the public.

## § 540.20 Third-Party Risk Disclosure (Parole Cases)

(a)    U.S. probation offices may disclose third-party risk information concerning a parolee to a person who may be exposed to harm through contact with the parolee if such disclosure is deemed reasonably necessary to give notice that a danger exists.  **See:** 28 CFR 2.37(a).

(b)    In the absence of a special instruction from the Parole Commission, authority for the discretionary release of information is delegated to the chief probation officer.

(c)    The probation office should determine whether to disclose third-party risk information concerning parolees, using the standards established for probationers and supervised releasees.

(d)    The probation office may refer any questions concerning disclosure in parole cases to the Parole Commission's regional commissioner.

## § 540.30 HIV/AIDS Disclosure

For information about the disclosure of persons under supervision who have tested positive for antibody exposure to the Human Immunodeficiency Virus (HIV) or who have developed symptomatic HIV disease, including Acquired Immune Deficiency Syndrome (AIDS), **see:**  HIV Guidelines, Criminal Law Committee (last updated April 22, 2008).

## § 550 Treatment Records Confidentiality and Disclosure

## § 550.10 Confidentiality and Disclosure of Substance Use Disorder and Mental Health Information (Including Persons Convicted of a Sex Offense)

(a)    There are several circumstances in which probation offices will encounter issues of confidentiality and disclosure relating to substance use disorders and mental health, including the following:

(1)    obtaining information pertaining to:

EXHIBIT 2
Page 84

- health care;
- mental health;
- substance use disorders;
- sexual abuse; and
- correctional services from the BOP;

(2)     responding to requests for information pertaining to:

- health care;
- mental health;
- substance use disorders;
- sexual abuse; and
- correctional services;

(3)     having treatment provided by judiciary employees; and

(4)     disclosing information pertaining to:

- health care;
- mental health;
- substance use disorders;
- sexual abuse; and
- correctional services.

(b)     The Health Insurance Portability and Accountability Act of 1996 (HIPAA) was enacted in part to enhance the efficiency of health care transactions by requiring the U.S. Department of Health and Human Services (HHS) to establish national standards for electronic health care transactions. HIPAA also enhanced the efficiency and privacy of health care transactions and provided for patients' right to review their health information.

(c)     Enhancing the electronic digital storage, transmission, and receipt of health information also increased opportunities for misuse of private health records. To diminish such abuse, HIPAA also required HHS to adopt regulations that would:

(1)     increase the security and privacy of health information; and

(2)     provide comprehensive guidance for the handling of protected health information.

**Note:** HHS first published these health information privacy regulations, collectively referred to as the "Privacy Rule," on December 28, 2000. **See:** 45 CFR part 160 and part 164.

EXHIBIT 2
Page 85

(d)    HIPAA imposes both criminal and civil penalties on physical and mental health service providers for noncompliance with the Act.  Although the judiciary is not subject to HIPAA, service providers and probation offices that provide treatment are bound by its rules.  In addition to the federal access and privacy protections outlined in HIPAA, individual states may have legislation that provides additional protections.  It is important to understand and follow the laws within the local jurisdiction.

## § 550.20 Obtaining Physical, Health Care, and/or Mental Health Information

(a)    HIPAA clarifies the right of persons under supervision to control access to their health information.  Probation offices will generally seek relevant medical, psychiatric, or substance use disorders assessment or other records with an authorization for the release of information that the person under supervision voluntarily signs.  This authorization is for specific information, and its duration is for a specified period of time.

(b)    Because a person under supervision may revoke access to one specific service record, while leaving intact access to other service records, authorizations should not be combined.  Separate authorizations should be completed for substance use disorders and mental health services, even if the same provider is providing services.

(c)    An authorization is required to verify the person's participation in a court-ordered clinical service.

## § 550.30 Responding to Requests for Physical and Mental Health Information

(a)    Under HIPAA, persons under supervision have the right to review their protected health information, with important exceptions.  Such persons who request service records, whether provided by court order or under a federal contract, should be referred directly to the service provider.  The following are some exceptions to HIPAA disclosure:

(1)    Counseling or psychotherapy notes are non-disclosable.

(2)    Information that may harm the person or others may be withheld.

(3)    Information compiled in anticipation of use in civil, criminal, and administrative proceedings is not subject to the same right of review and amendment as is health care information in general. **See:**  45 CFR 164.524(a)(ii).

(b)    HIPAA distinguishes between two types of disclosure:  authorized and mandatory.

EXHIBIT 2
Page 86

    (1)    Authorized Disclosure

           Authorized disclosure is obtained when the person under supervision executes a written authorization form that meets certain standards. Release Forms PROB 11A through PROB 11I meet these standards.

    (2)    Mandatory Disclosure

           Mandatory disclosure of HIPAA-protected information is required in only two instances:

        (A)    when HHS conducts an investigation of HIPAA compliance, and

        (B)    by lawful order.

(c)    Persons under supervision may redisclose lawfully obtained information. For instance, such persons may share their health information with their attorney. Likewise, the probation office may redisclose lawfully obtained information under certain circumstances. To prevent the re-dissemination of federal materials, all materials sent to the provider should be marked "**Confidential, Not Subject to Redisclosure.**"

(d)    HIPAA authorizes service providers to determine what information to release, when to release it, and to whom to release it. Only service providers can make these determinations because they face both criminal and civil penalties for noncompliance with HIPAA. The fact that a service provider is under contract with the federal court does not diminish the service provider's responsibility to make disclosure decisions.

## § 550.40 Treatment Provided by Federal Judiciary Employees

(a)    Although federal judiciary employees are discouraged from providing clinical services, if they provide such services (including officers who provide treatment) and perform such services that fall within the definition of "health care provider" in 45 CFR 160.103, such employees must comply with all HIPAA provisions.

(b)    Even if employees providing treatment determine that they do not engage in HIPAA-covered transactions, their offices should maintain treatment records separately from probation file material.

(c)    A probation officer who conducts groups using a manualized cognitive behavioral program acts only as a facilitator. The officer is not in any way

EXHIBIT 2
Page 87

considered to be providing clinical treatment services (counseling) and is not considered a healthcare provider.

## § 550.50 Additional Disclosures on Substance Use Disorder Services

(a)   Although the federal judiciary generally is not bound by HIPAA, the confidentiality of substance use disorder service records maintained in probation and pretrial services files is governed by two separate authorities:

  (1)   the Code of Federal Regulations; and

  (2)   the general confidentiality regulations protecting all pretrial services and probation material.

(b)   42 CFR part 2 requires the confidentiality of substance use disorder records. However, these regulations permit a provider to disclose otherwise protected information to the criminal justice system when:

  (1)   participation in the program is a condition of supervision; and

  (2)   the person under supervision has signed a written authorization for such disclosure.

(c)   This regulation gives service providers the authority to release information to the probation office in connection with the duty to monitor the person under supervision.  Staff who receive this information may redisclose and use it, if necessary, to carry out official duties.  Such redisclosure does not require a specific waiver from the person under supervision or permission from the court.

(d)   Simple drug testing that is conducted for monitoring purposes and is not connected to clinical service is not covered by 42 CFR part 2.

(e)   The regulations outlined in 42 CFR part 2 also permit disclosure without the consent of the person under supervision in response to a medical emergency and for research purposes when a person's identity is not revealed.

EXHIBIT 2
Page 88

## Guide to Judiciary Policy

Vol. 8: Probation and Pretrial Services
Pt. E: Post-Conviction Supervision

### Ch. 6: Transfer of Supervision and Jurisdiction

§ 610 Transfer of Supervision

§ 620 Special Transfer-In Cases

§ 630 Transfer of Jurisdiction

§ 640 Transfer of Jurisdiction in Treaty-Transfer Cases

§ 650 Re-Transferring Supervision

§ 660 Courtesy Supervision

§ 670 Permission to Travel

---

## § 610 Transfer of Supervision

(a)     Transfer of supervision is a procedure that is authorized under 18 U.S.C. § 3603(4) in which staff in the probation office with jurisdiction transfer the supervision of the case to another probation office, which assumes responsibility for enforcing all conditions and implementing all supervision strategies, including using local resources for intervention services.

(b)     As part of a national system, districts have a shared responsibility to maximize the success of the person under supervision, regardless of where the person was sentenced. This shared responsibility requires collaborative analyses and decision-making regarding the factors in each jurisdiction that will contribute to or hinder lawful behavior and compliance with the conditions of supervision. All factors being equal between two jurisdictions, transfer of supervision should be approved.

(c)     Transfer of supervision in post-conviction cases from one district to another should occur when relocation is more likely or equally likely to maximize lawful behavior and compliance with the conditions of supervision by a person under supervision during the period of supervision and beyond.

(d)     A chief or his or her designee should authorize all denials of transfer of supervision.

*Last revised (Transmittal 08-040) July 2, 2018*

EXHIBIT 2
Page 89

(e)    In considering transfer of supervision, it is important to note that the Judicial Conference of the United States recommends the simultaneous transfer of jurisdiction in all instances when a person under supervision is being supervised in another district.  **See:**  JCUS-MAR 88, p. 13, and Memorandum, March 17, 1999, Transfer of Jurisdiction in Post-Conviction Supervision Cases.

## § 620 Special Transfer-In Cases

(a)    Persons Under Supervision Who Reside in Another District

When a person sentenced to probation resides in another district, it is presumed that supervision will move to the district where such person resides.  The probation office in the sentencing district is not required to request a formal transfer of supervision but should follow the transfer of supervision with a formal transfer of jurisdiction.  These procedures also may be used when:

- a defendant is sentenced to "time served";
- the term of supervised release commences immediately; and
- the defendant has an established residence in another district.

(b)    Illegal Reentry Case With a Current Term of Supervised Release

If a person subject to a term of supervised release illegally reenters the United States following deportation and is arrested in a new district, jurisdiction of the existing term of supervised release should be transferred to the new district so that the prosecution of the new charges can be consolidated with the violation proceedings.

(c)    Cases With Joint-and-Several Restitution

When jurisdiction is transferred and the person under supervision has been ordered to pay joint-and-several restitution, payments should be made to the original sentencing district, notwithstanding the transfer of jurisdiction.  See:  Administrative Office Memorandum, November 14, 2000, Joint and Several Restitution for Offenders Jurisdictionally Transferred.

**Note:**  In all other cases, payments should be made to the clerk of court in the district with jurisdiction.

(d)    Cases With Concurrent State/Tribal and Federal Supervision

EXHIBIT 2
Page 90

(1)    When there is concurrent federal and state/tribal supervision, the probation office should attempt to coordinate the transfer with the appropriate state/tribal agencies.

(2)    Transfers of state supervision are governed by the terms of the Interstate Commission for Adult Offender Supervision (ICAOS), which facilitates the transfer of state supervision cases and can assist the probation office when issues arise.

## § 630 Transfer of Jurisdiction

When a probation office accepts transfer of supervision, staff in the transferring district should begin the process of transferring jurisdiction to such district. A court to which jurisdiction is transferred under this section is authorized to exercise all powers over the person under supervision that are permitted by statute.

## § 640 Transfer of Jurisdiction in Treaty-Transfer Cases

(a)    Under 18 U.S.C. § 4106, when a citizen imprisoned in a foreign country is transferred to the United States under an existing treaty, U.S. Parole Commission staff determine a release date and, as appropriate:

- a term of supervised release;
- the conditions of any such release; and
- the district of the person's residence.

**Note:** For Parole Commission regulations that apply to treaty transfer, **see:** Parole Commission's *Rules and Procedures Manual*, § 2.68.

(b)    Under 18 U.S.C. § 4106A(b)(3), a person placed on supervised release under these treaty transfer provisions is to be supervised by the U.S. district court for the district in which the person resides. Therefore, jurisdiction of the case must be transferred from the Parole Commission to the court in the district in which the Parole Commission determines the person will reside.

(1)    Often, treaty transferees are immediately released to a term of supervised release. Jurisdiction in these cases should be established expeditiously in case court action or the issuance of a warrant becomes necessary.

EXHIBIT 2
Page 91

    (2)    For information about the treaty transfer post-sentence report prepared for the Parole Commission in these cases, **see:** Guide, Vol. 8D, Appx. 1D.

## § 650 Re-Transferring Supervision

Probation offices that supervise a person whose jurisdiction is held in another district may re-transfer supervision of the case to another district but must provide notice to the district with jurisdiction. Offices also should consider transfer of jurisdiction when considering re-transfer of supervision.

## § 660 Courtesy Supervision

When a person under supervision is temporarily in another district, courtesy supervision is authorized under 18 U.S.C. § 3603(4). Under such circumstances, the probation office that provides supervision may ask staff in the other district to assume temporary and limited responsibility for the supervision of such person. The term of courtesy supervision should not exceed 90 days.

## § 670 Permission to Travel

When a probation office authorizes a person who is under the office's supervision to travel to another district, such probation office should adhere to the travel requirements of the probation office where the person under supervision plans to travel.

EXHIBIT 2

Page 92