**Paul C. Galm, OSB No. 002600**
Email: paul@paulgalmlaw.com
PAUL C. GALM, ATTORNEY AT LAW, LLC
12220 SW First Street
Beaverton, OR 97005
Telephone:    (503) 644-9000
Facsimile:    (503) 644-9050

**Josh Lamborn, OSB No. 973090**
Email: jpl@pdxinjury.com
THE LAW OFFICE OF JOSH LAMBORN
50 SW Pine St Ste 301
Portland OR  97204
Telephone:    (503) 546-0461
Facsimile:    (503) 914-1507

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| MARK ANTHONY JOHNSON II, Personal Representative for the Estate of Mark Anthony Johnson, Deceased,<br><br>               Plaintiff,<br>v.<br><br>THE UNITED STATES OF AMERICA, THE UNITED STATES PROBATION OFFICE FOR THE DISTRICT OF OREGON; KRISTIE SPARKS, U.S. Probation Officer; JANE AND/OR JOHN DOES 1-25,<br><br>               Defendants. | Civil Action No. 3:24-cv-01597<br><br>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

**PAGE 1 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

CERTIFICATION................................................................................................ 6

INTRODUCTION.............................................................................................. 6

FACTUAL BACKGROUND……........................................................................ 7

    A.  Joseph Banks' History of Mental Illness While Incarcerated................................. 7

    B.  Joseph Banks' Conditional Release………………………...…….................... 8

    C.  Joseph Banks' Decompensation and Murder of Johnson........................................ 9

LEGAL STANDARD .........................................................................................12

LEGAL ANALYSIS ...........................................................................................12

    A.  Federal Tort Claims Act (FTCA)……......................................................12

    B.  The Discretionary Function Exception…………………….........................13

        1.  Statutory Basis.......................................................................................13

        2.  Purpose for Exception .......................................................................14

        3.  Tests to Determine Applicability of Immunity......................................14

            a.  Element of Judgment or Choice ...........................................14

            b.  Is The Conduct That Which was Designed to be Protected? …...........15

    C.  The Discretionary Function Exception Does Not Bar Claims Based on Supervision by the Probation Office.........................................................................15

    D.  The Discretionary Function Exception Does Not Bar Claims Based on Failure to Advise the Court of Banks' Alleged Probation Violations…...............................21

**PAGE 2 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1.  18 U.S.C. §3603(8)(b) Requires USPO to Report to Judge Brown the Type of Conduct Alleged in the Complaint………………………………….……21

2.  Judge Brown Is Irrelevant to Whether the Discretionary Function Exception Applies………………………………....…………………………….……24

3.  Plaintiff's Complaint Alleges Violations of Release Conditions USPO Was Required to Report Immediately………..………..27

E.  The Discretionary Function Exception Does Not Bar Claims Based on Negligent Training and Supervision of Officers…………………………………...…..28

F.  Plaintiff Alleges Multiple Cognizable Claims Based on Violation of Federal Rules or Regulations……………………………………………….…………...30

CONCLUSION………………….....................................................................32

**PAGE 3 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF AUTHORITIES

**Cases**

*BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 183 (2004).............................................. 22

*Ben v. United States,* 160 F. Supp. 3d 460 (NDNY 2016) ................................................ 15, 18-19, 25-26, 29, 30

*Berkovitz ex rel. Berkovitz v. United States,* 486 U.S. 531 (1988)....................................... 14-15, 20

*Blackburn v. United States*, 100 F.3d 1426 (9th Cir. 1996) ................................................ 14

*Conrad v. United States,* 447 F.3d 760 (9th Cir. 2009).......................................................... 13, 30

*Coulthurst v. United States* 214 F.3d 106 (2d Cir. 2000) ...................................................... 20

*Fang v. United States*, 140 F.3d 1238 (9th Cir. 1998)............................................................ 13, 15

*Fazzolari v. Portland School Dist. No 1J*, 303 Or. 1, 734 P.2d 1326 (1987)......................... 31

*FDIC v. Meyer*, 510 U.S. 47113 ............................................................................................. 13

*Garline v. EPA*, 849 F.3d 1289 (10th Cir. 2017) ................................................................ 14

*Gatx/Airlog Co. v. United States,* 286 F.3d 1168, 1174 (9th Cir. 2002) ............................ 16

*Gen. Dynamics Corp. v. United States,* 139 F.3d 1280, 1284 (9th Cir. 1998) ................... 24-25

*Gero v. United States,* 808 Fed. Appx. 516, 2020 U.S. Lexis 19098, 2020 WL 3057447 (9th Cir. 2020) ......................................................................................................................... 13

*Jennewein v. McImetro Access Transmission Servs., LLC,* 308 Or. App. 396, (2021).............. 31

*Johnson v. Sawyer,* 4 F.3d 369 (5th Cir. 1993) .................................................................... 32

*Lins v. United States,* 847 F App'x 159 (4th Cir. 2021) ....................................................... 29

*Marin v. United States,* 814 F. Supp. 1468 (ED Wash. 1992)................................................ 16, 20

*McAlpine v. Multnomah Cty.,* 166 Or. App. 472 (2000)....................................................... 31

*Molchatsky v. United States,* 713 F.3d 159 (2nd Cir. 2013).................................................. 25

*Morris v. United States,* 706 F. Supp. 3d (ED Tex. 2023)..................................................... 17-18, 24

*Myers v. United States*, 652 F.3d 1021 (9th Cir. 2011)......................................................... 14-15

*Padilla v. United States*, 2012 U.S. Dist LEXIS 195217 (2012) ......................................... 13

*Raplee v. United States*, 842 F.3d 328 (4th Cir. 2016) ....................................................... 13

*Sigman v. United States,* 217 F.3d 785, (9th Cir. 2000)....................................................... 13

*Summers v. United States*, 905 F.2d 1212, (9th Cir. 1990)................................................... 14, 20

*Terbush v. United States*, 516 F.3d 1125 (9th Cir. 2008)...................................................... 14

*United States v. Gaubert*, 499 U.S. 315 (1991)................................................................... 14-15, 19

*Taylor v. Garwood*, 2000 U.S. Dist LEXIS 9026 (ED Pa June 20, 2000).......................... 24

*Tekle v. United States,* 511 F.3d 839 (9th Cir. 2007)........................................................... 30-31

*United States v. Jennings,* 652 F.3d 290, (2nd Cir. 2011) .................................................... 24

*United States v. Palomares,* 52 F.4th 640, 645 (5th Cir. 2022)............................................ 22

*United States v. Varig Airlines* 467 U.S. 797 (1984)........................................................... 14

*Weissich v. United States*, 4 F.3d 810 (9th Cir. 1993).......................................................... 14

*Wright v. United States*, 162 F. Supp. 3d 118, 130 (E.D.N.Y. 2016) ................................. 20

*Zavalas v. State,* 106 Or. App. 444, 453 (1991) ................................................................. 26, 30

**Statutes**

28 U.S.C. 1346(b) ........................................................................................................ 12-13
28 U.S.C. 2680 ............................................................................................................12-13
28 U.S.C. 2674 ................................................................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(1)……………………………………………………………..12, 27
Fed. R. Civ. P. 12(b)(6) ……………………………………………………………12, 27
Fed. R. Civ. P. 12(d)…..…………………………………………………………..12

**Other Authorities**

Mark C. Niles, "*Nothing But Mischief": The Federal Tort Claims Act and the Scope of Discretionary Immunity*, 54 Admin. L. Rev. 1275, 1309 (2002) ...........................................................14
Substance Use and Mental Health Procedures Manual .......................................................18-19, 22-23

**PAGE 5 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 7,527 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## JUDICIAL NOTICE

Plaintiff requests this court take judicial notice of the following records from *U.S. v. Joseph Kelly Banks,* USDC Case No. 3:06-cr-00445-BR: 1) Indictment (Doc. 1);  2) Notice of Insanity Defense by Joseph Kelly Banks (Doc. 11); (3) Stipulation to Finding of Not Guilty Only by Reason of Insanity as to Joseph Kelly Banks (Doc. 22); (4) Sentencing Memorandum filed by Joseph Kelly Banks  (Doc. 28); (5) Sentencing Memorandum filed by USA as to Joseph Kelly Banks (Doc. 30); and (6) Order of Conditional Release (Doc. 107).

## INTRODUCTION

On March 1, 2022, around noon, Joseph Banks ("Banks") murdered Mark Johnson II ("Johnson") by shooting Johnson while he stood next to his vehicle on North Stanton Street near Dawson Park. This random act of violence came at the end of a 6-month period of well-documented decompensation, as Banks refused to consistently take his psychotropic medications.  During those 6 months the United States Probation Office, District Office for Oregon (USPO) failed to report any of Banks' conditional release violations to the Court until it was too late.

**PAGE 6 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

For the reasons set forth below, applicable case law and the Declaration of Paul Galm In Support of Defendant's Opposition To Defendant's Motion to Dismiss (Galm Declaration), filed concurrently herewith, the Court should deny Defendants' Motion to Dismiss (Motion or MTD).

## FACTUAL ALLEGATIONS

**A.    Banks' History of Incarceration and Mental Illness Treatment**

On October 3, 2007, Banks was deemed not guilty by reason of insanity for a charge of felon in possession of a firearm. Complaint, ¶ 7. He was subsequently hospitalized at the Federal Medical Center, Devens, Massachusetts and conditionally released on December 4, 2009. *Id.* On June 10, 2011, the Court issued an arrest warrant regarding allegations Banks violated the terms of his conditional release by incurring new criminal charges of criminal mischief and harassment-domestic violence, and failing to attend mental health treatment and probation supervision appointments as required. *Id.* at ¶ 8.

On July 13, 2011, the court remanded him to the custody of the Attorney General for evaluation pursuant to 18 U.S.C. § 4243. Complaint, ¶ 9.  On November 16, 2011, the Court again deemed Banks no longer suitable for continued community supervision and ordered his conditional release revoked.  *Id.* at ¶ 10. Between his revocation on November 16, 2011, and a final assessment on June 30, 2020, Banks received three separate risk assessments all of which labeled Banks unsuitable for release. *Id.*  Finally, on June 30, 2020, the Medical Center found that he was suitable for conditional release so long as conditions included appropriate and stable residence, plans for continued participation in

**PAGE 7 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

both substance abuse and mental health treatment, including potentially being involved with an intensive case management and oversight team, and other conditions of supervision to monitor his compliance and participation. *Id.*

The 2020 report also stated "[t]hough ultimately a decision for the Court, it is my opinion an unconditional release from custody would create a substantial risk of bodily injury to another person or serious damage to property of another. However, Banks is suitable for a conditional release." Complaint, ¶ 11. At the time of the report, Banks was prescribed numerous psychotropic medications, as well as met the criteria for alcohol use disorder, cocaine use disorder, and cannabis use disorder. *Id.* at ¶ 12. Banks was also found to meet the criteria for alcohol use disorder, cocaine use disorder, and cannabis use disorder. *Id.*

**B.    Banks' Conditional Release**

On February 18, 2021, the Court ordered Banks released to federal Supervision (Conditional Release Order), subject to numerous conditions, including the following:

(a) Defendant shall participate in medication management, case management, and treatment recommendations made by the Probation Officer or mental health staff;

(b) The Defendant shall participate in a mental health treatment program as directed and maintain any prescribed medications, including following all rules, regulations, and instructions of any treatment staff and complying with the treatment regimen recommended by his treatment providers;

(c) continue to take any medication, including injectable units, prescribed by a qualified psychiatrist or physician until directed to cease such medication by a

**PAGE 8 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

qualified psychiatrist or physician. This may include daily medication dispensing and monitoring;

(d)    The Defendant shall follow all rules, regulations, and instructions of any treatment staff and attend treatment as directed. The Defendant shall not discontinue treatment without the permission of the Probation Officer;

(e)    The Defendant shall refrain from any use or possession of alcohol and/or other intoxicant;

(f)    The Defendant shall not own, possess, or have access to a firearm;

(g) The Defendant shall refrain from any unlawful use or possession of a controlled substance and shall submit to drug and alcohol testing as directed by the Probation Officer; and

(h) The Defendant shall not write, say, or communicate threats.

Complaint, ¶ 13.

On May 13, 2021, the court released Banks to the supervision of USPO and Senior USPO Officer Sparks. Complaint, ¶ 15. Banks was housed at a care facility in Portland operated by Cameron Care, Inc. ("Cameron Care"). *Id*.

**C.    Banks' Decompensation and Murder of Johnson.**

On June 29, 2021, Cameron Care staff reported to Sparks that Banks missed his medication as he was out of the facility at the time of dispensation of medications. Complaint, ¶ 16. On July 1, 2021, Cameron Care staff reported to Sparks that Banks missed his medication as he was out of the facility at the time of dispensation of medications. Complaint, ¶ 17. On August 5, 2021, Cameron Care staff reported to Sparks that Banks missed his medication as he was out of the facility at the time of dispensation of medications. Complaint, ¶ 18. On September 22, 2021, the Cameron Care staff reported to Sparks that Banks exhibited "Clinical Behavior Change" and "Inappropriate behavior".

**PAGE 9 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Complaint, ¶ 19.  The same report stated Banks seemed to have delusions, was out of the ordinary, and made statements such as, he is a king and died and came back to life several times. It was also noted that Banks was "a little bit aggressive when talking." *Id.*

On October 4, 2021, Cameron Care staff updated Sparks that Banks was missing medications, unemployed and out of the facility often. Complaint, ¶ 20.  The staff stated in an email that "if we don't follow up with these he could easily slide out of baseline" and that his behavior was "highly concerning since he has struggled with this in the past and can become violent and unpredictable when not taking medications."  *Id*.

On November 5, 2021, Cameron Care reported to Sparks that when Banks was asked what he would like for his birthday meal, Banks failed to respond and required several prompts to answer questions. Complaint, ¶ 21.  The report stated staff noticed Banks had red, droopy eyes and seemed more talkative, relaxed, and outgoing than usual. *Id.*

On November 25, 2021, Cameron Care reported to Sparks that Banks missed his medication because he was not at the facility at the time of dispensation. Complaint, ¶ 22. On December 4, 2021, Cameron Care reported to Sparks that Banks missed his medication.  Complaint, ¶ 23.  On December 5, 2021, Cameron Care reported to Sparks that Banks threatened to rape another resident. That same resident reported that she suspected Banks possessed a gun.  Complaint, ¶ 24.

On December 9, 2021, Cameron Care reported to Sparks that Banks missed his 8 a.m. medication as he would not get out of bed. Complaint, ¶ 25.  The incident report states staff tried to get him up three or four times.  *Id.*  On December 20, 2021, Cameron Care

**PAGE 10 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

staff emailed Sparks that Banks had missed medications again and that staff "continue[s] to be concerned that all these small pieces to his current situation is going to create a much bigger problem." Complaint, ¶ 26.

On December 24, 2021, Banks again missed his medication dispensation because he was not at the facility. Complaint, ¶ 27.  On January 10, 2022, Cameron Care staff reported to Sparks that Banks missed his medication because he was not at the facility. Complaint, ¶ 29.  On January 11, 2022, Cameron Care staff reported to Sparks that Banks again missed his medication because he was not at the facility. Complaint, ¶ 30.

On January 12, 2022, Sparks emailed Cameron Care expressing concern with Banks missing medications due to his "history of becoming violent when he is not taking them."  Complaint, ¶ 31.  On January 19, 2022, Cameron Care reported to Sparks that Banks again missed his medication because he was not at the facility.  Complaint, ¶ 32.

During the same month of January, Cameron Care reported to Sparks that on ten different occasions Banks failed to return to the facility at night.  Complaint, ¶ 33.  In Cameron Care's January monthly progress report, Cameron Care reported to Sparks that "Joseph continues to stray from his baseline behavior, with more comments of paranoia and anger at staff or residents." Complaint, ¶ 34.  The report reiterated that "CCI continues to be concerned that all these small pieces to his current situation is going to create a much bigger problem." *Id*.

In total, between June 2021 and February 2022, there were thirty-two (32) separate incident reports at Cameron Care concerning Banks' conduct, most, if not all of which were reported to Sparks. Complaint, ¶ 40.  On February 3, 2022, the USPO finally

**PAGE 11 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

reported to Judge Brown that Banks was in violation of his probation. Declaration of Jeremy Corey in Support of Defendant's Motion to Dismiss, ¶ 7.[1]

On March 1, 2022, around noon, Joseph Banks randomly shot Johnson while Johnson stood next to his vehicle on North Stanton Street near Dawson Park. When police arrived, they found Johnson's lifeless body on the ground next to his vehicle. Complaint, ¶ 41.

## LEGAL STANDARD

Defendant moves to dismiss Plaintiff's First Amended Complaint (Complaint) pursuant to both Federal Rules of Procedure 12(b)(1) for lack of subject matter jurisdiction; and 12(b)(6) for failure to state a claim upon which relief can be granted.

## ARGUMENT

**A.    Federal Tort Claims Act (FTCA)**

Plaintiff brings a claim of negligence against the United States. The FTCA permits Plaintiff to file and prosecute certain types of lawsuits against the United States. 28 USC 1346(b), 2680. "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 USC 2674.

The FTCA relieves the United States of sovereign immunity:

from certain common law tort claims. . .  the FTCA authorizes plaintiffs to bring civil lawsuits against the United States for money damages for injury to or loss of property, or personal injury or death caused by a federal employee's negligent or wrongful act or omission while acting within the scope of his office or employment under

---

[1] If Defendant inserts facts, it transforms the motion into a motion for summary judgment and Plaintiff should have the benefit of discovery. Court should ignore factual allegations outside the four corners of the complaint. FRCP 12(d).

**PAGE 12 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the law of the place where the act or omission occurred.

*FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (emphasis added). The FTCA does not create a new federal cause of action but waives the United States' sovereign immunity as to certain type of tort claims. "[T]he substantive law of the state where the tort occurred determines the liability of the United States." *Raplee v. United States*, 842 F.3d. 328, 331 (4th Cir. 2016); e.g. 28 U.S.C. 1346(b)(1);. *Conrad v. United States, 447 F.3d 760, 767* (9th Cir. 2009); *see also, Gero v. United States,* 808 Fed. Appx. 516, 2020 US Lexis 19098, 2020 WL 3057447 (9th Cir. 2020).

**B.    The Discretionary Function Exception**

1.  Statutory Basis

Congress has reserved sovereign immunity for more than a dozen categories of claims. 28 U.S.C. 2680(a)-(f), (h)-(n). Of import is 28 U.S.C. 2680(n), barring any claim "based on an act or omission" . . . of the "Government exercising due care, in the execution of a statute or regulation. . . or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty". *Id. See also Fang v. United States*, 140 F.3d 1238, 1241 (9th Cir. 1998). The federal court lacks jurisdiction over claims to which the discretionary function exception (DFE) is applicable. *Sigman v. United States* 217 F.3d 785, 793 (9th Cir. 2000) The court may not consider whether the government abused its discretion or made the wrong decision. *Padilla v. United States*, 2012 U.S. Dist LEXIS 195217 (2012), *citing, Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011).

2.  Purpose for Exception

**PAGE 13 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The exception prevents judicial second guessing of legislative and administrative decisions grounded in social, economic and political policy. *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). Secondly, the discretionary function is intended to "protect the government from liability that would seriously handicap efficient government operations." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). Immunity is said to decrease the likelihood that federal employees will shy away from making sound policy decisions based on a fear of increasing the government's exposure to tort liability. *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008); Mark C. Niles, "*Nothing But Mischief": The Federal Tort Claims Act and the Scope of Discretionary Immunity*, 54 Admin. L. Rev. 1275, 1309 (2002); *See also, US v. Varig Airlines* 467 U.S. 797, 808 (1984).

3.  Tests to Determine Applicability of Immunity

The action at issue is evaluated by whether it was (1) discretionary, and (2) policy driven. *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Summers v. United States*, 905 F2d 1212, 1214 (9th Cir 1990).  If both elements are met, the government is immune from suit. *Garline v. EPA*, 849 F.3d 1289, 1295 (10th Cir. 2017). The government bears the burden of proving the DFE bars a tort claim. *Blackburn v. United States*, 100 F.3d 1426, 1436 (9th Cir. 1996).

a.  *Prong 1 - Element of Judgment or Choice*

In order for the DFE to apply, the conduct must be "discretionary" or involve 'an element of judgment or choice' by the federal employee. *Berkovitz ex rel. Berkovitz v.*

**PAGE 14 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*United States,* 486 U.S. 531, 536 (1988); *U.S. v. Gaubert*, 499 U.S. at 322; *Fang v. United States*, 140 F.3d at 1241. The conduct is generally discretionary unless a "statute, regulation, or policy specifically prescribes a course of action for an employee to follow". *Berkovitz* 486 U.S. at 536. If a "federal statute, regulation or policy prescribes a course of action for an employee to follow" and the official does not follow that course, he is not immune from suit. *Gaubert* 499 U.S. at 322.  The aforementioned "statute, regulation, or policy" includes "agency guidelines."  *Id.*

      b.  *Prong 2 - Is The Conduct That Which Was Designed to be Protected?*

Even if the challenged conduct is discretionary, the court must then consider whether the choice is of the type the DFE was designed to shield - public policy considerations involving social, economic and political policy. *Myers v. United States* 652 F.3d 1021, 1028 (9ᵗʰ Cir. 2011); *Berkovitz* 486 U.S. at 536.

**C.**    **The Discretionary Function Exception Does Not Bar Plaintiff's Claim of Negligent Supervision by the Probation Office.**

In the case at bar, defendant maintains the DFE categorically bars all claims of negligent supervision, arguing it is "well established that decisions made by federal probation or pretrial services officers regarding supervision of their clients involve judgment and choice."  MTD, p. 8. However, courts have never ruled that the DFE is a complete bar to all negligent probation supervision claims.  *See Ben v. United States,* 160 F Supp 3d 460, 475 (NDNY 2016) ("At the outset, to the extent Defendant contends that negligent training and supervision claims are *always* covered by the DFE, the Court disagrees"); *Marin v. United States*, 814 F Supp 1468 (ED Wash 1992) ("The court is

**PAGE 15 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

satisfied that, under these circumstances, the DFE does not apply to the failure to supervise, warn and/or apprehend claims.").  Whether a challenged action falls within the DFE requires a particularized analysis of the specific agency action.  *Gatx/Airlog Co. v. United States*, 286 F3d 1168, 1174 (9th Cir 2002).  A particularized analysis here reveals that the USPO's negligent actions do not satisfy either prong of the DFE test.

### 1.  USPO's Negligent Conduct Did Not Involve Judgment or Choice

Defendant claims the very nature of USPO's supervision is discretionary, and therefore the challenged conduct alleged in the Complaint is immune under the DFE. Defendant relies heavily on *Weissich v. United States*, 4 F3d 810 (9th Cir 1993).  This reliance is misplaced.  In *Weissich*, the Marin County District Attorney, William Weissich, prosecuted Malcolm Schlette in 1955. *Weissich,* 4 F3d at 812.  Schlette was convicted of arson and sentenced to twenty years in prison. *Id*.  At sentencing, Schlette threatened retaliation against the district attorney, the judge, the jurors, all witnesses, and the police officers involved in his conviction. *Id*.  In 1966, Schlette was released on state parole. *Id*. Authorities discovered that he planned to carry out his prior threats and returned him to prison to serve the remainder of his twenty-year term. *Id*.  In 1975, Schlette was released. *Id*.  In 1983, he was arrested by the ATF and later convicted of being a felon in possession of firearms and was placed on federal probation for five years.  *Id*. In 1986, while on probation, Schlette shot and killed William Weissich.  *Id*.  Weissich's family filed suit against the USPO, claiming that the USPO negligently supervised Schlette while on probation. *Id*.

**PAGE 16 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

In dismissing suit, the 9th Circuit concluded that "Schlette's probation officers made discretionary choices pertaining to his supervision while he was on federal probation. There was no fixed plan *per se,* but rather an evolving plan, the contours of which were shaped on an ongoing basis as the officers dealt with Schlette." *Weissich*, 4 F3d at 814-815.

Echoing *Weissich,* defendant notes that much of what the USPO does day-to-day is rooted in discretion. But this is not absolute. USPO too must adhere to certain statutory, court and policy mandates - particularly as to probationers conditionally released pursuant to 18 U.S.C. § 4243(f)(2). 18 U.S.C. § 4243(f)(2)(B) expressly requires a court to "order, *as an express condition of release*, that [probationers] comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment." 18 U.S.C. § 4243(f)(2) (emphasis added). It follows that the USPO is equally subject to more rigid rules and requirements when supervising conditionally released probationers. *See Morris v. United States,* 706 F Supp 3d 636, 648 (ED Tex 2023) ("It appears that Congress imposed an additional, more stringent reporting requirement upon those probation officers supervising individuals with certain mental illnesses.").

Unlike the probationer in *Weissich*, Banks was conditionally released and therefore the USPO was subject to a higher, more rigorous set of supervisory requirements. The Texas district court in *Morris* acknowledged that statutes and guidelines limit USPO's discretion when supervising conditionally released probationers:

> These supervisees are persons who have been "found not guilty only by reason of insanity," *id*. § 4243, who are "due for release but suffering from mental disease or defect," *id*. § 4246, or who are "sexually dangerous," *id*. § 4248. Subpart (A), along with requiring probation officers to supervise

**PAGE 17 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

these individuals, requires that probation officers "keep informed as to the conduct" of such a person and "report such person's conduct and condition to the court ordering release and to the Attorney General or his designee.

*Morris,* 706 F Supp 3d at 645-646.

The USPO's Substance Use and Mental Health Procedures Manual (SUMHP Manual)[2] reinforces this conclusion.  For example, the SUMHP Manual states ███

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████

*Ben v. United States*, 160 F Supp 3d 460 (NDNY 2016) is also instructive. *Ben* involved a federal pre-trial releasee with a history of child pornography, child sex abuse and assault, who was conditionally released into the supervision of U.S. Probation and Pretrial Services Office in the Northern District of New York. *Ben*, 160 F Supp 3d at 464-465. While on supervised release, the probationer committed crimes including kidnapping, rape and murder. *Id.*  The United States moved to dismiss Plaintiff's negligent supervision case

---

[2] A copy of the Substance Use and Mental Health Procedures Manual is attached as Ex. 1 to the Galm Declaration. While Defendant cherry picks discretionary language from the Guide, Defendant fails to mention the USPO's supplemental guide which delineates rules and concerns specific to probationers conditionally released pursuant to 18 U.S.C. § 4243(f)(2).

**PAGE 18 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

pursuant to the DFE.  The district court denied defendant's motion and granted jurisdiction, holding that the United States' motion failed the first prong of the DFE test.  *Id* at 475.  Specifically, the court ruled as follows:

> "The Guide to Judiciary Policy further indicates that probation officers are required to do certain things in every case, including the following: prepare and obtain the approval of a supervision plan; respond immediately to "all instances of noncompliance, no matter how minor"; investigate and document all instances of noncompliance; and "immediately advise the court and the United States attorney" if the defendant engages in a "higher risk" violations, including "repeated location monitoring violation[s]."

*Ben*, 160 F Supp 3d at 475.

Similarly, the Complaint here alleges violations of 18 U.S.C. § 3603, the Guide, the SUMHP Manual, the Post-Conviction Supervision Procedures Manual and Judge's Brown's Conditional Release Order.  Complaint, ¶ 47(j).  These cited directives leave no room for discretion.  "The requirements of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive."  *United States v. Gaubert*, 499 US at 322.  Defendant's Motion fails the first prong of the DFE test.

### 2.  Defendant's Inaction Does Not Implicate Public Policy.

Even if, assuming *arguendo*, USPO's alleged negligent conduct involved a judgment or choice, Defendant must prove that the decision or action was policy driven. This is the second prong of the DFE test.  *Berkovitz ex rel*. *Berkovitzs,* 486 U.S. at 536 (1988); *Summers*, 905 F2d at 1214 (9th Cir 1990).

**PAGE 19 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Where a defendant's alleged conduct suggests inaction or inattentiveness, courts conclude such conduct is not grounded in public policy. *Coulthurst v. U.S.*, 214 F.3d 106, 110-111 (2d Cir. 2000) ("We believe that if the inspector failed to perform a diligent inspection out of laziness or was carelessly inattentive, the DFE does not shield the United States from liability."); *Marin*, 814 F Supp 1482 ("Nevertheless, it is clear that the agents made no effort whatsoever to supervise or control Lopez after he was released."). The rationale is that a federal actor's failure to take any meaningful action does "not involve considerations of public policy" and thus, "do not reflect the kind of considered judgment grounded in social, economic, and political policy which the [discretionary function exception] is intended to shield from judicial second guessing." *Coulthurst*, 214 F.3d at 111. *See also Wright v. United States*, 162 F. Supp.3d 118, 130 (E.D.N.Y. 2016) ("Here, plaintiff's allegations that [the probation officer], among other things, negligently failed to act promptly or appropriately when notified that Wright had an injury to his ankle are analogous to the claims stemming from a failure to act raised in *Coulthurst*.").

Plaintiff does not allege so much that the decisions and actions of the USPO were unreasonable; rather that for months the USPO made no decisions and took no action at all, despite repeated reports of violations and warnings from Cameron Care. *See, i.e.,* Complaint, ¶ 20 ("The staff stated in an email that 'if we don't [sic] follow up with these he could easily slide out of baseline.'"). USPO's inaction cannot plausibly be rooted in public policy and therefore does not deserve the protection of the DFE. Defendant's Motion fails the second prong of the DFE test as well.

**PAGE 20 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**The Discretionary Function Exception Does Not Bar Claims Based on Failure to Report Banks' Violations to the Court.**

**1. 18 U.S.C. §3603(8)(b) Requires USPO to Report to Judge Brown Any Violations of Conditional Release.**

Defendant next focuses on USPO's alleged failure to report Banks' violations of the Conditional Release Order to the court, arguing that the USPO "had no obligation to report to Judge Brown the type of conduct alleged in the Complaint." Motion, p. 13. Defendant cites 18 U.S.C. § 3603(8), which applies to probationers conditionally released due to, *inter alia*, mental health issues. §3603(8) requires as follows:

> (8)(A) *when directed by the court, and to the degree required* by the regimen of care or treatment ordered by the court as a condition of release, keep informed as to the conduct and provide supervision of a person conditionally released under the provisions of section 4243, 4246, or 4248 of this title, and report such person's conduct and condition to the court ordering release and to the Attorney General or his designee; and
>
> (B) immediately report any violation of the conditions of release to the court and the Attorney General or his designee;

18 U.S.C. § 3603(8). Specifically, Defendant contends the qualifying language in Subpart (A) above – "*when directed by the court, and to the degree required*" – injects discretion into the statutory language such that Subpart (B)'s apparent requirement that probation officers "immediately report any violation of the conditions of release to the court and the Attorney General or his designee" is in fact not absolute – that a probation officer can ignore Subpart (B)'s urgency based on the qualifying language at the start of Subpart (A). Defendant's analysis of §3603(8) is flawed.

**PAGE 21 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

"The first step in construing the meaning of a statute is to determine whether the language at issue has a plain meaning." *BedRoc Ltd., LLC v. United States*, 541 US 176, 183 (2004). Courts, however, do not look at the text in isolation, as "[t]he meaning of a statutory provision is often clarified by the remainder of the statutory scheme." *United States v. Palomares*, 52 F.4th 640, 645 (5th Cir 2022).

Here, the language cited by Defendant only qualifies Subpart A – not Subpart B. If Congress intended this qualifying language to control both Subparts (A) and (B), Congress would have inserted the language directly after Section (8) and before the start of Subpart A - rather than solely in Subpart A - as illustrated in the example below:

§3603: A probation officer shall –

(8) *when directed by the court, and to the degree required* by the regimen of care or treatment ordered by the court as a condition of release,

> (A) keep informed as to the conduct and provide supervision of a person conditionally released under the provisions of section 4243, 4246, or 4248 of this title, and report such person's conduct and condition to the court ordering release and to the Attorney General or his designee; and

> (B) immediately report any violation of the conditions of release to the court and the Attorney General or his designee.[3]

---

[3] In its Motion, Defendant argues that the Guide, Vol. 8, Pt. E, §210.20(b)(8) reinforces Defendant's interpretation of § 3603(8) because the Guide positions the qualifying language "*when directed by the court, and to the degree required*" before subparts (A) and (B). Motion, p.14-15. But how the Guide paraphrases §3603(8) has no bearing on what Congress intended. PR 6.10.30 of the SUMHP Manual ███████████████████████████████████████ ████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

**PAGE 22 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Instead, Congress placed the qualifying language solely in Subpart (A).

Looking holistically at both subparts, it is clear that the "*when directed by the court, and to the degree required*" language only qualifies Subpart A – it is the only logical reading of the two subparts. This is born out elsewhere in §3603(8). For example, Subpart A ends by stating that an officer must "report such person's conduct and condition to the court ordering release and to *the Attorney General or his designee*." §3603(8)(A). Subpart B ends with the exact same language - an officer must "report any violation of the conditions of release to the court and the *Attorney General or his designee*." §3603(8)(B). If language in Subpart A applies equally to Subpart B, as Defendant urges, then there would be no need to repeat the instruction in both subparts that officers need to report to the Attorney General or his designee. S*ee* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS *(2012)* at 167 ("[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and *logical relation of its many parts*.") (emphasis added).

Nor does the qualifying language cited by Defendant, even if applicable, necessarily grant officers the discretion to ignore §3603(8)(B)'s requirement that violations be immediately reported. To conclude otherwise would nullify §3603(8)(B)'s urgency. Courts agree. In *Morris v. United States,* 706 F Supp 3d 636, 648 (ED Tex 2023), the district court

**PAGE 23 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

concluded that §3603(8)(B) required an officer to immediately report any violations where the probationer was conditionally released pursuant to 18 U.S.C. § 4243(f)(2):

> It is of no surprise that § 3603(8)(B) imposes an additional duty by which it mandates immediacy with respect to reporting only those violations committed by individuals conditionally released, rather than probationers and supervised releasees—conditional release is a different form of supervision with its own unique policy considerations.

*Morris,* 706 F Supp 3d at 648. *See also United States v. Jennings,* 652 F3d 290, 300 (2d Cir 2011); *Taylor v. Garwood*, 2000 US Dist LEXIS 9026 (ED Pa June 20, 2000) ("While in certain situations the probation officer may have no discretion such as reporting a probation violation to the court, that is not the issue here.").

Next, Defendant argues that the DFE applies because a probation officer must exercise judgment when determining what constitutes a "violation." Motion, p. 17. If allowed, this sort of argument, with its legal parsing, would swallow a large part of the FTCA itself. The government could argue, *ad infinitum*, that interpreting otherwise plain statutory, court or policy language requires some modicum of judgment and is therefore immune. *See Gen. Dynamics Corp. v. United States*, 139 F3d 1280, 1284 (9th Cir 1998).

### 2. Judge Brown Is Irrelevant to Whether the Discretionary Function Exception Applies.

Citing both *Gen. Dynamics Corp. v. United States*, 139 F3d 1280 (9th Cir 1998) and *Molchatsky v. United States*, 713 F 3d 159 (2nd Cir. 2013), Defendant argues, even if USPO is not entitled to the DFE, Judge Brown's "subsequent, intervening discretion defeats" Plaintiff's negligence claim. Motion, p. 18. These two cases, however, are backward-

**PAGE 24 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

looking; they involve other government actors higher up the decision-making food chain making discretionary decisions that equally led to plaintiff's alleged harm.

In *Gen. Dynamics Corp.,* the Defense Contract Audit Agency (DCAA) audited and later erroneously reported suspected labor mischarging by plaintiff. *Gen. Dynamics Corp.*, 139 at 1282. DCAA's erroneous report, in part, led prosecutors to indict plaintiff. *Id.* However, plaintiff only sued DCAA and not prosecutors. *Id.*  The 9th Circuit ruled against plaintiff, arguing that "the prosecution was clearly based upon the discretionary decisions of the prosecutors." *Id.* at 1285.  Therefore, as a matter of causation, the intervening prosecutorial discretion is "the truly discretionary source of the injury."  *Id. See also Molchatsky*, 713 F 3d at 162 ("Plaintiff's harm ultimately stems from the SEC's failure to investigate Madoff and uncover his Ponzi scheme.").

Here, the Complaint is forward-looking – Judge Brown never had an opportunity to consider Mr. Banks' case until it was too late because USPO did not timely report his numerous violations dating back to summer 2021.  Unlike both *General Dynamics* and *Molchatsky*, Plaintiff alleges that Judge Brown did not even have an opportunity to make any rulings or decisions that caused or factored into Plaintiff's alleged harm.

The more analogous case is *Ben v. United States,* 160 F Supp 3d 460 (NDNY 2016). In *Ben*, federal pre-trial releasee, David Renz, who, after being charged with receiving and possessing child pornography, was released from custody under the supervision of U.S. Probation and Pretrial Services Office for the Northern District of New York.  *Ben,* 160 F Supp 3d at 467-468. While on supervised release, Renz committed crimes including kidnapping, rape and murder. *Id*.  Plaintiffs alleged that Renz was able to commit those

**PAGE 25 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

crimes because USPO negligently supervised Renz, including failing to notify the court that Renz's ankle bracelet transmitted close to 40 tamper alerts. *Id*.

Nonetheless, the United States moved to dismiss the case pursuant to the DFE, arguing in part that the decision of when and what to report to the court was discretionary. *Id.* at 469-470. The court disagreed, stating that the DFE did not apply because USPO was required to notify the court. *Id.* at 469-470 ("As a result, Probation, *and more importantly*, Judge Baxter, was unaware that, beginning on January 15, 2013, Renz's ankle bracelet sent out a series of approximately forty (40) tamper alerts lasting less than five minutes.") (emphasis added). Nowhere does the court hold that the future possibility of judicial discretion will somehow retroactively immunize USPO's negligent conduct.

Defendant's argument is really one of causation, and as such, is a more appropriate question for the trier of fact. *See Zavalas v. State,* 106 Or App 444, 453 (1991) ("The state's argument rests on the fact that, even had the sentencing judge known of Shonkwiler's new criminal activity, she might not have been incarcerated. That possibility does not defeat plaintiff's claim that the officer's failure to report the violations could have been found to have been a substantial contributing cause of Shonkwiler's conduct and plaintiffs' injuries and deaths. * * * The existence of a causal link between the alleged negligence of Parashos and the harm sustained is a question of fact."). Judge Brown plays no role in the determination of whether the DFE applies in this case.

   3. **The Complaint Sufficiently Alleges Probation Violations that USPO Was Required to Report to the Court.**

**PAGE 26 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant next argues "Plaintiff does not plausibly allege the Probation Office knew of these facts triggering any such alleged obligation to report to Judge Brown."[4] Motion, p. 22. Defendant's arguments, however, are mostly factual and therefore inappropriate in a motion to dismiss pursuant to Fed. R. Civ. Pr. 12(b)(1) or 12(b)(6). Regardless, the Complaint alleges in detail Banks' various violations and that they were reported to Sparks.

Starting with the Order of Conditional Release, Judge Brown mandates four conditions of release that are relevant here: (a) The Defendant shall maintain any prescribed medications (Order, §4); (b) The Defendant shall refrain from any use or possession of intoxicants (Order, §9); (c) The Defendant shall not own or possess a firearm (Order, §10); and (d) The Defendant shall not threaten anyone (Order, §13).

The Complaint carefully identifies violations of these four conditions *and* that they were reported to the USPO. The Complaint alleges that Banks consistently failed to take his prescribed medications and that his failure was reported to Officer Sparks. Complaint, ¶¶ 16-18, 20, 22-23, 25-27 and 29-32. The Complaint alleges that on November 5, 2021, Cameron Care reported to the treatment team, which includes Officer Sparks, that Banks was displaying signs of intoxicant use. Complaint, ¶ 21. The Complaint alleges that on December 5, 2021, Cameron Care reported that Banks threatened to rape another resident, and that said resident suspected he had a gun. Complaint, ¶ 24. All of these are indisputable violations of Judge Brown's Order of Conditional Release, and all of them were known to the USPO. 18 U.S.C. §3603(8)(B) required USPO to immediately report these violations to the court.

---

[4] To the extent the Court determines any allegations of the Complaint are insufficient pursuant to Fed. R. Civ. Pr. 12(e), Plaintiff respectfully asks for the opportunity to make the Complaint more definite and certain prior to any dismissal.

**PAGE 27 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant tries to circumvent the obvious by arguing that these allegations needed to be substantiated or were otherwise unproven.  Again, without the benefit of discovery and at this early stage, Defendant's factual disputes are premature.  But more importantly, Defendants arguments are misleading.  For example, Defendant argues in part "[a]s for the threat, Plaintiff alleges 'Cameron Care reported Banks threatened to rape another resident'" but what was  missing was "any indication that this was ever communicated to the Probation Office, or that the report was substantiated".  Motion, p. 23.  It is unclear how USPO would have to substantiate a "threat" other than having the same conversation with the threatened resident that Cameron Care already documented.  In addition, Defendant's claim that there is no clear allegation that the threat was communicated to Defendant, is belied by the use of word "reported" in ¶ 24 of the Complaint.  However, if necessary, Plaintiff can amend paragraph 24 of the Complaint to read that "Cameron Care reported *to Sparks* Banks threatened to rape another resident."  Regardless, the Complaint alleges facts sufficient to trigger the USPO's reporting requirement under 18 U.S.C. §3603(8)(B).

**D.    The Discretionary Function Exception Does Not Bar Claims Based on Negligent Training and Supervision of Officers.**

As one of its particulars of negligence, Plaintiff alleges that Defendant negligently trained and supervised its officers, including Banks' probation Officer Sparks.  Complaint, ¶47(i).  Defendant argues that the DFE categorically bars all claims against USPO for negligent training and supervision of its officers.  Motion, p. 23. While negligent training and supervision claims are sometimes barred by the DFE, it is not absolute.  *See Ben v. United States,* 160 F Supp 3d 460, 475 (NDNY 2016) ("At the outset, to the extent

**PAGE 28 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant contends that negligent training and supervision claims are *always* covered by the DFE, the Court disagrees."); *Lins v. United States*, 847 F App'x 159, 165 (4th Cir 2021) (We agree with our sister circuits that the discretionary function exception does not categorically bar negligent hiring, supervision, and retention claims.").

The district court's analysis in *Ben* is helpful:

> The Court also finds that Plaintiffs have carried their burden of demonstrating that their negligent training and supervision claims involve violations of rules that were mandatory, not discretionary. Specifically, in response to Defendant's motion, Plaintiff has submitted, *inter alia*, portions of the Guide to Judiciary Policy, and most notably Volume 8, Part C, Chapter 2, which discusses the roles of probation supervisors, and chapters 3,4,5, and 7, which discuss the specific duties of probation officers. The Guide to Judiciary Policy indicates, for example, that probation supervisors are required to train their staffs to perform pretrial services supervision effectively, ensure that all staff are familiar with national and local rules and policies, and oversee the work of their staffs. The Guide to Judiciary Policy further indicates that probation officers are required to do certain things in every case, including the following: prepare and obtain the approval of a supervision plan; respond immediately to "all instances of noncompliance, no matter how minor"; investigate and document all instances of noncompliance; and "immediately advise the court and the United States attorney" if the defendant engages in a "higher risk" violations, including "repeated location monitoring violation[s]." * * * The Court finds that Plaintiffs have demonstrated that the discretionary function exception does not apply to the negligent training and supervision claims.

*Ben v. United States,* 160 F Supp 3d at 475.

Volume 8, Part E of the Guide imposes similar supervisory requirements here, including requiring supervisors to work with their probation officers to (a) discuss supervision modifications or responses to supervision issues as they occur (§ 310.20(d)); (b) develop case plans and interim responses to significant changes throughout the period of

**PAGE 29 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

supervision (§ 310.20(e)); or (c) Work with probation officer to determine the appropriate intervention in response to noncompliance (§ 620.50).  Similar to *Ben*, the DFE does not bar Plaintiff's claim for negligent supervision and training.

**E.    Plaintiff Alleges A Cognizable Claim Under the FTCA and State Law.**

Pursuant to the FTCA, the United States is generally liable to the same extent as a private individual under like circumstances. *Tekle v. United States*, 511 F3d 839, 850-851 (9th Cir 2007). In determining liability, the court must "apply the law of the state in which the alleged tort occurred." *Conrad v. United States,* 447 F.3d 760, 767 (9th Cir. 2006). The pertinent question here is whether the Complaint has alleged a cognizable claim under Oregon law alleging, in part, violations of federal statute and policy.

The Complaint's central claim is that the USPO negligently supervised Banks, including failing to report violations and otherwise warn the court.  Oregon courts have already recognized that a probationer may be held liable for harms resulting from similarly negligent supervision. *See Zavalas v. State,* 106 Or App 444, 453 (1991) ("Under the circumstances, a reasonable factfinder could conclude that a probation officer of ordinary prudence would have promptly reported the violations or arrested the probationer and that failure to take either action created a foreseeable and unreasonable risk of harm to individuals coming in contact with Shonkwiler.").[5]

Defendant nonetheless argues there is no cognizable claim because Plaintiff cannot rely on violations of federal rules or regulations as the basis of its state negligence claim.

---

[5] Absent a special relationship, Oregon courts apply a general foreseeability standard to negligence claims. *Fazzolari v. Portland School Dist. No 1J*, 303 Or 1, 17 (1987). But foreseeability is a fact question for the trier of fact and not appropriate in a motion to dismiss.  *Jennewein v. McImetro Access Transmission Servs., LLC*, 308 Or App 396, 402 (2021).

**PAGE 30 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Motion pp. 24-25. Defendant's argument, however, conflates two distinct tort concepts: *duty of care* and *standard of care*. While Defendant is correct that Plaintiff cannot rely on violations of federal statutes, policies or guidelines to establish a duty of care or foreseeability for its FTCA claim, those same rules *can* define applicable standards of care.[6] The 5th Circuit in *Johnson v. Sawyer*, 4 F3d 369 (5th Cir 1993) addressed this distinction:

> The government counters that the breach of a federal statute, here § 6103, cannot establish liability under the FTCA. As far as it goes, that statement is irrefutable, but it stops short of addressing the full import of Johnson's position--a position grounded in the subtle but crucial distinction between a *duty* and a *standard of care.* Johnson does not contend simplistically that § 6103 creates a duty the breach of which constitutes a state tort, or that the violation of that statute ipso facto creates FTCA liability. Rather, he asserts that, for purposes of the state tort of public disclosure of private facts, § 6103 sets a standard of care for those actors who owe the duty, and that, under Texas tort law, the violation of such a statutory standard of care is negligence per se when one to whom the duty is owed is damaged by violation of this standard of care.

*Johnson v. Sawyer*, 4 F3d at 376. Akin to *Johnson*, Plaintiff's Complaint alleges violations of federal statutes and guidelines as part of its alleged particulars of negligence. Complaint, ¶ 47(j). To the extent that Plaintiff's negligence claim is predicated on these alleged violations, said violations are nothing more than standards of care that the trier of fact should weigh when determining if Defendant was negligent. Plaintiff has alleged a cognizable state claim as required by the FTCA.

///

---

[6] Some of the cases cited by Defendant are also distinguishable because they involve federally-created private rights of action not otherwise available at the state level.

**PAGE 31 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests this Court deny the motion to dismiss.

DATED this 11th day of February 2025.

PAUL GALM, ATTORNEY AT LAW, LLC

/s/ Paul Galm
Paul Galm, OSB No. 002600
Email: paul@paulgalmlaw.com

THE LAW OFFICE OF JOSH LAMBORN
Josh Lamborn, OSB No. 973090
Email: jpl@pdxinjury.com

**PAGE 32 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**PAGE 33 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**PAGE 34 – PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Page 35 -    PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS